**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**

| | |
|---|---|
| TERESA STRINGER, KAREN BROOKS and WILLIAM PAPANIA, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>NISSAN OF NORTH AMERICA, INC, and NISSAN MOTOR CO., LDT.<br><br>Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT AND JURY DEMAND

Plaintiffs Teresa Stringer, Karen Brooks and William Papania ("Plaintiffs") bring this action against Nissan of North America, Inc. and Nissan Motor Co., Ltd. ("Defendants" or "Nissan"), by and through their attorneys, individually and on behalf of all others similarly situated, and allege as follows:

### I.     INTRODUCTION

1.     Plaintiffs bring this action individually and on behalf of all similarly situated persons ("Class Members") who purchased or leased any 2014 through 2016 Nissan Rogue vehicle in the United States ("Class Vehicles") that was designed, manufactured, distributed, marketed, sold or leased by Defendants.

2.     Beginning in 2013, if not before, Defendants knew that the Class Vehicles contain one or more design and/or manufacturing defects that can cause their continuously variable transmission ("CVT") to malfunction ("CVT Defect"). A "CVT" is a type of automatic transmission that does not use conventional gears to achieve the various ratios required during normal driving. Instead, it uses a segmented steel belt between pulleys that can be adjusted to change the reduction ratio in the transmission. This is supposed to occur smoothly and

continuously. Like a conventional transmission, a CVT is electronically controlled by a Transmission Control Module ("TCM").

3.    Numerous Class Vehicle owners have reported a significant delay in the Class Vehicle's response while attempting to accelerate from a stop or while attempting to merge into freeway traffic, or pass another vehicle, which requires the ability to accelerate quickly. This delay in response is typically accompanied with reports of the engine revving while the driver depresses the gas pedal without little to no increase in vehicle speed. Class Vehicle owners have also experienced and reported stalling, jerking, lurching, juddering, and/or shaking while operating their Class Vehicles, as well as premature transmission failure.

4.    The CVT Defect has been documented to occur without warning during vehicle operation and poses an extreme and unreasonable safety hazard to drivers, passengers and pedestrians for obvious reasons. These safety hazards include being unable to maintain the proper speed to integrate seamlessly into the flow of traffic, especially on highways or freeways, putting drivers at risk of being rear ended or otherwise causing an accident unless they pull off the road. Two owners complained to the National Highway Transportation Safety Authority ("NHTSA") as follows:[1]

- **NHTSA ID: 11375131, Incident Date: September 19, 2020:** CAR DOES NOT ACCELERATE AFTER STOPPING AND TRYING TO YIELD TO ONCOMING TRAFFIC OR TURN AT A STOP SIGN. EXTREMELY DANGEROUS BECAUSE IT WILL ALL OF A SUDDEN DECIDE TO GO AND THE RPM GOES UP REALLY HIGH.

- **NHTSA ID: 1126587 Incident Date September 26, 2019:** 2015 NISSAN ROGUE, BROUGHT BRAND NEW, HAS 63,000 MILES. HAVING TRANSMISSION ISSUES FOR >9 MONTHS. I HAVE HAD NO PREVIOUS ISSUES UNTIL THEN. I CANNOT DRIVE FOR MORE THAN 30+ MIN BEFORE MY VEHICLE STARTS STALLING AT STOPLIGHTS/STOP SIGNS. WHEN I GO TO ACCELERATE AFTER BRIEFLY STOPPING, THE CAR STUTTERS AND BUCKS UNTIL I PRESS HARDER ON THE ACCELERATION. THE STUTTERING GETS WORSE THE LONGER YOU DRIVE IT. THE SAFETY ISSUE WITH A CAR NOT PROPERLY ACCELERATING WHEN YOU NEED IT TO, IS CONCERNING. I HAVE TAKEN IT TO THE NISSAN

---

[1] Spelling and grammatical errors in consumer complaints reproduced herein remain as found in the original.

DEALERSHIP MULTIPLE TIMES AND THEY CLAIM THEY CANNOT "DUPLICATE" THE ISSUE, WHILE THE TECHNICIAN ADMITTED TO EXPERIENCING MY COMPLAINT WHILE HE DROVE IT A FEW TIMES. THEY SAY NOTHING CAN BE DONE BECAUSE NO CODES ARE RENDERING A PROBLEM AND I HAVE TO WAIT FOR THE "PROBLEM" TO GET WORSE OR ULTIMATELY, UNTIL THE TRANSMISSION "GOES OUT" AS THE NISSAN REP TOLD ME.

5.     In addition to these obvious safety hazards, the cost to repair the CVT Defect can be exorbitant. The Class Vehicles thus differ materially from the product Nissan intended to sell. Nissan intended to produce vehicles with CVTs that shift smoothly and continuously. Instead, Nissan produced vehicles that do not accelerate when prompted to accelerate, and that shake, shudder, jerk and judder.

6.     Plaintiffs are informed and believe, and based thereon allege, that Defendants knew the Class Vehicles were defective and not fit for their intended purpose of providing consumers with safe and reliable transportation at the time of the sale and thereafter. Defendants have actively concealed the true nature and extent of the CVT Defect from Plaintiffs and the other Class Members, and failed to disclose it to them, at the time of purchase or lease and thereafter. Had Plaintiffs and prospective Class Members known about the CVT Defect, they would not have purchased the Class Vehicles or would have paid less for them.

7.     Plaintiffs are informed and believe, and based thereon allege, that despite notice of the CVT Defect from, among other things, pre-production testing, numerous consumer complaints, warranty data dealership repair orders and prior experience with earlier model vehicles with the same or substantially similar CVTs, Defendants have not recalled the Class Vehicles to repair the CVT Defect, have not offered their customers a suitable repair or replacement free of charge, and have not offered to reimburse all Class Vehicle owners and leaseholders the costs they incurred relating to diagnosing and repairing the CVT Defect.

8.     Plaintiffs are further informed and believe, and based thereon allege, that despite being on notice of the CVT Defect, Defendants regularly deny the existence of the CVT Defect until after consumers' five (5) years/60,000 miles New Vehicle Limited Warranty Powertrain

Coverage ("Powertrain Warranty") has expired or require payment to repair the CVT Defect even while the Class Vehicles are under warranty.

9.     Nissan knew of and concealed the CVT Defect that is contained in every Class Vehicle, along with the attendant dangerous safety problems and associated repair costs, from Plaintiffs and the other Class Members both at the time of sale or lease and thereafter.  As a result of their reliance on Defendants' omissions, owners and lessees of the Class Vehicles have suffered ascertainable loss of money, property, and/or loss in value of their Class Vehicles.

## II.     PARTIES

### A.     Plaintiffs

### Teresa Stringer (Alabama)

10.     Plaintiff Teresa Stringer is an Alabama citizen who lives in Troy, Alabama.  Ms. Stringer purchased a new 2015 Nissan Rogue from Mitchell Nissan in Enterprise, Alabama in or around September 2015.  Prior to purchase, Mr. Stringer spoke with the dealer sales representative about the vehicle, inspected the Monroney sticker posted by Nissan on the vehicle and test drove the vehicle.  Ms. Stringer was never informed by the dealer sales representative that the vehicle suffered from the CVT Defect and relied upon this fact in purchasing the vehicle.  Had Ms. Stringer been informed that her vehicle suffered from the CVT Defect, she would not have purchased it. Ms. Stringer purchased her vehicle primarily for personal, family or household purposes.  Mr. Stringer's vehicle was designed, manufactured, sold, distributed, advertised, marketed and warranted by Nissan.

11.     Sometime in or around 2017, Ms. Stringer began to experience the CVT Defect which gradually worsened over time.  For example, Ms. Stringer's vehicle hesitates when attempting to pick up speed after slowing down, and when taking off from a stop.  This hesitation is sometimes accompanied by excessive revving in which the rpm meter moves but the vehicle does not accelerate commensurately, followed by a jerk or judder when the vehicle does engage. In addition, Ms. Stringer's transmission slips when driven at highway speeds.

12.     Ms. Stringer has brought her vehicle to authorized Nissan dealerships repeatedly for servicing but has been provided no remedy to date.  During the 2017-2020 timeframe Ms. Stringer took her vehicle to Headquarter Nissan in Columbus, Georgia on multiple occasions complaining of the CVT issues she was experiencing.  Initially she was told there was nothing wrong; ultimately, she was charged for ineffective repairs and servicing.  For example, on or about October 4, 2018 Headquarter Nissan performed a throttle body cleaning for which Ms. Stringer paid $50.05 out-of-pocket.  Her CVT issues continued.  On or about December 12, 2018, Headquarter Nissan performed a transmission service with complete exchange of transmission fluid for which Ms. Stringer paid $248.03 out-of-pocket.  Her CVT issues continued.  On or about June 15, 2020, Ms. Stringer returned to Headquarter Nissan again complaining of CVT issues and paid $99.95 for a diagnostic.  Her CVT issues continued.  On or about August 7, 2020 Ms. Stringer brought her vehicle to Mitchell Nissan and complained of the hesitation issues she was experiencing, but they told her they did not find anything wrong.  Her CVT issues continue to this day.  As described in further detail herein, further repair attempts would have been futile given Defendants' steadfast refusal to acknowledge the true nature and extent of the CVT Defect and provide an adequate remedy.

13.     At all times, Ms. Stringer driven her vehicle in a foreseeable manner and in the manner in which it was intended to be used.

**Karen Brooks (Tennessee)**

14.     Plaintiff Karen Brooks is a Tennessee citizen who lives in Hollow Rock, Tennessee.  Ms. Brooks purchased a new 2015 Nissan Rogue from Premier Nissan, in Paris, Tennessee in or around December of 2014.[2]  Prior to purchase, Ms. Brooks spoke with the dealer sales representative about the vehicle, inspected the Monroney sticker posted by Nissan on the vehicle and test drove the vehicle.  Ms. Brooks was never informed by the dealer sales representative that the vehicle suffered from the CVT Defect and relied upon this fact in purchasing the vehicle.  Had

---

[2] Premier Nissan subsequently changed its name to Nissan of Paris.

Ms. Brooks been informed that her vehicle suffered from the CVT Defect, she would not have purchased it. Ms. Brooks purchased her vehicle primarily for personal, family or household purposes. Ms. Brooks' vehicle was designed, manufactured, sold, distributed, advertised, marketed and warranted by Nissan.

15. Shortly after purchasing her vehicle, Ms. Brooks began to experience the CVT Defect. For example, her vehicle hesitates when she attempts to accelerate to merge into traffic or pass a car on the freeway. Ms. Brooks' vehicle also hesitates when she drives uphill, when she attempts to accelerate after slowing down, and when she attempts to accelerate from a stop. When Ms. Brooks' vehicle finally does go into gear when accelerating from a stop or at a low speed, it shakes. Ms. Brooks' vehicle has been serviced regularly and her husband has complained to Nissan of Paris on multiple occasions of the problems they have experienced, but they have been offered no remedy. As described in further detail herein, further repair attempts would have been futile given Defendants' steadfast refusal to acknowledge the true nature and extent of the CVT Defect and provide an adequate remedy.

16. At all times, Ms. Brooks has driven her vehicle in a foreseeable manner and in the manner in which it was intended to be used.

**William Papania (Texas)**

17. Plaintiff William Papania is a Texas citizen who lives in Port Neches, Texas. Mr. Papania purchased a new 2015 Nissan Rogue from Twin City Nissan, in Port Arthur, Texas in on or around October of 2015. Prior to purchase, Mr. Papania spoke with the sales representative about his vehicle, inspected the Monroney sticker posted on the vehicle by Nissan and test drove the vehicle. Mr. Papania was never informed by the dealer sales representative that the vehicle suffered from the CVT Defect and relied upon this fact in purchasing the vehicle. Had Mr. Papania been informed that his vehicle suffered from the CVT Defect, he would not have purchased it. Mr. Papania purchased his vehicle primarily for personal, family or household purposes. Ms. Papania's vehicle was designed, manufactured, sold, distributed, advertised, marketed and warranted by Nissan.

18. In the summer of 2020, Mr. Papania was driving his vehicle when his check engine light turned on. Mr. Papania took the vehicle to Twin City Nissan but the dealer did not find anything wrong. A few days later the check engine light illuminated again and Mr. Papania took the vehicle to a third-party repair facility that ran a diagnostic which showed the transmission was failing. Mr. Papania returned to Twin City Nissan which confirmed that the transmission was failing and needed to be replaced, and that Mr. Papania would have to pay several thousand dollars out-of-pocket for the replacement. Due to the exorbitant cost, Mr. Papania has not replaced his transmission, and is currently making extremely limited use of his vehicle.

19. At all times, Mr. Papania has driven his vehicle in a foreseeable manner and in the manner in which it was intended to be used.

**B. Defendants**

20. Defendant Nissan North America, Inc. ("NNA") is a California corporation with its principal place of business located at One Nissan Way, Franklin, Tennessee 37067 and doing business in Tennessee and throughout the United States.

21. Founded in 1933 and headquartered in Yokohama, Japan, Defendant Nissan Motor Co., Ltd. ("NML") is a corporation organized under the laws of Japan. NML manufactures and distributes automobiles and related parts. It also provides financing services. NML delivers a comprehensive rage of products under various brands that are manufactured in Japan, the United States, Mexico, the United Kingdom and other countries. NML is the parent and 100% owner of NNA.

22. At all relevant times, NNA and NML were engaged in the business of designing, manufacturing, marketing, distributing, and selling automobiles, including but not limited to the Class Vehicles, and other motor vehicles and motor vehicle components, in Tennessee and throughout the United States.

23. Whenever, in this Complaint, reference is made to any act, deed or conduct of Defendants, the allegation means that Defendants engaged in the act, deed, or conduct by or through one or more of their officers, directors, agents, employees or representatives who was

actively engaged in the management, direction, control, or transaction of the ordinary business and affairs of Defendants.

### III.   JURISDICTION

24.    This is a class action.

25.    This Court has jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d). The aggregated claims of the individual class members exceed the sum value of $5,000,000, exclusive of interests and costs. This court also has federal question jurisdiction over this action under 28 U.S.C. § 1331 because Plaintiffs' claims under the Magnuson-Moss Act arise under federal law. This Court has personal jurisdiction over NNA because its principal place of business is in Franklin, Tennessee, and Defendants' otherwise have sufficient minimum contacts with Tennessee, and/or otherwise intentionally avails themselves of the markets within Tennessee, through the promotion, sale, marketing and distribution of their vehicles in Tennessee, so as to render the exercise of jurisdiction by this Court proper and necessary.

### IV.   VENUE

26.    Venue is proper pursuant to 28 U.S.C. § 1391, because a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred within the Middle District of Tennessee.

### V.   NISSAN'S KNOWLEDGE OF THE CVT DEFECT

27.    For years, Nissan has designed, manufactured, distributed, sold, and leased the Class Vehicles. Upon information and belief, Defendants have sold, directly or indirectly through dealers and other retail outlets, many thousands of Class Vehicles nationwide.

28.    Plaintiffs and Class Members are intended third-party beneficiaries of contracts between Nissan and its dealerships; specifically, they are the intended beneficiaries of Nissan's warranties. The dealerships were not intended to be the ultimate consumers of the Class Vehicles, and the warranty agreements were designed for and intended to benefit the ultimate consumers only.

29. The CVT Defect causes the Class Vehicles' to unexpectedly malfunction by hesitating, stalling, jerking, lurching, revving, shaking, juddering and/or failing prematurely. The CVT Defect presents a safety hazard that renders the Class Vehicles unreasonably dangerous to consumers due to, *inter alia*, the impact of the Defect on driver's ability operate the Class Vehicle as expected.

30. Plaintiffs are informed and believe, and based thereon allege, that, prior to placing the Class Vehicles in the stream of commerce, Nissan became aware of the CVT Defect through sources not available to Plaintiffs and Class Members, including, but not limited to, pre-production testing, pre-production design failure mode and analysis data, production design failure mode and analysis data, early consumer complaints made exclusively to Nissan's network of dealers and directly to Nissan, aggregate warranty data compiled from Nissan's network of dealers, testing conducted by Nissan in response to consumer complaints, and repair order and parts data received by Nissan from Nissan's network of dealers. On information and belief, Nissan actively monitors and records consumer complaints made to Nissan's network of dealers as well as all service and repair work done related to the CVT Defect at its network of dealers

31. Nissan's CVT has been plagued with the same or similar recurrent problems (i.e., hesitation, shaking, juddering, premature failure, etc.) for over a decade. In 2009 Nissan voluntarily doubled the powertrain warranty coverage of 5 years/60,000 miles to 10 years/120,000 miles for a large part of its fleet, including the 2003-2010 Murano; 2007-2010 Versa SL; 2007-2010 Sentra; 2007-2010 Altima; 2007-2010 Maxima; 2008-2010 Rogue; and 2009-2010 Cube.[3] Nissan also reported that "in the unlikely event that your vehicle's transmission should need repair beyond the extended warranty period we are working to decrease the cost of repair."[4]

---

[3] Frequently Asked Questions, available at:
https://web.archive.org/web/20100323050249/http://www.nissanassist.com/faqs.php?menu=3

[4] *See* Customer Satisfaction Program, CVT Program Details available at:
https://web.archive.org/web/20100124032242/http://www.nissanassist.com/ProgramDetails.php?menu=2 (last visited Jan. 22, 2021).

32. Nissan continued to experience such trouble with its CVTs that in December 2013 Nissan's then-CEO, Carlos Ghosn, announced that Nissan would increase its oversight of CVT supplier JATCO, Ltd.[5] Nissan further explained that it was necessary to increase its oversight of JATCO because continued customer service issues had begun to cut into Nissan's profits.[6] However, Nissan's vehicles continued to be plagued with CVT issues thereafter.

33. Technical Service Bulletins ("TSBs") issued by Nissan to its dealers, and other remedial actions it has taken concerning the Class Vehicles and other vehicles with the same or substantially similar CVT, evidence Nissan's knowledge of the CVT Defect.

34. On information and belief, the four-cylinder 2013-2016 Nissan Altima has the same or substantially similar transmission as the 2014-2016 Nissan Rogue (which is only available in a four-cylinder). Nissan recently extended the 2013-2016 Altima Powertrain Warranty from five years/60,000 miles to seven years/84,000 miles and offered to reimburse those who paid for transmission-related repairs during the extended warranty period in connection with a class action settlement. *See Gann, et al. v. Nissan North America, Inc.*, Case No. 3:18-cv-00966 (M.D. Tenn.). It has offered no such relief to 2014-2016 Rogue owners and lessees.

35. On or about September 27, 2012 Nissan initiated a voluntary service campaign to "reprogram the Transmission Control Unit (TCM)" to "improve transmission durability" in the 2013 Altima with four-cylinder engine. *See* NTB12-081. In a customer satisfaction letter implementing the campaign, Nissan stated:

> Under certain unique driving conditions, the Continuously Variable Transmission (CVT) belt may slip in some affected 2013 Nissan Altima vehicles. An indicator that the CVT belt has slipped is a shaking or "judder" from the CVT when coasting. Continuing to drive the vehicle in this condition can lead to accelerated wear and damage to the CVT. Reprogramming of the Transmission Control Module (TCM) will prevent the belt slip condition from occurring. This is not a safety issue, and the vehicle still meets and/or exceeds all applicable safety standards.

---

[5] Nissan Presses Jatco to end CVT glitches, Automotive News https://www.autonews.com/article/20131202/OEM10/312029972/nissan-presses-jatco-to-end-cvt-glitches (Dec. 2, 2013).

[6] *Id.*

On information and belief, while Nissan acknowledged a problem, it did so in a manner that was false and misleading. On information and belief, Nissan was aware that the problem was not limited "to certain unique driving conditions," that the purported fix it was offering did not in fact resolve the problem, and that the problem did in fact constitute a safety issue.

36. On or about October 7, 2015 Nissan issued NTB15-083 applicable to 2013-2015 Nissan Altima and 2014-2016 Nissan Rogue vehicles regarding the reprogramming of the TCM to address "a transmission judder (shake, shudder, single or multiple bumps or vibration)." The next month on or about November 11, 2015, Nissan issued NTB15-084a applicable to the same set of vehicles to address the same condition outlining a procedure for replacement of the CVT assembly.

37. Also on or about November 11, 2015 Nissan issued NTB15-086a applicable to 2013-2015 Nissan Altima and 2014-2016 Nissan Rogue vehicles. This TSB notes that the affected vehicles may "hesitate and/or have a lack of power" and prescribes various service procedures including replacement of the CVT assembly. On information and belief, this TSB was preceded by its original iteration, NTB15-086.

38. On or about April 1, 2016 Nissan issued NTB15-084b to address a "transmission judder (shake, shudder, single or multiple bumps or vibration)" in 2013-2016 Nissan Altima and 2014-2016 Nissan Rogue vehicles. This TSB set forth a procedure through which either the CVT assembly or the Valve Body would need to be replaced.

39. On or about February 10, 2017 Nissan issued NTB15-086f to address "HESITATION AND/OR LACK OF POWER" in 2013-2014 Altimas and 2014-2016 Rogues. This TSB similarly describes procedures for replacing the CVT assembly or the Valve body as well as reprogramming the TCM if necessary.

40. On or about April 18, 2017, Nissan updated TSB NTB15-084b to include more model years. *See* TSB NTB15-084c. This TSB is applicable to 2013-2016 Nissan Altima and 2014-2016 Nissan Rogue vehicles was also designed to address "a transmission judder (shake,

shudder single or multiple bumps or vibration)." *Id.* This TSB similarly sets forth a procedure through which either the CVT assembly or the Valve Body would need to be replaced.

41. Nissan has continued to issue TSBs addressing Rogue CVT issues.

42. On information and belief, Defendants issued the above TSBs to address problems being caused by the CVT Defect. Defendants had and have a duty to disclose the CVT Defect and the associated repair costs to Class Vehicle owners, among other reasons, because the Defect poses an unreasonable safety hazard; because Defendants had and have exclusive knowledge and/or access to material facts about the Class Vehicles and their CVTs that were and are not known to or reasonably discoverable by Plaintiffs and other Class Members; and, because Defendants have actively concealed the CVT Defect from its customers. Further, because the none of the above TSBs were issued as part of a formal recall, they were much more likely to be overlooked by dealers, and unknown to consumers.[7]

## V. EXAMPLE CONSUMER COMPLAINTS

43. Hundreds, if not thousands, of purchasers and lessees of the Class Vehicles have experienced the CVT Defect.

44. Nissan monitors customers' complaints made to the NHTSA. Federal law requires automakers like Nissan to be in close contact with NHTSA regarding potential auto defects, including imposing a legal requirement (backed by criminal penalties) compelling the confidential disclosure of defects and related data by automakers to NHTSA, including field reports, customer complaints, and warranty data. See TREAD Act, Pub. L. No. 106-414, 114 Stat.1800 (2000).

45. Automakers have a legal obligation to identify and report emerging safety-related defects to NHTSA under the Early Warning Report requirements. *Id.* Similarly, automakers

---

[7] When a vehicle identification number is entered into a dealer computer, the dealer is automatically instructed to perform applicable recalls. Dealers generally search for other TSBs based on customer complaints, which requires them to often sift through multiple TSBs and attempt to interpret which, if any, are applicable.

monitor NHTSA databases for consumer complaints regarding their automobiles as part of their ongoing obligation to identify potential defects in their vehicles, including safety-related defects. *Id.* Thus, Nissan knew or should have known of the many complaints about the CVT Defect logged by NHTSA Office of Defect Investigation (ODI), and the content, consistency, and large number of those complaints alerted, or should have alerted, Nissan to the CVT Defect.

46.     The following example complaints filed by consumers with the NHTSA and other websites which continue to accrue and demonstrate that the CVT Defect is a widespread, dangerous and unresolved problem:

**2014 Nissan Rogue:**

- **NHTSA ID: 11375131, Incident Date September 19, 2020:** CAR DOES NOT ACCELERATE AFTER STOPPING AND TRYING TO YIELD TO ONCOMING TRAFFIC OR TURN AT A STOP SIGN. EXTREMELY DANGEROUS BECAUSE IT WILL ALL OF A SUDDEN DECIDE TO GO AND THE RPM GOES UP REALLY HIGH.

- **NHTSA ID: 11374927, Incident Date November 2, 2020:** CAR DROVE FINE THEN IN THE MIDDLE OF GOING THROUGH AN INTERSECTION THE VEHICLE STOPPED ACCELERATING AND CHECK ENGINE LIGHT CAME ON. CHECK CODE IT WAS P1778 FOR STEPPER MOTOR. VEHICLE ONLY HAS 87000 MILES ON IT. BROUGHT TO A TRANSMISSION STOP TO REPLACE THE VALVE BODY TO HAVE A NEW STEPPER MOTOR. HAD THE PART PUT IN TO FIND OUT THE WHOLE TRANSMISSION FAILED. WE COULD'VE BEEN KILLED IN THE BUSY INTERSECTION WITH THIS HAPPENING WITHOUT WARNING.

- **NHTSA ID:11353588, Incident Date February 1, 2019:** TL* THE CONTACT OWNS A 2014 NISSAN ROGUE. THE CONTACT STATED WHILE DRIVING AT APPROXIMATELY 40 MPH, THE VEHICLE JERKED, SHOOK, AND VIBRATED. THE CONTACT STATED THAT TRANSMISSION FLUID NEEDED TO BE ADDED TO THE VEHICLE TWICE DAILY FOR THE TRANSMISSION TO OPERATE AS DESIGNED. THE CONTACT STATED THAT THE TRANSMISSION WAS REPLACED MARCH 2019. THE MANUFACTURER ASSISTED THE CONTACT WITH THE COST OF THE TRANSMISSION REPLACEMENT. THE TRANSMISSION WAS REPLACED BY AN UNKNOWN NISSAN DEALER HOWEVER, THE TRANSMISSION REPLACEMENT FAILED TO CORRECT OR PREVENT THE FAILURE. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE VEHICLE WAS NOT REPAIRED. THE APPROXIMATE FAILURE MILEAGE WAS 84,000.

- **NHTSA ID:11339213, Incident Date July 12, 2020:** WHILE DRIVING ON AN INTERSTATE, MY 2014 NISSAN ROGUE WOULD REV AND THE RPM'S WOULD SURGE UNEXPECTEDLY AND WITHOUT WARNING. WHILE DRIVING IT WOULD RANDOMLY JERK, SHUDDER, AND HESITATE. WE EXPERIENCED A SUDDEN LOSS OF ACCELERATION LEADING PREMATURE TRANSMISSION FAILURE. MY CHECK ENGINE LIGHT DID NOT COME ON UNTIL THE CAR LOST THE ACCELERATION CAPABILITY. THIS PUT US IN GREAT DANGER BEING THAT WE BARELY MADE IT ONTO THE SIDE OF THE INTERSTATE. MY CAR HAD TO BE TOWED TO NISSAN AND SINCE I HAVE BEEN ADVISED THAT THE TRANSMISSION NEEDS TO BE COMPLETELY REPLACED.

- **NHTSA ID:11297342, Incident Date October 5, 2019:** VEHICLE CURRENTLY HAS 70,300 MILES ON IT. VEHICLE BEGAN LOSING POWER WHILE ON THE INTERSTATE AT 70 MPH. THE RPMS WOULD GO UP AND DOWN AND THE VEHICLE WOULD JERK AS IF THE TRANSMISSION WAS TRYING TO FIND THE RIGHT GEAR. WITH IN A FEW MINUTES, THERE WAS HARDLY ANY POWER TRANSFERRING TO THE WHEELS. I HAD THE VEHICLE TOWED TO THE DEALER. NO WARNING FOR TRANSMISSION FAILURE. DEALER RECOMMENDS CVT TRANSMISSION REPLACEMENT FOR TRANSMISSION JUDDER.

- **NHTSA ID:11257661, Incident Date September 16, 2019:** CVT TRANSMISSION PROBLEM POSSIBLY. THIS IS A WELL MAINTAINED VEHICLE. CAR STARTS TO DELAY IN DRIVE GEAR AND REVERSE. BUCKING AND IDLING AND REVING RPM WHILE DRIVING NORMAL SPEEDS. MANY OTHER NISSAN ROUGE OWNERS ARE HAVING THE SAME ISSUE. NEARLY BEEN HIT ON THE ROAD AND HIGHWAY AT LEAST 3 TIMES. WHY ISN'T THIS ISSUE BEING LOOKED AT AND RECALLED?

- **NHTSA ID:11242861, Incident Date July 19, 2019:** TL* THE CONTACT OWNS A 2014 NISSAN ROGUE. WHILE DRIVING VARIOUS SPEEDS, THE VEHICLE JERKED. THERE WERE NO WARNING INDICATORS ILLUMINATED BEFORE OR AFTER THE FAILURE OCCURRED. THE VEHICLE WAS TAKEN TO AN UNKNOWN NISSAN DEALER WHERE FAILURE CODE: P1740 (TRANSMISSION SELECT SOLENOID) WAS LOCATED. THE DEALER STATED THAT THE TRANSMISSION NEEDED TO BE REPLACED. THE DEALER ALSO TEST DROVE THE VEHICLE, BUT WAS UNABLE TO DUPLICATE THE FAILURE. THE MANUFACTURER WAS NOT CONTACTED. THE VEHICLE WAS NOT REPAIRED. THE FAILURE MILEAGE WAS 60,000.

- **NHTSA ID:11234938, Incident Date May 1, 2019:** WHILE DRIVING ON THE INTERSTATE THE CAR COMPLETELY LOST ABILITY TO ACCELERATE. IT WOULD MAINTAIN SPEED WITH ACCELERATOR PEDAL PRESSED ALL THE WAY TO THE FLOOR. THE RPM'S WOULD NOT GO ABOVE 3000. ONCE STOPPED COULD NOT ACCELERATE TO GET THROUGH INTERSECTION.

AFTER STOPPING AND SITTING FOR AN HOUR THE CAR THEN BEGAN OPERATING BACK NORMAL. THIS NOW HAS HAPPENED MULTIPLE TIMES.

- **NHTSA ID:11231085, Incident Date January 16, 2019:** TL* THE CONTACT OWNS A 2014 NISSAN ROGUE. THE CONTACT STATED THAT THE VEHICLE EXPERIENCED JERKING, LUNGING, AND A LOSS OF POWER ONCE IT CAME TO A COMPLETE STOP. IN ADDITION, THE ESP FAULTY WARNING INDICATOR ILLUMINATED. THE VEHICLE WAS TAKEN TO AN INDEPENDENT MECHANIC WHO DIAGNOSED THAT THERE WAS AN ELECTRICAL FAILURE. THE VEHICLE WAS REPAIRED, BUT THE FAILURE RECURRED. NISSAN OF DOWNTOWN LA (4111, 635 W WASHINGTON BLVD, LOS ANGELES, CA 90015, (213) 477-7361) WAS CONTACTED TO SCHEDULE AN APPOINTMENT. THE DEALER INFORMED THE CONTACT THAT THE VIN WAS NOT INCLUDED IN A RECALL. THE CONTACT REFERENCED NHTSA CAMPAIGN NUMBER: 16V149000 (FUEL SYSTEM, GASOLINE), BUT THE VIN WAS NOT INCLUDED. THE DEALER PROVIDED CASE NUMBER: 36341350 FOR THE CALL. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE AND CONFIRMED THAT THE VIN WAS NOT INCLUDED IN A RECALL. THE FAILURE MILEAGE WAS APPROXIMATELY 30,000.

- **NHTSA ID:11230561 Incident Date July 6, 2019:** TL* THE CONTACT OWNS A 2014 NISSAN ROGUE. WHILE THE VEHICLE WAS STOPPED AT A STOP SIGN, THE VEHICLE STALLED WHEN THE ACCELERATOR PEDAL WAS DEPRESSED. ON ANOTHER OCCASION, THE VEHICLE WAS UNABLE TO SHIFT FROM PARK INTO REVERSE. THE VEHICLE WAS NOT DIAGNOSED OR REPAIRED. A DEALER WAS NOT CONTACTED. THE MANUFACTURER WAS NOTIFIED. THE FAILURE MILEAGE WAS 72,000.

- **NHTSA ID:11221437 Incident Date June 4, 2019:** TL* THE CONTACT OWNS A 2014 NISSAN ROGUE. WHILE DRIVING 70 MPH, THE CONTACT APPLIED THE ACCELERATOR PEDAL, BUT THE VEHICLE FAILED TO RESPOND. THERE WERE NO WARNING INDICATORS ILLUMINATED. THE CONTACT ATTEMPTED TO APPLY THE ACCELERATOR PEDAL AGAIN AND THE VEHICLE TOOK 34 SECONDS TO RESPOND. THE VEHICLE WAS TAKEN TO BATTLES NISSAN (60 MACARTHUR BLVD, BOURNE, MA 02532, (774) 302-0313) WHERE IT WAS DIAGNOSED THAT A CVT FUEL COOLER HAD TO BE INSTALLED IN ORDER FOR THE POWER TRAIN TO RETURN TO NORMAL THE VEHICLE WAS NOT REPAIRED. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE AND PROVIDED CASE NUMBER: 36126158. THE CONTACT WAS INFORMED TO CALL NHTSA. THE FAILURE MILEAGE WAS APPROXIMATELY 154,000.

- **NHTSA ID:11221437 Incident Date June 4, 2019:** TL* THE CONTACT OWNS A 2014 NISSAN ROGUE. WHILE DRIVING 70 MPH, THE CONTACT APPLIED THE ACCELERATOR PEDAL, BUT THE VEHICLE FAILED TO RESPOND. THERE WERE NO WARNING INDICATORS ILLUMINATED. THE CONTACT

ATTEMPTED TO APPLY THE ACCELERATOR PEDAL AGAIN AND THE VEHICLE TOOK 34 SECONDS TO RESPOND. THE VEHICLE WAS TAKEN TO BATTLES NISSAN (60 MACARTHUR BLVD, BOURNE, MA 02532, (774) 302-0313) WHERE IT WAS DIAGNOSED THAT A CVT FUEL COOLER HAD TO BE INSTALLED IN ORDER FOR THE POWER TRAIN TO RETURN TO NORMAL THE VEHICLE WAS NOT REPAIRED. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE AND PROVIDED CASE NUMBER: 36126158. THE CONTACT WAS INFORMED TO CALL NHTSA. THE FAILURE MILEAGE WAS APPROXIMATELY 154,000.

- **NHTSA ID:11210278 Incident Date May 22, 2019:** "CVT FAILURE" BETWEEN MARCH 2019 AND MAY 2019 RANDOMLY STALLING WHILE TRAVELING AND WHEN COMPLETE STOP, THIS WENT ON FOR ABOUT 1 MONTH. MOST NOTICEABLE OCCURRENCES WERE WHEN THE TEMPERATURE WARM AND/OR DRIVING FOR AN EXTENDED PERIOD OF TIME. VEHICLE THEN SHUDDERED/SHAKE WHEN ACCELERATING. RPM LEVEL WOULD FLUCTUATE BETWEEN 4K-5K RMPS WHEN ATTEMPTING TO ACCELERATE.WOULD NOT SHIFT UP OR DOWNWARD AS DESIGNED.WOULD RANDOMLY DOWNSHIFT CAUSING A FORWARD JERKING.MOST NOTICEABLE JERK/SHUDDERING WAS BETWEEN 40-40MPH.LOSS OF OR LIMITED POWER WHEN TRAVELING UP HILL.SPEED WOULD BE LIMITED TO 60 MPH. ON MAY 19, 2019 REVERSE WOULD NOT ENGAGE UNLESS THE VEHICLE HAD NOT BEEN DRIVEN FOR SOME TIME, ENOUGH TO COOL DOWN.NEUTRAL WOULD NOT BE PRESENT EITHER.THERE WAS NO DIFFERENTIATION BETWEEN DRIVE/LOW/NEUTRAL. MAY 20 BROUGHT TO NISSAN DEALER THEY ADVISED CVT REPLACEMENT NEEDED. MAY 21 AND MAY 22 CVT DID NOT ENGAGE, VEHICLE STOPPED PROCEEDING WHILE ON HIGHWAY. TURNED VEHICLE OFF FOR 15 MINUTES. TURNED ON AND WAS ABLE TO PROCEED. STILL SHUDDERED AND JERKED WHEN SHIFTING.

  STARTED VEHICLE AFTER PARKING PLACED IN DRIVE WITH NO MOVEMENT. TURNED OFF THEN ON PLACED IN DRIVE WAS ABLE TO PROCEED.

  VEHICLE LIMITED TO 40 MPH, LOST POWER TO CVT UNABLE TO MOVE. STOPPED FOR 45 MINUTES AND WAS ABLE TO PLACE INTO DRIVE. DROVE FOR APPROXIMATELY ½ HALF MILE, LOST POWER WHILE TRAVELING UP HILL AND ROLLED BACKWARDS LUCKILY INTO A DRIVEWAY WITHOUT BEING STRUCK BY OTHER VEHICLES. NEUTRAL DID NOT EXIST. VEHICLE TOWED 5/22/19. COMPLAINTS MADE TO NISSAN 5/23/19. WAS ADVISED 5/24 THEY WOULD ONLY COVER 70% ALTHOUGH THERE IS A SIGNIFICANT PROBLEM WITH THEIR CVTS.

- **NHTSA ID:11209416 Incident Date May 22, 2019:** CARS LOSES POWER WHEN DRIVING, SHAKES, REVS HIGH HAS A HARD TIME ACCELERATING UP HILLS TOO

- **NHTSA ID:112095014 Incident Date April 23, 2019:** WHILE DRIVING MY CAR TO WORK, THE TRANSMISSION HAS BEEN SLIPPING OUT OF HEAR. THE SPEED WILL DECREASE AS I CAN'T ACCELERATE. THE RPM'S SHOOT UP BUT THE CAR WILL GO NOWHERE. IT HAS HAPPENED AND BOTH HIGH AND LOW SPEEDS BUT NORMALLY AFTER THE CAR ENGINE IS WARM. SOMETIMES WHEN IT HAPPENS, AFTER 10-15 SECONDS, THE GEAR WILL GO BACK TO DRIVE ON IT'S OWN AND I CAN CONTINUE ON MY WAY. LATELY, AS IT'S GOTTEN WORSE, THE CAR WILL COME TO A DEAD STOP (AS I CAN'T ACCELERATE) AND THERE IS NOTHING THAT I CAN DO TO GET IT BACK INTO GEAR. I HAVE TRIED TURNING THE CAR ON AND OFF, PUTTING IT IN NEUTRAL OR LOW AND IT CAN TAKE UP TO 20 MINUTES BEFORE I CAN GET THE VEHICLE DRIVING PROPERTY. AFTER RESEARCH, IT IS A COMMON ISSUE WITH THE VEHICLE HOWEVER AFTER TAKING THE CAR TO THE DEALERSHIP I PURCHASED IT FROM TWICE, THEY WILL NOT FIX IT. THEY STATE IT HASN'T HAPPENED DURING THEIR TEST DRIVE AND THERE IS NOTHING THEY CAN DO AND THEY ARE RELEASING THE CAR TO ME. EVEN AFTER MULTIPLE PHONE CALLS AND ASKING THEM TO PERFORM OTHER TESTS- THEY WON'T. THEY HAVE ONLY RUN DIAGNOSTIC MACHINE TESTS AND DID A SHORT TEST DRIVE (EVEN THOUGH THEY LIED AND TOLD ME IT WAS LONGER). AFTER TAKING THE VEHICLE HOME YESTERDAY- IT HAPPENED TO ME TWICE TODAY. THIS IS UNSAFE TO DRIVE.

- **NHTSA ID:11172967 Incident Date January 29, 2019:** ENGINE HESITATION AND TRANSMISSION DOES NOT AUTOMATICALLY SHIFT TO LOWER GEAR

- **NHTSA ID:11166254 Incident Date December 29, 2018:** TL* THE CONTACT OWNS A 2014 NISSAN ROGUE. WHILE DRIVING APPROXIMATELY 45 MPH, THE VEHICLE JERKED AND SHUT OFF WITHOUT WARNING. THE VEHICLE WAS TOWED TO AN INDEPENDENT MECHANIC WHO DIAGNOSED THAT THE TRANSMISSION NEEDED TO BE REPLACED. THE CONTACT CALLED EDDIE TOURELLE'S NORTHPARK NISSAN (985-893-0079, LOCATED AT 955 N HWY 190, COVINGTON, LA 70433) AND WAS INFORMED THAT THEY WERE AWARE OF THE FAILURE AND IT WAS DUE TO THE TRANSMISSION. THE MANUFACTURER WAS NOT MADE AWARE OF THE FAILURE. THE VEHICLE WAS NOT REPAIRED. THE FAILURE MILEAGE WAS APPROXIMATELY 124,000. THE VIN WAS NOT PROVIDED.

- **NHTSA ID:11132441 Incident Date October 1, 2016:** TL* THE CONTACT OWNS A 2014 NISSAN ROGUE. WHILE ACCELERATING FROM A STOP, THE VEHICLE JUMPED AND THE TRANSMISSION LAGGED. THE DEALER WAS NOT CONTACTED. THE MANUFACTURER STATED THAT THERE WERE NO RECALLS ON THE VEHICLE REGARDING THE TRANSMISSION. THE CONTACT ALSO STATED THAT THE VEHICLE STRAINED WHEN DRIVING ABOVE 70 MPH ON THE HIGHWAY. THE VEHICLE WAS NOT DIAGNOSED OR REPAIRED. THE FAILURE MILEAGE WAS 24,000. *TT*JB

- **NHTSA ID:11098274 Incident Date May 23, 2018:** TRANSMISSION WENT OUT WHILE TRAVELING ON INTERSTATE. 90,000 MILES ON CAR.

- **NHTSA ID:11096877 Incident Date May 7, 2018:** CVT TRANSMISSION DEFECT. JERKING,SHUDDER, RPM VARY UP TO 3500 RPM WHEN IT SHOULD BE AR 2,000 RPM. SOMETIME IT QUITS IN TRAFFIC. DOES THE SAME IN CITY,ON HIGHWAY,TRAFFIC HAZARD TO ME AND OTHER MOTORIST.

- **NHTSA ID:11093652 Incident Date May 13, 2018:** THE CAR SHUDDERS AND JERKS WHILE ACCELERATING, CAUSING THE ENGINE TO STALL. IT STALLED ON THE INTERSTATE AND IN THE CITY. BOTH THEMES THE ENGINE STALLED, IT WAS ACCELERATING FROM A STOP.

- **NHTSA ID:11013326 Incident Date August 2, 2017:** TRANSMISSION BEGAN JOLTING AND SHUTTERING THIS PAST WEEK AT ALL SPEEDS. WHEN ACCELERATING IT'S NOT AN ISSUE, HOWEVER , WHEN MAINTAINING SPEED THE RPMS INCREASES AND DECREASES AS THE TRANSMISSION SHIFTS UP AND DOWN. THIS CAUSES THE CAR TO SLOW ON THE FREEWAY AND ROADWAYS. IT FEEL VERY DANGEROUS.

- **NHTSA ID:10965793 Incident Date March 13, 2017:** CVT TRANSMISSION IS SLIPPING AND SHACKING VIOLENTLY AT LOW SPEEDS

- **NHTSA ID:10870850 Incident Date May 17, 2016:** NISSAN IS COVERING-UP A VERY SERIOUS AND ON-GOING PROBLEM WITH ITS CVT TRANSMISSION. I BOUGHT A 2014 NISSAN ROGUE NEW IN MAY 2014. THE VEHICLE NOW HAS 70,700 MILES ON IT. AFTER ONLY 24 MONTHS, THE CVT TRANSMISSION FAILED AND, ACCORDING TO THE LOCAL NISSAN DEALERSHIPS, I NEED A NEW TRANSMISSION AT A COST OF $4,000. THE NISSAN DEALERSHIP IMPLIED (BUT WOULD NOT STATE DIRECTLY) THAT THERE IS A PROBLEM WITH NISSAN'S CVT TRANSMISSION WHICH HAS BEEN ON-GOING FOR 10+ YEARS. HOWEVER, MY CAR IS OUT OF WARRANTY AND I MUST PAY FOR THE NEW TRANSMISSION. THE TRANSMISSION SHOULD NOT FAIL AFTER 24 MONTHS. NISSAN SHOULD ADDRESS THE SYSTEMIC PROBLEM WITH ITS CVT TRANSMISSIONS AND EXTEND ITS WARRANTY FOR CVT TRANSMISSIONS AS IT DID IN 2010 FOR NISSAN VEHICLES IN MODEL YEARS 2003 TO 2010.

- **NHTSA ID:10778560 Incident Date September 2, 2015:** THE ISSUE PRESENTS ITSELF WHEN THE TEMPERATURE IS ABOVE 90 DEGREES AND I HAVE BEEN DRIVING THE CAR FOR AT LEAST 20-30 MINUTES. WHEN THE CAR IS AT A COMPLETE STOP AND YOU TRANSITION FROM THE BRAKE TO THE GAS, THE CAR DOES NOT IMMEDIATELY RESPOND. IT IS AS IF YOU ARE NOT PRESSING THE GAS PEDAL AT ALL. YOU CAN PRESS IT ALMOST ALL THE WAY TO THE

FLOOR BEFORE THE CAR WILL RESPOND. WHEN IT STARTS TO OCCUR, IT IS CONSISTENT WITH OCCURRING EVERY TIME THE CAR COMES TO A STOP. THERE DOES NOT APPEAR TO BE ANY OTHER ISSUES WHILE THE CAR IS IN MOTION. THIS IS EXTREMELY DANGEROUS WHEN YOU ARE MAKING A LEFT OR RIGHT TURN OR ACCELERATING FROM A STOP LIGHT. I HAVE ALMOST BEEN REAR ENDED SEVERAL TIMES BECAUSE THE LIGHT HAS TURNED GREEN AND MY CAR WILL NOT IMMEDIATELY ACCELERATE. I TOOK THE CAR TO THE DEALER ON 9/15, ABOUT 2 WEEKS AFTER THIS STARTED. I WAS INFORMED THAT THIS MIGHT BE DUE TO THE FUEL PUMP RECALL. THEY REPLACED THE FUEL PUMP AND DROVE THE CAR WITHOUT EXPERIENCING ANY ISSUES. AS I WAS DRIVING HOME FROM THE DEALER THAT AFTERNOON, THE ISSUE PRESENTED ITSELF AGAIN. I CALLED THE DEALER AND WAS TOLD TO BRING THE CAR BACK THE FOLLOWING MORNING. THEY KEPT MY CAR FOR 3 DAYS. THEY WERE ABLE TO REPLICATE THE ISSUE AT THE DEALER WHILE CONNECTED TO A COMPUTER. THEY SPOKE TO NISSAN ENGINEERING AND SENT THEM THE FILES. NISSAN ENGINEERING DIDN'T KNOW THE CAUSE AND SAID TO "DRIVE IT UNTIL IT GETS WORSE". MY CAR WAS ALMOST AT THE END OF THE 36,000 MILE WARRANTY. THEY REPLACED A BRAKE SENSOR TO SEE IF THAT WORKED. I PICKED UP THE CAR AND BROUGHT IT BACK TO THE DEALER THE FOLLOWING WEEK WHEN THE ISSUE PRESENTED ITSELF AGAIN. THEY RECORDED MORE DATA TO SEND TO NISSAN. AGAIN, THEY REQUESTED MORE DATA FROM ME YESTERDAY. WHILE IN THE CAR WITH THE TECHNICIAN RECORDING THE ISSUE, MY CAR WOULD NO LONGER ACCELERATE OVER 20 MPH WHILE REVVING THE ENGINE. THIS CAR IS UNSAFE TO DRIVE.

- **NHTSA ID:10563387 Incident Date January 7, 2013:** TL* THE CONTACT OWNS A 2014 NISSAN ROGUE. THE CONTACT STATED THAT WHEN DEPRESSING THE ACCELERATOR PEDAL, THE VEHICLE WOULD NOT RESPOND UNTIL THE PEDAL WAS DEPRESSED APPROXIMATELY HALF WAY. THE VEHICLE WOULD THEN RAPIDLY ACCELERATE FOR SIXTY SECONDS BEFORE RETURNING TO NORMAL FUNCTION. THE CONTACT INDICATED THAT THE DEFECT WAS ONLY PRESENT AFTER THE ENGINE WAS WARM AND THE DEFECT WOULD RECUR INTERMITTENTLY. THE DEALER WAS UNABLE TO DUPLICATE THE FAILURE AND NO REPAIRS WERE PERFORMED. THE MANUFACTURER WAS NOTIFIED OF THE ISSUE. THE FAILURE MILEAGE WAS 300.

**2015 Nissan Rogue:**

- **NHTSA ID:11384219 Incident Date June 6, 2020:** CAR STOPS ACCELERATING RANDOMLY. SOME DAYS IT WON?T GO OVER 60MPH WHILE I?M ALREADY DRIVING ON THE THRUWAY. OTHER DAYS IT WILL DROP SPEED FROM 70 TO 60 AND I HAVE NO CONTROL OVER ACCELERATION. THIS ALWAYS HAPPENS ON THE HIGHWAY.

- **NHTSA ID:11366972 Incident Date October 26, 2020:** I WAS TURNING ON A ROAD WITH A 50 MPH SPEED LIMIT AND MY CAR STARTED SHUDDERING AND THERE WAS WEAK ACCELERATION HAVING TROUBLE GETTING UP TO SPEED. I HAD PLENTY OF TIME TO MAKE THE TURN BUT THE CARS WEAK ACCELERATION CAUSED MY FAMILY TO BE IN AN UNSAFE CONDITION, WE COULD HAVE BEEN HIT. CAR VIBRATIONS, SHUDDERING, WEAK ACCELERATION, AND A LOUD NOISE WAS DETECTED IN THE CVT. I TOOK MY VEHICLE IN TO CHECK THE ISSUE, AND THE REPAIR SHOP STATED I WOULD NEED A NEW TRANSMISSION BECAUSE THESE TRANSMISSIONS HAVE A HISTORY OF PROBLEMS CAUSING A DRIVER AND PASSENGERS TO BE PUT AT RISK.

- **NHTSA ID:11360909 Incident Date June 25, 2019:** THE VEHICLE SOME TIME SHAKES, SHUDDERS, NOISY AND SOME MORE... IT'S TRANSMISSION ISSUE AND THAT'S WHY WORRIED WHAT IS SOMETHING HAPPEN ON ROAD DURING DRIVING???

- **NHTSA ID:11360450 Incident Date August 2, 2020:** JJERKY ON LOW SPEED AND SUDDEN HESITATION WHILE DRIVING ON FREEWAY

- **NHTSA ID:11353298 Incident Date September 1, 2020:** THE NISSAN ROGUE 2013-2016 HAVE A BAD TRANSMISSION ISSUE ON THE CVT DRIVING ON THE HIGHWAY MY CAR GOT STUCK IN GEAR AND WOULD NOT DRIVE MY SISTER ALSO OWN A ROUGE SAME YEAR 2015 HER CAR TRANSMISSION GOT HER STUCK IN THE MIDDLE OF A CITY STREET

- **NHTSA ID:1135270 Incident Date August 30, 2020:** 2015 NISSAN ROGUE CVT HAS BAD HESITATION WHEN ACCELERATING FROM A COMPLETE STOP. THIS BEGINS TO HAPPEN ONCE THE VEHICLE HAS BEEN DRIVEN IN STOP AND GO TRAFFIC FOR ABOUT A HALF HR.

- **NHTSA ID:11351830 Incident Date July 7, 2020:** TOOK MY NISSAN TO MECHANIC AND HE TOLD ME THAT THE TRANSMISSION IS BAD AND I'VE JUST HAD THE CAR FOR LESS THAN 2 YEARS . I BOUGHT IT AND IT HAD 82,000 AND NOW AT 116,000 THE TRANSMISSION IS ALREADY BAD, THAT IS NOT RIGHT AT ALL. I BOUGHT THIS CAR THINKING I WOULDN'T HAVE NOTHING BUT REGULAR MAINTENANCE TO DO IN IT NOT A FREAKING $3000 TO $4000 MAYBE MORE TO PUT INTO IT. MY GOD I PAYED A LOT FOR THIS CAR AND NOW THE TRANSMISSION IS OUT OF IT . THAT'S UNCALLED FOR. NISSAN NEEDS TO STEP UP AND TAKE CARE OF THIS PROBLEM . WHEN I GET IN THE CAR AND START IT UP IT DOESN'T MAKE ANY LOUD SOUNDS THEN WHEN YOU PUT IT IN DRIVE AND ACCELERATE IT MAKES A LOUD ROARING SOUND. AS YOU ACCELERATE IT GETS LOUDER. I'M SO DISGUSTED WITH NISSAN . I WILL NEVER BUY ANOTHER NISSAN IN MY LIFETIME

- **NHTSA ID:11341869 Incident Date July 7, 2020:** TL* THE CONTACT OWNS A 2015 NISSAN ROUGE. THE CONTACT STATED THAT WHILE DRIVING AT AN UNDISCLOSED SPEED, THE CHECK ENGINE WARNING LIGHT ILLUMINATED. THE VEHICLE WAS TAKEN TO NISSAN 24 (1016 BELMONT ST, BROCKTON, MA 02301) WHERE THEY DIAGNOSED THE VEHICLE WITH A DEFECTIVE CVT TRANSMISSION. THE VEHICLE WAS NOT REPAIRED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE AND A CASE WAS FILED. THE MANUFACTURER OFFERED NO ADDITIONAL ASSISTANCE. THE FAILURE MILEAGE APPROXIMATELY 70,000.

- **NHTSA ID:11340945 Incident Date July 19, 2020:** OUR CVT TRANSMISSION WENT OUT WHILE GOING 70 DOWN THE HIGHWAY. COMPLETELY OUT OF THE BLUE, NO PRIOR SYMPTOMS. NO ACCELERATION. ALMOST GOT INTO MULTIPLE ACCIDENTS. NISSAN WILL NOT PAY ANYTHING TO HELP US WITH THIS, DESPITE THE THOUSANDS OF SUBMITTED ISSUES WITH CVT TRANSMISSIONS. OUR FAMILY HAS 3 NISSANS AND 2 HAVE HAD CVT FAILURES. WE WILL NEVER BUY NISSAN'S AGAIN.

- **NHTSA ID:11339436 Incident Date July 14, 2020:** MY CAR STARTED SHAKING WHILE IN REVERSE AND SLOW TO SHIFT GEARS WHILE ACCELERATING AT ABOUT 60K MILES I TOOK IT INTO MULTIPLE NISSAN DEALERSHIPS AND THEY TOLD ME THERE WAS NOTHING WRONG WITH MY CAR. I TOOK IT IN AGAIN AT 80K MILES AND THEY TOLD ME THAT I WAS ON THE WAY TO NEEDING A NEW TRANSMISSION AT 80K! AND THEY HAD SEEN LOTS OF OTHER CARS LIKE MINE BUT THE WARRANTY JUST LAPSED. NOW AT 98K MILES MY CHECK ENGINE LIGHT CAME ON AND I HAD THE CODE RAN TO FIND OUT IT IS THE TRANSMISSION. ANOTHER SIDE EFFECT IS MY GAS MILEAGE HAS DROPPED TO ABOUT 20 MILES TO THE GALLON HIGHWAY .

- **NHTSA ID:11328205 Incident Date June 3, 2020:** I HAVE BEEN BRINGING MY VEHICLE INTO THE DEALERSHIP FOR 4 YEARS COMPLAINING OF THE TRANSMISSION MESSING UP. ( WON'T GO AT RED-LIGHT, SHUDDERS WHEN TAKING OFF, WEIRD NOISES). THEY ALWAYS JUST TEST DROVE IT SAID NOTHING WAS WRONG. I BROUGHT IT IN YESTERDAY FOR AN OIL CHANGE AND AGAIN COMPLAINED ABOUT TRANSMISSION. THE TECH COMES IN AND SAYS I NEED A NEW ONE AND IT HAD BEEN LIKE THAT FOR A WHILE. I BRING MY CAR THERE ALL THE TIME FOR SERVICE AND THEY LIE SAYING THEY CHECK EVERYTHING. NOW I NEED A NEW TRANSMISSION AND THEY WON'T HELP CAUSE THE WARRANTY IS UP BUT THEY WOULD NOT FIX IT WHEN I HAD THE WARRANTY. I WANT EITHER MY CAR FULLY FIXED OR MY MONEY BACK ON THE CAR. I CALLED CONSUMER AFFAIRS AND THEY SAID THEY CAN'T/WON'T HELP. *TR

- **NHTSA ID:11325891 Incident Date May 21, 2020:** LACK OR POWER,HESITATION WHILE ACCELERATING,MAKING WHINING NOISE AND IS SHUTTING OFF PLUS TOPPED WHEN I WAS DRIVING AND WAITING ON THE LIGHT

- **NHTSA ID:11325261 Incident Date January 1, 2020:** MY NISSAN ROGUE'S TRANSMISSION STARTING SLIPPING AROUND 70,000 WHILE ACCELERATING FROM 20 -30 MILE PER HOUR

- **NHTSA ID:11321460 Incident Date August 18, 2020:** VEHICLE WAS BOUGHT NEW, 77K MILES AND I EXPERIENCED SUDDEN SHAKING, SHUDDERING AND I TRIED TO AT LEAST GET IT HOME BUT IT WILL NOT ACCELERATE AT ALL. CVT TRANSMISSION ABSOLUTELY AND PREMATURELY QUIT ON ME! RIDICULOUS! GET IT TOGETHER NISSAN, LIVES ARE AT RISK WITH THIS!!

- **NHTSA ID:11297127 Incident Date May 1, 2019:** CVT TRANSMISSION JERKS IN ECO MODE EACH TIME AFTER RELEASING THE GAS PEDAL, ALSO EVEN WHEN NOT USING ECO MODE THE GRINDING NOISE COMING FROM TRANSMISSION WHEN GOING DOWN THE HILL EVEN IF YOU'RE NOT APPLYING ON THE BRAKE PEDAL, ALSO FRONT PASSENGER SEAT VIBRATES WHEN IN DRIVE MODE AND HOLDING THE BRAKE PEDAL AT THE LIGHT, THE SUV HAS ONLY 33,500 MILES ON IT. IN MY OPINION ALL ISSUES ARE DUE TO MANUFACTURED FAULTY TRANSMISSION. ACCORDING TO MECHANICS CONSULTED WAS TOLD JATCO COMPANY THAT MAKES TRANSMISSION FOR NISSAN MAKES BAD CVT TRANSMISSIONS.

  A FRIEND'S DAD OWNS A NISSAN ALSO AND HAD HIS CVT TRANSMISSION THAT WENT BAD REPLACED WITH A NEW PURCHASED CVT TRANSMISSION FROM NISSAN DEALERSHIP AND AFTER ABOUT 60,000 MILES HE'S HAVING TRANSMISSION ISSUES AGAIN.

- **NHTSA ID:11292424 Incident Date December 28, 2019:** THE CAR SHAKES AT LOW SPEED. TRANSMISSION IS BAD.

- **NHTSA ID:11292294 Incident Date December 16, 2019:** TL* THE CONTACT OWNS A 2015 NISSAN ROGUE. WHILE DRIVING 50 MPH, THE VEHICLE JERKED WITHOUT WARNING. THE CONTACT TOOK THE VEHICLE TO FUCCILLO NISSAN (3893 NY-31, LIVERPOOL, NY 13090) FOR DIAGNOSTIC TESTING. THE VEHICLE WAS REPAIRED. THE DIAGNOSIS RESULTS WERE NOT PROVIDED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THERE WERE NO WARNING INDICATORS ILLUMINATED. THE FAILURE MILEAGE WAS 87,000. *LN *DT *BF

  CONSUMER WAS NOTIFIED THAT THE VEHICLE CODE WAS: P17F0 CUT JUDDER. THE VEHICLE WAS REPAIRED ON 01/16/20 AT TERRY'S TRANSMISSION (N. SYRACUSE, NY). *DL*JB

- **NHTSA ID:1126587 Incident Date September 26, 2019:** 2015 NISSAN ROGUE, BROUGHT BRAND NEW, HAS 63,000 MILES. HAVING TRANSMISSION ISSUES FOR >9 MONTHS. I HAVE HAD NO PREVIOUS ISSUES UNTIL THEN. I CANNOT DRIVE FOR MORE THAN 30+ MIN BEFORE MY VEHICLE STARTS STALLING AT STOPLIGHTS/STOP SIGNS. WHEN I GO TO ACCELERATE AFTER BRIEFLY STOPPING, THE CAR STUTTERS AND BUCKS UNTIL I PRESS HARDER ON THE ACCELERATION. THE STUTTERING GETS WORSE THE LONGER YOU DRIVE IT. THE SAFETY ISSUE WITH A CAR NOT PROPERLY ACCELERATING WHEN YOU NEED IT TO, IS CONCERNING. I HAVE TAKEN IT TO THE NISSAN DEALERSHIP MULTIPLE TIMES AND THEY CLAIM THEY CANNOT "DUPLICATE" THE ISSUE, WHILE THE TECHNICIAN ADMITTED TO EXPERIENCING MY COMPLAINT WHILE HE DROVE IT A FEW TIMES. THEY SAY NOTHING CAN BE DONE BECAUSE NO CODES ARE RENDERING A PROBLEM AND I HAVE TO WAIT FOR THE "PROBLEM" TO GET WORSE OR ULTIMATELY, UNTIL THE TRANSMISSION "GOES OUT" AS THE NISSAN REP TOLD ME.

- **NHTSA ID:11252706 Incident Date August 26, 2019:** WHEN I STARTED MY CAR TO LEAVE WORK IT STARTED FINE. I PUT IT IN REVERSE BUT THERE WAS A DELAY OF A FEW SECONDS. THEN ANOTHER DELAY TO GO INTO DRIVE. THE NEXT DAY I HAD A DR APPOINTMENT I COULDN'T MISS SO I START MY CAR & THE SAME DELAYS. I GO TO LEAVE THE DR OFFICE & MY CAR WOULDN'T GO IN ANYWHERE. I SAT IN THE CAR IN DRIVE FOR 10 MINUTES & IT NEVER ENGAGED.

- **NHTSA ID:11245760 Incident Date August 21, 2019:** TL* THE CONTACT OWNS A 2015 NISSAN ROGUE. THE CONTACT STATED THAT THE VEHICLE JERKED, LUNGED, AND LOST POWER WHILE DRIVING VARIOUS SPEEDS. THE FAILURE OCCURRED WITHOUT WARNING. THE CONTACT STATED THAT THE VEHICLE RESUMED NORMAL OPERATION AFTER THE VEHICLE CAME TO A COMPLETE AND WAS TURNED OFF FOR AT LEAST 24 HOURS. THE DEALER AND MANUFACTURER WERE NOT NOTIFIED. THE CONTACT REFERENCED TECHNICAL SERVICE BULLETIN NUMBER: 15-084A. THE VEHICLE WAS NOT DIAGNOSED OR REPAIRED. THE FAILURE MILEAGE WAS APPROXIMATELY 119,000.

- **NHTSA ID:11229150 Incident Date June 1, 2019:** WHEN I SHIFT INTO DRIVE OR REVERCE IT TAKE A FEW SECONDS TO INGAGE

- **NHTSA ID:11221596 Incident Date June 6, 2019:** TRANSMISSION FAILED AT 62912 MILES. SHUDDER, JERKING, POWER LOSS, WHINING NOISE, LURCHING. THE CAR "JUMPING" FORWARD ALMOST CAUSED ME TO HIT A CAR IN FRONT OF ME ON THE THOMAS JOHNSON BRIDGE DURING RUSH HOUR TRAFFIC. . THE SUDDEN POWER LOSS CAUSED GREAT CONCERN FOR SAFETY ON THE I-95 BELTWAY. I AM GRATEFUL NO ONE GOT HURT.

- **NHTSA ID:11210685  Incident Date April 17, 2019:** TL* THE CONTACT OWNS A 2015 NISSAN ROGUE. WHILE OPERATING THE VEHICLE, THERE WAS A HARD VIBRATION COMING FROM THE STEERING WHEEL. THE VEHICLE WAS TAKEN TO STAR NISSAN (4020 172TH STREET, FLUSHING, NY 11358) WHERE IT WAS DIAGNOSED THAT THE CONTINUOUSLY VARIABLE TRANSMISSION CAUSED THE VIBRATION, WHICH WAS NORMAL. THE VEHICLE WAS TAKEN TO THE DEALER FOUR TIMES FOR THE FAILURE. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE VEHICLE WAS NOT REPAIRED. THE APPROXIMATE FAILURE MILEAGE WAS 28,000

- **NHTSA ID:11174944 Incident Date February 7, 2019:** WHEN DRIVING AND THE CAR HITS ~35MPH, THE CVT CONTINUOUSLY LOSES POWER AND BEGINS CAUSING VIBRATIONS AND SHUDDERING. CAR HAS ~64,000 MILES.

- **NHTSA ID:11121087 Incident Date August 19, 2018:** VEHICLE LOSES POWER. THIS IS RANDOM BUT THE ESP LIGHT IS ALWAYS ON WHEN IT HAPPENS. THIS PROBLEM IS WORSE ON INCLINES. THE CAR WILL NOT MOVE. CAR HESITATES WHEN TRYING TO ACCELERATE. YOU CAN HAVE THE GAS PEDAL ALL THE WAY TO THE FLOOR AND THE CAR WON'T GO, OR BARELY MOVES.

- **NHTSA ID:11092037 Incident Date April 29, 2018:** 86,000 AND THE CVT TRANSMISSION NEED TO BE REPLACED/REBUILT. I HAVE SPOKEN WITH SEVERAL SHOPS AND THIS CVT TRANSMISSION ON THE 2016 NISSAN ROGUE IS KNOWN FOR HAVING PROBLEMS AND COMMONLY HAS TO BE REPLACED. COST OVER $3000

- **NHTSA ID:11044480 Incident Date September 28, 2017:** AFTER DRIVING IN CITY TRAFFIC ALL DAY THE ROGUE WOULD NOT MOVE AS I WAS HEADING HOME FOR THE DAY. I BOUGHT THE ROGUE NEW IN 2015 AND IN OCTOBER 2016 THIS HAPPENED. TOOK TO A DEALERSHIP AND WORK WAS DONE. CAR OK UNTIL:

  SEPTEMBER 2017 THE ROGUE WAS SHIFTING LATE AND NOT DOWN SHIFTING GOING DOWNHILL. TOOK IT BACK TO DEALERSHIP. NISSAN SAID JUST TO DRAIN SOME OF THE TRANSMISSION FLUID AND PUT IN NEW TRANSMISSION FLUID.

- **NHTSA ID:11000299 Incident Date June 5, 2017:** WHEN THE TEMPERATURE IS OVER 90 DEGREES AND THE CAR HAS BEEN RUNNING FOR AT LEAST 10 MINUTES THE CAR HAS ACCELERATION ISSUES. WHEN AT A FULL STANDSTILL SUCH AS AT A STOPLIGHT THE CAR WILL NOT ACCELERATE QUICKLY AND RESPOND TO PEDAL PRESSURE. WHEN THE PEDAL IS FLOORED AND TRYING TO START AGAIN IT HAS A LONG DELAY LIKE THE TRANSMISSION IS IN A HIGH GEAR OR IS OVERHEATED. I KNOW THERE

HAVE BEEN MANY ISSUES ONLINE ABOUT THE CVT OF THE ROGUE. THIS ONLY SEEMS TO HAPPEN WHEN IT IS HOT OUT. THERE ARE ALSO ISSUES WHEN GOING UP AN INCLINE IN HOT TEMPERATURE THE CAR DOES NOT RESPOND TO PEDAL PRESSURE AND ACCELERATION. THIS IS A SAFETY ISSUE IN THAT WHEN TRYING TO TURN LEFT AT A LIGHT I EXPECT MY CAR TO GO AND NOT STUTTER AND THERE HAVE BEEN MANY CLOSE CALLS TO BEING BROADSIDED.

- **NHTSA ID:10920174 Incident Date August 15, 2016:** TL* THE CONTACT OWNS A 2015 NISSAN ROGUE. AFTER APPLYING THE BRAKES ABRUPTLY TO AVOID A COLLISION AND ATTEMPTING TO ACCELERATE, THE VEHICLE LOST POWER. IN ADDITION, THE ACCELERATOR PEDAL WAS DEPRESSED, BUT THE VEHICLE FAILED TO ACCELERATE AND INCREASED IN RPMS. THE FAILURE RECURRED ON NUMEROUS OCCASIONS. THE VEHICLE WAS TAKEN TO A DEALER WHO WAS UNABLE TO DIAGNOSE OR REPAIR THE VEHICLE. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS 7,000. UPDATED 01/11/2017*CT

- **NHTSA ID:10865144 Incident Date June 20, 2015:** TRANSMISSION WAS REPLACED WITHIN 6 MONTHS OF HAVING THE CAR. THEY ALSO ADJUST IDLE SPEED WITHIN A MONTH OF HAVING THE CAR AND ALSO HAD ISSUES WITH POWER SOCKETS. CAR MAKES RATTLE NOISE WHEN ACCELERATING AND MAKE LESS GAS MILAGE THAN AVERAGE . THEY HAD REPROGRAMMED THE TCM ALREADY. THEY ALSO CHANGED THE SHIFTER . THEY HAD ADJUST BOTH FRONT BRAKE BACKING PLATES. I WON'T RECOGNIZE THE SMART KEY SOMETIMES. THEY REPLACED ONE HEADLIGHT ALREADY. IT HAS SEVERAL RECALLS.

- **NHTSA ID:10839975 Incident Date December 4, 2014:** THERE IS A VIBRATION NOTICEABLE IN THE FLOOR, PEDALS AND STEERING WHEEL AT AROUND 1250 ENGINE RPM WHENEVER THE CAR SPEED IS STEADY. IT CORRESPONDS TO ABOUT 45-50 MPH WHEN DRIVING IN ECO MODE. IT HAPPENS WHILE CRUISING AT STEADY SPEEDS ON STRAIGHT OR CURVED ROADS. I HAVE COMPLAINED TWO OR MORE TIMES TO THE DEALER AND NISSAN USA AND THE ONLY REPLY I HAVE RECEIVED IS THAT IT IS NORMAL FOR THAT MODEL. OTHER OWNERS HAVE REPORTED THIS PROBLEM ON INTERNET FORUMS. I AM AFRAID THIS VIBRATION WILL AFFECT THE LONG TERM RELIABILITY OF THIS CAR.

- **NHTSA ID:10779181 Incident Date September 26, 2015:** I WAS DRIVING HOME FROM WORK ONE EVENING, AND SINCE THE OTHER VEHICLES WERE PASSING ME ON THE FREEWAY. I DECIDED TO CHANGE FROM "ECO" MODE TO "SPORT" MODE BECAUSE THE ACCELERATION IS MORE RESPONSIVE AND SMOOTH. WHEN I DID THIS I HIT 3 RPM'S AND TRAFFIC WAS SLOWING DOWN SO I APPLIED THE BRAKES AND THE NEEDLE JUST STEADILY SHOOK AT 3 RPM'S AND I COULD HEAR THE ENGINE REVVING AND ACCELERATING

AS I WAS PUSHING THE BREAKS. SO JUST TO MAKE SURE I KNEW WHAT I EXPERIENCED WAS TRUE I MOVED ALL THE WAY TO THE LEFT LANE. THEN PROCEEDED TO ACCELERATE UP TO 3 RPM'S AND SURE ENOUGH WHEN I APPLIED THE BRAKES IT CONTINUED TO ACCELERATE. I REPEATED THIS 4 MORE TIMES. THEN THE RPM FINALLY CAME BACK DOWN. WHAT I TRIED TO EXPLAIN TO THE SERVICE DEPARTMENT IS YES "SPORT" MODE DOES KEEP RPM'S HIGH I LIKE THAT THAT'S THE REASON WHY I DRIVE IN THAT MODE ON THE FREEWAY. THE ISSUE IS THEY'RE SUPPOSED TO COME DOWN AND NOT REV WHENEVER I PUSH THE BRAKES. I DON'T KNOW IF THIS IS EXCLUSIVE TO MY VEHICLE OR NOT. I JUST DON'T WANT TO BE IN AN ACCIDENT DUE TO THE FACT OF A DETERIORATED FAULTY SYSTEM IN THE VEHICLE.

- **NHTSA ID:10678846  Incident Date January 13, 2015:** MY NISSAN ROGUE HAS A VIBRATION DEFECT, TOOK TO WHARTON AUTO GROUP IN PARKERSBURG W VA THIS IS THE DEALER THAT I PURCHASED ROGUE FROM , DON'T KNOW IF THIS PROBLEM IS A SAFETY DEFECT . DEALERSHIP SAYS THERE IS NO FIX. DEFECT OCCURS FROM 10 MPH UP .. *TR

- **NHTSA ID:10672112 Incident Date January 13, 2015:** MY CAR STARTED TO REV TO OVER 4000 RPMS AT 30 MPH IT WAS LIKE IT WAS STOCK IN LOW FOR OVER 3 MILES I HAD TO PULL OVER STOP THE CAR AND TRY IT AGAIN I WAS UNABLE TO GET IT TO RUN NORMAL I TOOK IT RIGHT TO NISSAN SERVICE THEY CHECKED THE CAR OUT TOLD ME NOTHING WAS WRONG WITH IT. THEY ASKED ME IF I HAD IT IN LOW I TOLD HIM THAT A BIG D WAS SHOWING SO IT WAS IN DRIVE AND I WAS TOLD THEY SEE THAT AT ABOUT 40,000 MILES THEY WOULD NOT GIVE AND PAPER WORK FOR THE SERVICE THAT WAS DONE IF ANY. THERE IS PROBLEM WITH THE TRANSMISSION THIS IS THE 2ND TIME IT HAPPENED TO ME BUT IT CLEARED UP AFTER A LITTLE.

- **NHTSA ID:10668154 Incident Date December 6, 2014:** TL* THE CONTACT OWNS A 2015 NISSAN ROGUE. THE CONTACT STATED THAT WHILE DRIVING AT APPROXIMATELY 10 MPH FROM A STOP SIGN, THE ENGINE BEGAN TO REV AND THE VEHICLE FAILED TO ACCELERATE OVER 10 MPH. IN ADDITION, THE VEHICLE STALLED. THE VEHICLE WAS RESTARTED BUT FAILED TO DRIVE OR REVERSE. THE VEHICLE WAS TOWED TO THE DEALER, WHO DIAGNOSED THAT THE TRANSMISSION NEEDED TO BE REPLACED. THE VEHICLE WAS REPAIRED. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE. THE VIN WAS UNAVAILABLE. THE APPROXIMATE FAILURE MILEAGE WAS 500.

- **NHTSA ID:10662439 Incident Date December 4, 2014:** THE CAR REVS UP TO 5 RPMS AT 60MPH LIKE ITS STUCK IN NEUTRAL. NEED TO TAKE THE FOOT OFF THE GAS GET DOWN TO 50MPH AND WAS ABLE TO GET IT BACK UP TO 65MPH. I DID THIS IN RUSH HOUR TRAFFIC. I WAS AFRAID THE PERSON

BEHIND WAS GOING TO HIT TO CHANGE SPEEDS SO FAST. NISSAN LOOKED AT THE CAR TODAY AND SAID THERE WASN'T AN ISSUE AND I NEEDED TO DO THAT TO LET THE TRANSMISSION CATCH UP. NEVER HEARD OF SUCH A THING. MY LAST NISSAN AT 98K DIED BECAUSE OF THE TRANSMISSION. BEFORE IT DIED IT WAS DOING THE SAME THING. *TR

**2016 Nissan Rogue:**

- **NHTSA ID:11386228 Incident Date August 19, 2020:** WHEN IN GEAR (DRIVE, REVERSE, LOW) THE CAR WILL VIBRATE CONSTANTLY AS WELL AS AT A STOP NOT JUST WHILE DRIVING. THE SEATS ARE CONSTANTLY MOVING (VIBRATING, CREAKING WHILE TURNING) WHEN SPEEDING UP IT HESITATES TO SHIFT OR SHIFTS ROUGH.

- **NHTSA ID:11385290 Incident Date November 15, 2020:** HE TRANSMISSION ON THIS CAR BEGAN SLIPPING AND REFUSED TO GO INTO GEAR. IT CLUNKED AND BUCKED ALONG AT LOW SPEEDS. ONCE IN DRIVE IT WAS FINE, BUT WOULD NOT GO INTO ANOTHER GEAR. WE WERE ABLE TO GET IT HOME AND THERE IS HAS SAT UNTIL 12/28/20 WHEN WE WERE ABLE TO GET IT TOWED. WHEN WE TRIED TO GET IT INTO GEAR, IT WOULD NOT MOVE FROM PARK TO NEUTRAL EVEN. WE DID NOT GO TO A DEALER AS THEY WERE TWICE AS FAR AS THE MECHANIC WE FOUND. NISSAN REFUSED TO CONSIDER A RECALL OR ISSUE EVEN WITH A SETTLED LAWSUIT ON OTHER CVT TRANSMISSIONS. THEY WOULDN'T EVEN PAY FOR THE TOW AND SIMPLY SAID "SORRY".

- **NHTSA ID:11384163 Incident Date November 27, 2020:** WAS DRIVING CAR AND TRANSMISSION DIED IN THE MIDDLE OF THE ROAD. HAD TO HAVE IT TOWED TO REPAIR SHOP AND NEEDS A NEW TRANSMISSION. NISSAN ONLY COVERS UP TO 60000 MILES AND I AM OVER THAT SO IF IS COSTING ME $5000 TO REPLACE IT

- **NHTSA ID:11372855 Incident Date November 3, 2020:** TL* THE CONTACT OWNS A 2016 NISSAN ROGUE. THE CONTACT STATED WHILE DRIVING AT AN UNDISCLOSED SPEED, THE VEHICLE SHUDDERED AND JERKED WHILE THE GEAR SHIFTER FAILED TO SHIFT. THE CONTACT ATTEMPTED TO RESTART THE VEHICLE HOWEVER, THE VEHICLE CONTINUED TO EXHIBIT THE SAME FAILURE. THE TRACTION CONTROL WARNING LIGHT WAS ILLUMINATED. THE VEHICLE WAS TOWED TO FOX NISSAN OF GRAND RAPIDS (4430 28TH ST SE, GRAND RAPIDS, MI 49512, (616) 942-8040) BUT WAS NOT DIAGNOSED NOR REPAIRED THE MANUFACTURER WAS CONTACTED AND INFORMED OF THE FAILURE. THE CONTACT WAS REFERRED TO THE LOCAL DEALER HOWEVER, NO FURTHER ASSISTANCE WAS PROVIDED. THE FAILURE MILEAGE WAS 108,000.

- **NHTSA ID:11362232 Incident Date September 1, 2020:** ROGUE TURNED OFF WHILE DRIVING ON A MAIN ROAD. NO CHECK ENGINE LIGHTS WERE ON. VEHICLE THEN WOULD SLOWLY SHUTTER AND AFTER A WEEK WOULD SHUTTER EVEN MORE BETWEEN 20-45 MPH. AFTER 60 MPH, THE CAR WOULD STRART TO REV ON ITS OWN WHILE I WAS DRIVING. IT ALSO STARTING HUMMING WITH ACCELERATION AND RATTLE WHEN I WOULD LET GO OF THE GAS PEDAL. SHIFTING INTO REVERSE WOULD TAKE MORE THAN 10 SECS TO SHIFT, AND SAME WITH GOING INTO DRIVE. THE WARMER THE CAR WAS, THE MORE IT SHUTTERED.

- **NHTSA ID:11359775 Incident Date September 18, 2020:** WHILE DRIVING ON THE ROAD, MY VEHICLE SUDDENLY EXPERIENCED ISSUES WITH ITS CVT. THE VEHICLE WAS OVERWORKING AND IN 4TH GEAR GOING 20 MPH ON A RURAL ROAD. THIS OCCURRED WITHIN A MONTH AFTER AN INSPECTION, WITH MY VEHICLE PASSING WITH FULL MARKS. THE NISSAN CVT IS FLAWED AND SHOULD BE RECALLED.

- **NHTSA ID:11354367 Incident Date September 31, 2020:** NOTICED VEHICLE WAS HAVING TROUBLE WHEN INTERMITTENT PAUSES OCCURED WHILE DRIVING ON THE HIGHWAY. I WAS WORRIED ABOUT THE CONDITION OF MY CAR, SO LIMITED MY DRIVING TO CLOSE IN-TOWN TRIPS UNTIL I COULD GET IT TO THE DEALERSHIP FOR SERVICE. DROVE 2 MILES YESTERDAY (09/10/20) AND IT STARTED JUTTING AND IS NO LONGER SAFE TO DRIVE.

- **NHTSA ID:11349346 Incident Date July 17, 2020:** I FIRST NOTICED THIS WHILE DRIVING HOME ON MY STREET WITH A SPEED LIMIT OF 45 IT HAPPENED WHEN I WAS ACCELERATING AND FROM THEN ON IT WOULD HAPPEN RANDOMLY. EITHER ON THE HIGHWAY, A CITY STREET, STARTING FROM A COMPLETE STOP MY CAR STARTED TO JUMP, SHUDDER/SHAKE, STALL, AND VIBRATE, WHICH HAD NEVER HAPPENED BEFORE. THERE WILL BE TIMES WHERE I AM PUT IN A DANGEROUS SITUATION AS I CANNOT CONTROL THE CARS ACCELERATION AND IT WILL SPEED UP VERY RAPIDLY OR NOT ALLOW ME TO SPEED UP AT ALL. I HAVE AN APPOINTMENT WITH THE NISSAN ROUGE DEALERSHIP NEAREST TO ME ON 8/20/2020 AND I WILL KEEP THE INFORMATION FROM THIS APPOINTMENT IN MY RECORDS.

- **NHTSA ID:11343692 Incident Date August 6, 2020:** 2016 NISSAN ROGUE, 84, 000 MILES. VEHICLE BEGAN HAVING TROUBLE SHIFTING GEARS WHILE DRIVING IT. SHUDDERING AND JERKING. RPM'S FLUCTUATING ALL OVER THE TACH. CHECK ENGINE LIGHT CAME ON. I TOOL IT TO MY MECHANIC TO PULL THE CODES, WHICH THEY DID, AND THEY REFERRED ME TO THE DEALERSHIP. ON MY WAY HOME, DURING WHICH THE VEHICLE COULD GO NO MORE THAN 25 MILES AN HOUR, IT COMPLETELY LOST POWER ON A SMALL INCLINE. REVERSE AND DRIVE DID NOT WORK. I HAD TO HAVE SOMEONE PUSH THE CAR BACK OUT OF THE INTERSECTION IT WAS STUCK IN. I HAD TO HAVE IT TOWED. PROBLEM IS THE CVT TRANSMISSION.

- **NHTSA ID:11341730 Incident Date August 24, 2020:** DEFECTIVE TRANSMISSIONS JERK, STALL, SHUDDER, HESITATE, AND EVEN SUFFER FROM PREMATURE TRANSMISSION FAILURE. UNEXPECTED SURGE OF POWER FROM THE ENGINE. I CARRIED IT IN THE NISSAN CROSSROADS WAKE FOREST NC. THEY TOLD ME CVT UNIT NEEDS REPLACING.

  THE VEHICLE LEFT ME STRANDED ON INTERSTATE 40 DRIVING BACK FROM MORRISVILLE NC FROM WORK. AFTER SEVERAL TRIES I FINALLY GOT IT TO THE DEALERSHIP AT 11PM LEAVING ME STALLED AGAIN . I COULD HAVE CAUSED AN ACCIDENT.

  THE VEHICLE ONLY HAS 92,612 MILES. NISSAN WON'T TAKE ANY INTEREST IN PAYING FOR THE REPAIRS EVEN THOUGH THEY HAVE HAD LAWSUITS ALONG WITH MULTIPLE COMPLAINTS ABOUT THEIR CVT TRANSMISSION.

  I'M A SINGLE MOM WORKING DURING THIS COVID VIRUS TO SHIPPER MYSELF AND MY CHILD WITH NO OTHER INCOME. THIS VEHICLE IS TOO NEW TO HAVE THESE PROBLEMS. I HAVE TO DRIVE AN HOUR TO WORK AND AN HOUR BACK. I NEED A VEHICLE ASAP . I'M STILL LOCK IN PAYMENTS WITH THIS VEHICLE AND CANNOT AFFORD TO TRADE WITH THIS VEHICLE MALFUNCTIONING.

- **NHTSA ID:1133752 Incident Date July 15, 2020:** PREMATURE FAILURE OF CVT TRANSMISSION

  OTHER ROUGE COVERED TO 120,000 MILES

- **NHTSA ID:11337747 Incident Date June 2, 2020:** CAR BEGAN LOSING POWER WHEN ACCELERATING AND SHUTTERING BEFORE FINALLY CATCHING GEAR AND MOVING. CAR WOULD ALSO EXHIBIT A "WHINING OR WHIRLING" NOISE WHEN ACCELERATING. EVENTUALLY THE CAR BEGAN VIBRATING FROM THE BACK END AT APPROXIMATELY 60 MPH. TOOK CAR TO ABC NISSAN IN PHOENIX AND THEY DIAGNOSED WITH FAILING REAR DIFFERENTIAL. WAS ADVISED TO CONTACT NISSAN CUSTOMER CARE AS CAR WAS 4 YEARS OLD AND 70,000 MILES. CUSTOMER CARE DRAGGED OUT A "NOTHING WE CAN DO FOR YOU" RESPONSE" FOR NEARLY 1 MONTH. THIS IS A VERY DANGEROUS PROBLEM WHEN TURNING INTO TRAFFIC AS INTERMITTENTLY, THE CAR WILL NOT ACCELERATE WHEN MAKING A TURN.I AM WORRIED NOW THAT THE NOTORIOUS CVT TRANSMISSION WILL GO OUT NEXT.

- **NHTSA ID:11337369 Incident Date June 24, 2020:** TOOK CAR IN TO DEALER DUE TO NOISE, CORPORATE INVESTIGATOR NEEDED TO COME IN TO REVIEW, AND REPLACED TRANSFER CASE. UPON PICKING CAR UP, NOISE STILL THERE AND UPON FURTHER INSPECTION CVT TRANMISSION ASSEMBLY

REPLACED. UPON PICKING UP THIRD TIME, GRINDING NOISE EASILY HEARS WHEN ACCELERATING. ALL ISSUES OCCURRED WHILE DRIVING, AND LUCKILY TRANSMISSION DID NOT FAIL. CONCERN NOT ONLY ABOUT TRANSMISSION ISSUE PREVALENT IN OTHER NISSAN MODELS INCLUDING OLDER ROGUES, BUT DEALER CONTINUING TO RETURN VEHICLE WHEN EASILY DISCERNIBLE TO NON-MECHANIC THAT ISSUES HAVE NOT BEEN CORRECTED.

- **NHTSA ID:11330135 Incident Date June 20, 2020:** WHEN I PUSH THE GAS THE CAR BARELY MOVES - LITERALLY - AND THEN IT WILL GO ALL THE SUDDEN. IT HAS ALMOST CAUSED MULTIPLE ACCIDENTS BECAUSE I CAN FIND NO RHYME OR REASON TO WHEN IT WILL HAPPEN.

- **NHTSA ID:11329905 Incident Date June 10, 2020:** BAD CVT TRANSMISSION

- **NHTSA ID:11329627 Incident Date June 18, 2020:** EVERY TIME I ACCELERATE MY CAR IDLES HIGH AND IS SLUGGISH. *TR

- **NHTSA ID:11326827 Incident Date September 12, 2019:** AT ABOUT 58000 MILES SEPT 2019 I FIRST NOTICED ISSUES WITH ACCELERATION AND NOISE. I WAS ABOUT TO GO OUT OF TOWN AND WAS AFRAID TO GET ON THE HIGHWAY. I TOOK MY CAR TO NISSAN OF BOWIE. THE SERVICE REPRESENTATIVE SAID THERE WERE NO CODES ACTIVATED AND NO RECALLS ON THE CAR. HE GAVE ME A LIST OF OTHER CONCERNS FOR MY CAR (BRAKES, ROTORS, AND TIRES). I LEFT THE DEALERSHIP AND DID NOT DRIVE OUT OF TOWN AS PLANNED. MY HUSBAND REPLACED MY ROTORS, BRAKES, AND TIRES. STILL THE CAR WAS SHAKY. NEXT TRIP OUT OF TOWN WAS IN MAY 2020. MY CAR STALLED OUT WHILE WE WERE ON THE HIGHWAY TO VISIT MY FAMILY IN KENTUCKY. WE WERE AN HOUR AWAY FROM OUR HOTEL AND DROVE EXTREMELY SLOW. NO DEALERSHIPS WERE OPEN ON SUNDAY. WE TOOK MY CAR TO COYLE NISSAN IN SOUTHERN INDIANA. THIS TIME THE CHECK ENGINE LIGHT WAS ON. THEY EXPLAINED THAT THE TRANSMISSION WAS COMPLETELY TRASHED AND OUT OF WARRANTY. I TRIED TO SEE IF MY INSURANCE COMPANY WOULD COVER IT. A SERVICE TECHNICIAN AT THIS LOCATION TOLD MY INSURANCE COMPANY THERE IS NOTHING I COULD HAVE DONE TO DAMAGE THE TRANSMISSION. IT GOES OUT ON ITS OWN. THE CVT TRANSMISSIONS HAVE HAD THIS PROBLEM FOR YEARS. I CALLED THE NISSAN WARRANTY PEOPLE TO GET SUPPORT. THEY AGREED TO PAY PARTS AND NOT LABOR. WHILE I WAS STRANDED OUT OF TOWN AND STUCK IN A HOTEL, I HAD TO PAY 2000 DOLLARS FOR LABOR TO GET BACK ON THE ROAD AND RETURN TO MARYLAND. I FILED A BBB AUTOLINE COMPLAINT AND THEY SAID THEY ONLY HELP WITH CARS LESS THAN 3 YEARS OLD. MY SECOND TRANSMISSION WAS PUT IN ON MAY 14TH AND WENT OUT LESS THAN TWO WEEKS LATER ON MAY 27TH. I NOTICED ISSUES THIS TIME AS SOON AS WE HEADED TO MARYLAND. IT STALLED OUT COMPLETELY WHILE I WAS ON THE HIGHWAY AGAIN. THIS CAR IS NOT

SAFE. I AM STILL MAKING PAYMENTS ON THIS CAR AND AM ON A THIRD TRANSMISSION. THERE WAS A CLASS-ACTION LAWSUIT AGAINST NISSAN FOR THE EXACT TRANSMISSION IN 2019 ON OTHER MODELS. *TR

- **NHTSA ID:11325266 Incident Date March 4, 2020:** TL* THE CONTACT OWNS A 2016 NISSAN ROGUE. THE CONTACT STATED THAT WHILE AT A STOP LIGHT AND ATTEMPTING TO MOVE FROM THE STOPPED POSITION, THE ACCELERATOR PEDAL WAS DEPRESSED HOWEVER, THE VEHICLE LOSS POWER AND HESITATED. THE CONTACT ALSO STATED THAT THE VEHICLE WAS SLOW TO MOVE OFF FROM A STOP. THE VEHICLE WAS TURNED OFF AND RESTARTED AND OPERATED AS INTENDED. THE VEHICLE WAS TAKEN TO AN INDEPENDENT MECHANIC BUT WAS NOT DIAGNOSED NOR REPAIRED. THE INDEPENDENT MECHANIC INFORMED THE CONTACT TO CONTACT THE LOCAL DEALER FOR ASSISTANCE. A DEALER WAS NOT CONTACTED. THE MANUFACTURER WAS CONTACTED AND INFORMED OF THE FAILURE. THE CONTACT WAS INFORMED THAT NEITHER THE DIAGNOSTIC TEST NOR THE REPAIR WERE COVERED UNDER THE VEHICLE WARRANTY. THE FAILURE MILEAGE WAS APPROXIMATELY 64,000.

- **NHTSA ID:11325266 Incident Date March 4, 2020:** TL* THE CONTACT OWNS A 2016 NISSAN ROGUE. THE CONTACT STATED THAT WHILE AT A STOP LIGHT AND ATTEMPTING TO MOVE FROM THE STOPPED POSITION, THE ACCELERATOR PEDAL WAS DEPRESSED HOWEVER, THE VEHICLE LOSS POWER AND HESITATED. THE CONTACT ALSO STATED THAT THE VEHICLE WAS SLOW TO MOVE OFF FROM A STOP. THE VEHICLE WAS TURNED OFF AND RESTARTED AND OPERATED AS INTENDED. THE VEHICLE WAS TAKEN TO AN INDEPENDENT MECHANIC BUT WAS NOT DIAGNOSED NOR REPAIRED. THE INDEPENDENT MECHANIC INFORMED THE CONTACT TO CONTACT THE LOCAL DEALER FOR ASSISTANCE. A DEALER WAS NOT CONTACTED. THE MANUFACTURER WAS CONTACTED AND INFORMED OF THE FAILURE. THE CONTACT WAS INFORMED THAT NEITHER THE DIAGNOSTIC TEST NOR THE REPAIR WERE COVERED UNDER THE VEHICLE WARRANTY. THE FAILURE MILEAGE WAS APPROXIMATELY 64,000.

- **NHTSA ID:11324042 Incident Date March 10, 2020:** THIS VEHICLE SPONTANEOUSLY HESITATES UPON PRESS OF THE HAS PEDAL. *TR

- **NHTSA ID:11320350 Incident Date April 3, 2020:** BEARING WORN OUT IN TRANSMISSION AT 67000 MILES; THE ONLY WARNING I HAD WAS A NOISE COMING FROM UNDER THE CAR WHEN CAR WAS IN MOTION SOUNDED LIKE THE SPIN CYCLE OF A WASHING MACHINE, NO NOISE HEARD WHEN CAR WAS STOPPED NO WARNING LIGHT ON THE DASH BOARD BUT HAD TO REPLACE ENTIRE TRANSMISSION

- **NHTSA ID:11301259 Incident Date January 18, 2020:** BOUGHT THIS CAR FOR OUR 16 YEAR OLD DAUGHTER TO DRIVE. IT HAS 16,000 MILES ON IT. IT HAS

STARTED SHUTTERING AND LURCHING UPON ACCELERATION. AT ONE POINT SHE WAS DRIVING IT ON A BUSY FOUR LANE HIGHWAY AND IT STARTED LURCHING AND THE CAR DIED IN THE MIDDLE OF THE HIGHWAY. LUCKILY SHE WAS ABLE TO MOVE TO THE SHOULDER. THIS IS A MAJOR SAFETY ISSUE. WE TOOK THE CAR TO THE DEALERSHIP AND THEY UPDATED THE SOFTWARE. MY HUSBAND WENT TO PICK IT UP AND IT DID IT AS HE WAS LEAVING THE DEALERSHIP. HE IMMEDIATELY TURNED AROUND AND LEFT THE VEHICLE AGAIN. THEY ARE SAYING THAT IT MAY BE THE BELT INSIDE THE TRANSMISSION.

- **NHTSA ID:11300472 Incident Date January 20, 2020:** SITTING IN HEAVY TRAFFIC ON THE INTERSTATE, TRAFFIC WAS MOVING VERY SLOW (STOP AND GO) AS I DEPRESSED THE GAS PEDAL THE CAR BEGAN TO SHUDDER AND JOLT. I RELEASED THE GAS PEDAL AND TRIED AGAIN AND RECEIVED THE SAME RESULT. ONCE I WAS ABLE TO ACCELERATE MORE I WAS ABLE TO CONTINUE. I THEN TOOK MY VEHICLE TO MY MECHANIC WHERE HE EXPLAINED MY TRANSMISSION WAS GOING TO STOP WORKING AND I WILL NEED A NEW TRANSMISSION. HE HAD A MACHINE THAT WAS HOOKED UP TO MY VEHICLE SHOWING THE CVT CODE. I DID NOT THINK TO ASK FOR A COPY OF THE READ OUT.

- **NHTSA ID:11278314 Incident Date July 10, 2019:** TL* THE CONTACT OWNS A 2016 NISSAN ROGUE. THE CONTACT STATED THAT THE TRANSMISSION VIBRATED WHILE DRIVING 30 TO 60 MPH. THERE WERE NO WARNING INDICATORS ILLUMINATED. THE VEHICLE WAS TAKEN TO AN UNKNOWN DEALER WHO STATED THAT THE TRANSMISSION VIBRATION WAS NORMAL. THE VEHICLE WAS EQUIPPED WITH A CONTINUOUSLY VARIABLE TRANSMISSION. ON ONE OCCASION, THE RPMS INCREASED WHEN THE GEAR WAS SHIFTED. THE MANUFACTURER WAS CONTACTED AND PROVIDED CASE NUMBER: 37751621. THE VEHICLE WAS NOT DIAGNOSED OR REPAIRED. THE FAILURE MILEAGE WAS 46,000.

- **NHTSA ID:11222944 Incident Date June 14 2019:** I PURCHASED A 2016 ROGUE SV (VIN [XXX], I HAVE HAD NOTHING BUT PROBLEMS WITH THIS VEHICLE SINCE I BROUGHT IT HOME. I HAD THE HEAD UNIT REPLACE NO LESS THAN 4 SEPARATE TIMES BECAUSE IT WOULD STOP WORKING AND GO BLACK. THE CAR HAD LESS THAN 10,000 MILES ON IT. I WAS TOLD IT WAS BEING REPLACED WITH A "BRAND NEW UNIT". THE DEALERSHIP FORGOT TO TRANSFER MY XM SUBSCRIPTION TO THE NEW UNIT, SO WHEN I CALLED TO ACTIVATE I FIND OUT NOT ONLY IS IT NOT NEW, ITS 4 YEARS OLDER THAN THE CAR I OWN. WHILE REPLACING THIS THE TECHNICIANS DESTROYED THE SURROUNDING TRIM.

  LAST JUNE MY CAR STARTED STALLING OUT, THIS HAPPENED ON MULTIPLE OCCASIONS. THE ENGINE DIED BUT THE ELECTRICAL COMPONENTS STAYED ON. IT HAS DIED AT GAS STATIONS, STOP LIGHTS

AND PULLING ONTO A ROADWAY. IT CONTINUES TO SHUDDERS AT STOP LIGHTS. NISSAN WAS UNABLE TO REPLICATE THE EVENTS SO I WAS TOLD TO TAKE IT HOME.

LAST WEEK MY ROGUE BEGAN TO PUSH 6000 RPMS WHILE ON THE HIGHWAY, PEDAL TO THE FLOOR AND I NEVER MADE IT ABOVE 45MPH. DURING THIS EVENT THE CAR WOULDN'T GO BELOW 4000RPMS, THIS EVENT LASTED ABOUT 30MINS. THIS HAPPENED MULTIPLE TIMES AND WE HAVE VIDEO OF THE EVENTS, ABOUT 15 MINUTES WORTH. I WAS TOLD THIS WEEK THAT THE DEALERSHIP HAD SENT THE ISSUES TO NISSAN, AND THAT WITH THE VIDEO/THE COMPLAINTS THAT NISSAN WOULD REPLACE AND FIX WHAT THEY BELIEVED TO BE THE PROBLEM, SOMETHING WITH THE TRANSMISSION. THE DEALERSHIP THEN CALLED MY HUSBAND AND TOLD HIM THAT WE COULD PICK UP THE VEHICLE AND TAKE IT HOME. THEY TOLD HIM THAT "NISSAN CREATED A TECHNOLOGY" THAT IS NOW INSTALLED IN THE VEHICLE SO THE NEXT TIME AN EVENT HAPPENS IT WILL RECORD IT, TO CONTINUE DRIVING IT FOR A 1,000 MILES.

I FEEL UNSAFE IN THIS VEHICLE. I DO NOT TRUST THIS VEHICLE TO DELIVER MY DAUGHTER AND I SAFELY AND RELIABLY TO OUR DESTINATION. I WILL BE HAPPY TO SHARE THE VIDEO AS WELL

INFORMATION REDACTED PURSUANT TO THE FREEDOM OF INFORMATION ACT (FOIA), 5 U.S.C. 552(B)(6). *TT

- **NHTSA ID:11206860 Incident Date May 9, 2019:** -CAR HAS 56,000 MILES

-A FEW TIMES OVER THE PAST FEW MONTHS, IT HESITATES WHEN ACCELERATING FROM A FULL STOP

-YESTERDAY, IT HAPPENED A LOT, AND SEVERAL TIMES I EVEN PUSHED THE ACCELERATOR TO THE FLOOR, AND NOTHING HAPPENED...THEN IT SUDDENLY REVVED AND SHOT FORWARD AFTER A FEW SECONDS. TERRIFYING.

-I RESEARCHED AND IT'S A KNOWN ISSUE, BUT TODAY THE DEALER SAID THEY WON'T DO ANYTHING BECAUSE NO ERROR CODES, ETC., ARE SHOWING UP.

- **NHTSA ID:11202709 Incident Date April 20, 2019:** ABOUT A YEAR AGO (2018) MY CAR STARTED OCCASIONALLY LOSING POWER AFTER I HAD STOPPED AT A LIGHT OR STOP SIGN AFTER DRIVING ON A CITY STREET OR GETTING OFF THE HIGHWAY. I WOULD PUSH THE GAS PEDAL AND MY CAR WOULD NOT MOVE UNTIL ABOUT 5 SECONDS LATER. IF I KEEP DRIVING WHILE THIS HAPPENS, EVENTUALLY THE CAR WILL NOT GO OVER 40 MPH, THE RPMS WILL GO UP TO 4K-5K AND THE ENGINE WILL REV WITHOUT GAINING

SPEED. IT WILL THEN START LURCHING FORWARD AND JERKING BACK AND FORTH. I FINALLY FIGURED OUT THAT IF I STOP AND THEN RESTART MY CAR, THE ISSUE SUBSIDES. HOWEVER, THIS ISSUE HAS STARTED HAPPENING MORE AND MORE FREQUENTLY. I WOULD ESTIMATE DRIVING THE CAR FOR AN HOUR, IT WILL HAPPEN 7-8 TIMES (WHEN TURNING THE CAR OFF, THEN ON AGAIN). IT MAKES DRIVING DANGEROUS WHEN I AM NOT ABLE TO ACCELERATE WHEN NEEDED OR WHEN MY CAR IS JERKING UNCONTROLLABLY.

MY STRUTS ALSO KEEP SQUEAKING WHEN I GO OVER SPEED BUMPS OR ANY OTHER BUMP. THE DEALER REPEATEDLY TELLS ME IT'S A KNOWN ISSUE BUT NOTHING THAT NEEDS TO BE REPLACED SINCE IT'S NOT A SAFETY ISSUE.

- **NHTSA ID:11193278 Incident Date March 30, 2019:** TRANSMISSION FAILED AT 59,000 MILES. TRUCK JUST STOP AND LOST POWER. IT WOULDN'T GO INTO GEAR ACCELERATE OR ANYTHING. THIS HAPPENED WHILE I WAS DOING 55MPH IT JUST SHUT DOWN AND THANK GOD I WAS ABLE TO ROLL TO THE SHOULDER. THERE WAS NO WARNING.

- **NHTSA ID:11166223 Incident Date January 7, 2019:** TL* THE CONTACT OWNS A 2016 NISSAN ROGUE. THE CONTACT STATED THAT THE TRANSMISSION WOULD NOT SHIFT INTO GEAR CORRECTLY AND THE RPM READING WAS INACCURATE. IN ADDITION, THE CHECK ENGINE WARNING INDICATOR ILLUMINATED AND "FRONT END COLLISION" APPEARED ON THE INSTRUMENT PANEL. THE VEHICLE WAS TAKEN TO A LOCAL MECHANIC WHO DIAGNOSED THAT THE TRANSMISSION WAS FAULTY. THE VEHICLE WAS NOT REPAIRED. THE DEALER AND MANUFACTURER WERE NOT MADE AWARE OF THE FAILURE. THE FAILURE MILEAGE WAS 82,000.

- **NHTSA ID:11152378 Incident Date November 10, 2018:** TRANSMISSION FAILURE AT 69450 MILE SOLENOID COMPARTMENT B INSIDE TRANSMISSION DEALER SAYS TRANSMISSION NEEDS REPLACING CAR OUTSIDE OF WARRANTEE FOR POWERTRAIN OF 60000 MILES. CAR TRANSMISSION STARTED SLIPPING WHILE ON HIGHWAY IN CRUISE CONTROL RPM REVIVING HIGH WITHOUT PRESSING THE ACCELARATOR EVENTUALLY STOPPED HAD TO TOW TO DEALER.

- **NHTSA ID:11132341 Incident Date September 28, 2018:** CAR DOES NOT GO INTO GEAR. SLIPS OUT OF GEAR WHEN DRIVING. WILL NOT ACCELERATE AFTER STOPPING. IT REVS UP AND THEN ACCELERATES QUICKLY ALMOST CAUSING ME TO HIT THE CAR IN FRONT OF ME.

- **NHTSA ID:11119320 Incident Date August 2, 2018:** MY 2016 NISSAN ROGUE EXPERIENCED AN ABRUPT AND TOTAL FAILURE OF THE CVT TRANSMISSION. I WAS NOT ABLE TO ACCELERATE AND THE VEHICLE

WOULD LURCH AND LOSE POWER. THIS ABRUPT FAILURE MAKES ME FEEL VERY UNSAFE FOR MYSELF AND MY FAMILY THAT RIDES IN THIS CAR, HAD IT STALLED ON THE BUSY ST LOUIS MO INTERSTATES WE WOULD HAVE BEEN HIT AND POSSIBLY KILLED, LUCKILY I WAS ON A BUSY, BUT LESS TRAVELED ROAD AND I WAS ABLE TO LIMP THE CAR TO THE DEALERSHIP. MY VEHICLE ONLY HAS 41,000 MILES ON IT. ONCE I GOT TO THE DEALERSHIP, I INSISTED THAT THEY RIDE WITH ME SO THEY KNEW WHAT WAS HAPPENING AND NOT TRY TO SAY THAT THEY COULDN'T REPLICATE THE ISSUE WHEN DRIVING IT ALONE. THE SERVICE PROFESSIONAL WAS VERY UPFRONT AND HONEST WITH ME AND TOLD ME IT WAS DEFINITELY THE TRANSMISSION AND NISSAN HAS TONS OF THESE ISSUES WITH THEIR VEHICLES. MY CAR HAS BEEN IN THE SHOP FOR OVER A WEEK NOW FOR A TRANSMISSION REBUILD. HOWEVER, NISSAN IS NOT OFFERING AN EXTENDED WARRANTY OR ANYTHING ON IT, EVEN THOUGH THEY KNOW THEY ARE FAULTY AND DANGEROUS, I WILL ONLY HAVE 20,000 MILES LEFT ON MY WARRANTY ONCE I PICK MY CARE UP FROM THE DEALERSHIP. NISSAN DOESN'T OFFER LOANER CARS TO THOSE WITH WARRANTY WORK THAT NEEDS DONE, WE HAVE TO PAY $35 A DAY DUE TO THEIR FAULTY VEHICLES, THE LEAST THEY CAN DO IS OFFER LOANER VEHICLES FOR WARRANTY WORK! NISSAN NEEDS TO HELD ACCOUNTABLE FOR THEIR LEMON VEHICLES AND BE REQUIRED TO BUY THEM BACK ON THE FIRST TRANSMISSION FAILURE. I NO LONGER FEEL SAFE DRIVING THIS CAR, EVEN WITH THE REBUILT TRANSMISSION AND I DON'T THINK THAT IT SHOULD BE MY RESPONSIBILITY TO TRADE THE CAR IN, ROLL OVER THOUSANDS TO ANOTHER VEHICLE LOAN AND PAY $1500 OR MORE IN TAXES TO LICENSE AND TITLE ANOTHER VEHICLE. NISSAN NEEDS TO TAKE CARE OF THIS AND THEY NEED TO BE FINED FOR THEIR CONTINUED USE OF FAULTY TRANSMISSIONS AND MADE TO BUY BACK FAULTY AND DANGEROUS VEHICLES.

- **NHTSA ID:11118369 Incident Date August 7, 2018:** TL* THE CONTACT OWNS A 2016 NISSAN ROGUE. WHILE DRIVING 65 MPH, THE TRANSMISSION FAILED. UPON DEPRESSING THE ACCELERATOR PEDAL, A LOUD DRAGGING NOISE WAS HEARD. THE VEHICLE WAS TAKEN TO AN INDEPENDENT MECHANIC WHO DIAGNOSED THAT THE CVT WAS FAULTY. A DEALER AND THE MANUFACTURER WERE NOT MADE AWARE OF THE FAILURE. THE VEHICLE WAS NOT REPAIRED. THE FAILURE MILEAGE WAS APPROXIMATELY 69,000.

- **NHTSA ID:11118369 Incident Date August 7, 2018:** TL* THE CONTACT OWNS A 2016 NISSAN ROGUE. WHILE DRIVING 65 MPH, THE TRANSMISSION FAILED. UPON DEPRESSING THE ACCELERATOR PEDAL, A LOUD DRAGGING NOISE WAS HEARD. THE VEHICLE WAS TAKEN TO AN INDEPENDENT MECHANIC WHO DIAGNOSED THAT THE CVT WAS FAULTY. A DEALER AND THE MANUFACTURER WERE NOT MADE AWARE OF THE FAILURE. THE VEHICLE WAS NOT REPAIRED. THE FAILURE MILEAGE WAS APPROXIMATELY 69,000.

- **NHTSA ID:11063774 Incident Date September 11, 2017:** TL\* THE CONTACT LEASED A 2016 NISSAN ROGUE. THE DRIVER STATED THAT THE TRANSMISSION FAILED TO FUNCTION PROPERLY. AN INDEPENDENT MECHANIC DETERMINED THAT THE VEHICLE WAS NOT SAFE TO DRIVE AND SUGGESTED THAT IT BE SERVICED BY THE DEALER WHO SOLD THE VEHICLE. THE CONTACT STATED THAT THE VEHICLE HESITATED AND THE GEARS WERE DIFFICULT TO SHIFT. THE VEHICLE WAS TAKEN TO THE DEALER (HILLTOP NISSAN, 258 NJ-10, EAST HANOVER, NJ 07936, (973) 887-5400) WHERE THE TRANSMISSION WAS REPLACED TWICE, BUT INDICATED THAT IT NEEDED TO BE REPLACED A THIRD TIME. THE DEALER WAS UNCERTAIN IF THEY COULD OFFER A LOANER VEHICLE UNTIL THE FAILURE WAS REMEDIED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE VIN WAS NOT AVAILABLE. THE APPROXIMATE FAILURE MILEAGE WAS 45,000.

- **NHTSA ID:11063166 Incident Date November 2, 2017:** AS I WAS TRAVELLING ON A MAJOR FREEWAY, MY BRAND NEW 2016 NISSAN ROGUE BEGAN TO FEEL LIKE IT WAS "JUMPING." AT THAT POINT I NOTICED MY RPMS WERE HIGH FOR THE SPEED I WAS GOING. NOT EVEN 30 SECONDS AFTER, MY CAR COMPLETELY STALLED. I WAS IN THE FAST LANE OF THE FREEWAY AND BARELY HAD TIME TO REACT. I ENDED UP STUCK ON THE MEDIAN OF THE FREEWAY. I ENDED UP HAVING THE CAR TAKEN TO THE DEALER DOWN THE ROAD. THEY SAID THEY COULDN'T FIND ANYTHING WRONG WITH IT. I REFUSED TO DRIVE IT AND BEGAN SEEKING FURTHER HELP THROUGH NISSAN CONSUMER AFFAIRS. AFTER NEARLY A MONTH, AN ENGINEER FROM NISSAN TOOK 5 MINUTES TO LOOK AT IT AND NOTICED THE TRANSMISSION WAS SLIPPING. THE PREVIOUS WEEK BEFORE THIS MAJOR INCIDENT, THE CAR IS STALLED A FEW BLOCKS FROM MY HOME ON A RESIDENTIAL STREET AFTER ACCELERATING FROM A COMPLETE STOP. THE DEALERSHIP HAD TOLD ME THERE WAS NOTHING WRONG WITH IT AND IT WAS SAFE TO DRIVE. NOW HERE WE ARE 2 MONTHS LATER, AND IT FEELS AS IF THE TRANSMISSION IS SLIPPING AGAIN.

- **NHTSA ID:10955290 Incident Date January 27, 2017:** TL\* THE CONTACT OWNS A 2016 NISSAN ROGUE. WHILE DRIVING 20-40 MPH, THE VEHICLE EXPERIENCED MODERATE CONSTANT VIBRATION WITHOUT WARNING. THE DEALER DIAGNOSED THAT THE VEHICLE RAN AS INTENDED. THE VEHICLE WAS NOT REPAIRED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS APPROXIMATELY 500....UPDATED 05/17/17 \*BF

- **NHTSA ID:10955053 Incident Date January 27, 2017:** A NISSAN DEALER HAD PREFORMED A SERVICE CAMPAIGN PC4900 TO MY 2016 NISSAN ROGUE IT INVOLVED THE CVT TRANSMISSION SOFTWARE AND SINCE THEY DID IT THE CAR IS NOT DRIVING LIKE BEFORE. THE SHIFTING IS SLOWER AND

TAKES LONGER TO SHIFT, THE ENGINE IS LOUDER AND REVVING HIGHER AND THE FUEL ECONOMY GOT VERY BAD.

CONTACTED THE DEALER AND ASKED IF THIS SERVICE CAMPAIGN CAN BE REVERSED AND THEIR ANSWER WAS "NO" I WILL BE TAKING THE CAR BACK TO THEM HAVE THEM CHECK IT AND ALSO CONTACTED NISSAN CORP AND OPENED A CASE. I HOPE THEY FIX THIS PROBLEM AS SOON AS POSSIBLE

47.     Although Defendants were aware of the widespread nature of the CVT Defect in the Class Vehicles, and the grave safety risk posed by it, Defendants took no steps to notify customers of the CVT Defect or to provide them with any relief.

48.     Customers have reported the CVT Defect in the Class Vehicles to Defendants directly and through its dealers. As a result of these reports and its own internal testing, among other things, Defendants were fully aware of the CVT Defect contained in the Class Vehicles throughout the Class Period. Nevertheless, Defendants actively concealed the existence and nature of the CVT Defect from Plaintiffs and the other Class Members at the time of purchase or repair and thereafter. Specifically, Defendants:

a.     Failed to disclose and/or actively concealed, at and after the time of purchase or repair, any and all known material defects or material nonconformities of the Class Vehicles, including the CVT Defect;

b.     Failed to disclose and/or actively concealed, at and after the time of purchase or repair, that the Class Vehicles and their CVTs were not in good working order, were defective, and were not fit for their intended purpose; and

c.     Failed to disclose and/or actively concealed, at and after the time of purchase or repair, the fact that the Class Vehicles and their CVTs were defective, despite the fact that Defendants learned of such defects as early as 2013, if not before.

49.     Defendants have deprived Class Members of the benefit of their bargain, exposed them all to a dangerous safety Defect, and caused them to expend money at its dealerships or other third-party repair facilities and/or take other remedial measures related to the CVT Defect contained in the Class Vehicles.

50. Defendants have not recalled the Class Vehicles to repair the CVT Defect, has not offered to its customers a suitable repair or replacement of parts related to the CVT Defect free of charge, and has not offered to reimburse Class Vehicle owners and leaseholders who incurred costs for repairs related to the CVT Defect.

51. Class Members have not received the value for which they bargained when they purchased or leased the Class Vehicles.

52. As a result of the CVT Defect, the value of the Class Vehicles has diminished, including without limitation the resale value of the Class Vehicles. Reasonable consumers, like Plaintiffs, expect and assume that a vehicle's CVT is not defective and will not place vehicle occupants at an increased risk of an accident. Plaintiffs and Class Members further expect and assume that Defendants will not sell or lease vehicles with known safety defects, such as the CVT Defect, and will disclose any such defect to its customers prior to selling or leasing the vehicle, or offer a suitable repair. They do not expect that Defendants would fail to disclose the CVT Defect to them, and continually deny the defect.

## VI. TOLLING OF THE STATUTE OF LIMITATIONS

53. Plaintiffs and the other Class Members were not reasonably able to discover the CVT Defect, despite their exercise of due diligence.

54. Despite their due diligence, Plaintiffs and the other Class Members could not reasonably have been expected to learn or discover that they were deceived and that material information concerning the Class Vehicles and their continuously variable transmission was concealed from them.

55. In addition, even after Class Members contacted Nissan and/or its authorized agents for vehicle repairs concerning the defective nature of the Class Vehicles and their continuously variable transmissions, they were routinely told by Nissan and/or through their authorized agents for vehicle repairs that the Class Vehicles are not defective.

56. Hence, any applicable statute of limitation, if any, has been tolled by Nissan's knowledge, active concealment, and denial of the facts alleged herein. Nissan is further estopped

from relying on any statute of limitation because of its concealment of the defective nature of the Class Vehicles and their continuously variable transmissions.

## VII.    CLASS ACTION ALLEGATIONS

57.    Plaintiffs bring this lawsuit as a class action on behalf of themselves and all others similarly situated as members of the proposed Classes and Sub-Classes pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), and/or (b)(3).  This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of those provisions.

58.    The Classes and Sub-Classes are defined as:

**The Nationwide Class:** All individuals who purchased or leased any 2014-2016 Nissan Rogue vehicle in the United States.

**The Alabama Sub-Class:** All members of the Nationwide Class who purchased or leased any 2014-2016 Nissan Rogue vehicle in the State of Alabama.

**The Tennessee Sub-Class:** All members of the Nationwide Class who purchased or leased any 2014-2016 Nissan Rogue vehicle in the State of Tennessee.

**The Texas Sub-Class:** All members of the Nationwide Class who purchased or leased any 2014-2016 Nissan Rogue vehicle in the State of Texas.

59.    Excluded from the Classes and Sub-Classes are: (1) Defendants, any entity or division in which Defendants have a controlling interest, and its legal representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned and the Judge's staff; and (3) those persons who have suffered personal injuries as a result of the facts alleged herein.  Plaintiffs reserve the right to amend the Class definitions, and to add further subclasses, if discovery and further investigation reveal that the Class and subclasses should be expanded or otherwise modified.

60.    **Numerosity:** Although the exact number of Class Members is uncertain and can only be ascertained through appropriate discovery, the number is great enough such that joinder is impracticable.  The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court.  The Class Members are readily

identifiable from, *inter alia*, information and records in Defendants' possession, custody, or control.

61. **Typicality:** The claims of the representative Plaintiffs are typical of the claims of the Classes and Sub-Classes in that the representative Plaintiffs, like all Class Members, paid for a Class Vehicle designed, manufactured, and distributed by Defendants which is subject to the CVT Defect. The representative Plaintiffs, like all Class Members, have been damaged by Defendants' misconduct in that he has incurred or will incur the cost of repairing or replacing his malfunctioning continuously variable transmission and related parts as a result of the CVT Defect. Further, the factual bases of Defendants' misconduct are common to all Class Members and represent a common thread of fraudulent, deliberate, and/or grossly negligent misconduct resulting in injury to all Class Members.

62. **Commonality:** There are numerous questions of law and fact common to Plaintiffs and the Classes and Sub-Classes that predominate over any question affecting only individual Class Members. These common legal and factual questions include the following:

    a.    whether the Class Vehicles suffer from the CVT Defect;

    b.    whether the CVT Defect constitutes an unreasonable safety hazard;

    c.    whether Defendant knows about the CVT Defect and, if so, how long Defendant has known of the Defect;

    d.    whether the defective nature of the Class Vehicles' CVT constitutes a material fact;

    e.    whether Defendant had and has a duty to disclose the defective nature of the Class Vehicles' CVT to Plaintiffs and the other Class Members;

    f.    whether Plaintiffs and the other Class Members are entitled to equitable relief, including, but not limited to, a preliminary and/or permanent injunction;

g.      whether Defendant knew or reasonably should have known of the CVT Defect contained in the Class Vehicles before it sold or leased them to Class Members; and,

h.      Whether Defendants are liable for the consumer protection, common law and warranty claims asserted in the twenty-eight causes of action set forth below.

63.      **Adequate Representation:**  Plaintiffs will fairly and adequately protect the interests of the Class Members.  Plaintiffs have retained attorneys experienced in the prosecution of class actions, including consumer and product defect class actions, and Plaintiffs intend to prosecute this action vigorously.

64.      **Predominance and Superiority**:  Plaintiffs and the Class Members have all suffered and will continue to suffer harm and damages as a result of Defendant's unlawful and wrongful conduct.  A class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law.  Because of the relatively small size of the individual Class Members' claims, it is likely that only a few Class Members could afford to seek legal redress for Defendants' misconduct.  Absent a class action, Class Members will continue to incur damages, and Defendants' misconduct will continue without remedy.  Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants and will promote consistency and efficiency of adjudication.

## FIRST CAUSE OF ACTION
(Violations of the Alabama Deceptive Trade Practices Act Ala. Code §§ 8-19-1 *et seq*., ("ADTPA") on behalf of the Nationwide Class and, in the alternative, the  Alabama Sub-Class)

65.      Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

66.     Plaintiff Teresa Stringer brings this cause of action on behalf of herself and on behalf of the Nationwide Class and, in the alternative, the Alabama Sub-Class.

67.     Nissan is a "person" as defined by Ala. Code § 8-19-3(5).

68.     Plaintiff and Class Members are "consumers" within the meaning of Ala. Code § 8-19-3(2).

69.     By failing to disclose and concealing the defective nature of the Class Vehicles' continuously variable transmission from Plaintiff and prospective Class Members, Defendants violated Ala. Code § 8-19-5 by (1) "Representing that goods…ha[d] characteristics … benefits, or qualities that they do not have"; (2) Representing that goods … are of a particular standard, quality, or grade … [when] they are of another"; (3) "Engaging in … other unconscionable, false, misleading, or deceptive act or practice in the conduct of …commerce". *See* Ala. Code § 8-19-5 (5), (7), (27).

70.     Defendants' unfair and deceptive acts or practices occurred repeatedly in Defendants' trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

71.     Defendants knew that the Class Vehicles' continuously variable transmissions suffered from an inherent defect, were defectively designed or manufactured, would fail prematurely, and were not suitable for their intended use.

72.     Defendants were under a duty to Plaintiff and the Class Members to disclose the defective nature of the Class Vehicles' continuously variable transmissions and/or the associated repair costs because:

        a.      Defendants were in a superior position to know the true state of facts about the safety defect contained in the Class Vehicles' continuously variable transmissions;

        b.      Plaintiff and the Class Members could not reasonably have been expected to learn or discover that their continuously variable transmissions have a dangerous safety defect until after they purchased the Class Vehicles; and,

c.    Defendants knew that Plaintiff and the Class Members could not reasonably have been expected to learn about or discover the CVT Defect.

73.    By failing to disclose the CVT Defect, Defendant knowingly and intentionally concealed material facts and breached its duty not to do so.

74.    The facts concealed or not disclosed by Defendants to Plaintiff and the other Class Members are material because a reasonable consumer would have considered them to be important in deciding whether or not to purchase the Class Vehicles, or to pay less for them.  Had Plaintiff and other Class Members known that the Class Vehicles' continuously variable transmissions were defective, they would not have purchased the Class Vehicles or would have paid less for them.

75.    Plaintiff and the other Class Members are reasonable consumers who do not expect that their vehicles will suffer from a CVT Defect.  That is the reasonable and objective consumer expectation for vehicles and their continuously variable transmissions.

76.    As a result of Defendants' misconduct, Plaintiff and the other Class Members have been harmed and have suffered actual damages in that the Class Vehicles and their continuously variable transmissions are defective and require repairs or replacement.

77.    As a direct and proximate result of Defendants' unfair or deceptive acts or practices, Plaintiff and the other Class Members have suffered and will continue to suffer actual damages.

78.    By a letter dated December 8, 2020 and sent via certified mail, Plaintiff provided Defendants with notice of its alleged violations of the ADTPA pursuant to Ala. Code § 8-19-10(e) and demanded that Defendants rectify the problems associated with the behavior detailed above. On or about December 31, 2020, Nissan responded with a "No Offer Letter" which stated "Nissan is not willing to comply with your client's demands nor are we willing to make any offer of settlement."

79.    Accordingly, Plaintiff seeks actual damages, restitution, statutory and punitive damages, attorneys' fees and costs, and any other relief that the Court deems proper under §§ Ala.

Code § 8-19-10 and 8-19-1, *et seq*, due to Defendants' failure to rectify or agree to adequately rectify its violations as detailed above.

**SECOND CAUSE OF ACTION**

(Violation of the Tennessee Consumer Protection Act §§ 47-18-101, *et. seq*, ("Tennessee CPA")
Individually on behalf of Karen Brooks)

80.     Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

81.     Plaintiff Karen Brooks brings this cause of action on behalf of herself.

82.     Plaintiff is a "natural person" and "consumer" within the meaning of Tenn. Code Ann. § 47-18-103(2).

83.     Defendants are "person(s)" within the meaning of Tenn. Code. Ann. § 47-18-103(2).

84.     Defendants' conduct described herein affected "trade," or "commerce" or "consumer transactions" within the meaning of Tenn. Code. Ann. § 47-18-103(19).

85.     By failing to disclose and concealing the defective nature of the Class Vehicles' continuously variable transmission from Plaintiffs and prospective Class Members, Defendants violated the Tennessee Consumer Protection Act by: (1) "Representing that goods or services have … characteristic, [or] … benefits …. that they do not have ….;" (2) "Representing that goods or services are of a particular standard, quality or grade … if they are of another;" and (3) "Advertising goods or services with intent not to sell them as advertised." Tenn. Code. Ann. § 47-18-104.

86.     Defendants' unfair and deceptive acts or practices occurred repeatedly in Defendants' trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

87.     Defendants knew that the Class Vehicles' continuously variable transmissions suffered from an inherent defect, were defectively designed or manufactured, would fail prematurely, and were not suitable for their intended use.

88.     Defendants were under a duty to Plaintiff and the Class Members to disclose the defective nature of the Class Vehicles' continuously variable transmissions and/or the associated repair costs because:

    a.      Defendants were in a superior position to know the true state of facts about the safety defect contained in the Class Vehicles' continuously variable transmissions;

    b.      Plaintiff and the Class Members could not reasonably have been expected to learn or discover that their continuously variable transmissions have a dangerous safety defect until after they purchased the Class Vehicles; and,

    c.      Defendants knew that Plaintiff and the Class Members could not reasonably have been expected to learn about or discover the CVT Defect.

89.     By failing to disclose the CVT Defect, Defendants knowingly and intentionally concealed material facts and breached its duty not to do so.

90.     The facts concealed or not disclosed by Defendants to Plaintiff and the other Class Members are material because a reasonable consumer would have considered them to be important in deciding whether or not to purchase the Class Vehicles, or to pay less for them. Had Plaintiff and other Class Members known that the Class Vehicles' continuously variable transmissions were defective, they would not have purchased the Class Vehicles or would have paid less for them.

91.     Plaintiff and the other Class Members are reasonable consumers who do not expect that their vehicles will suffer from a CVT Defect. That is the reasonable and objective consumer expectation for vehicles and their continuously variable transmissions.

92.     As a result of Defendants' misconduct, Plaintiff and the other Class Members have been harmed and have suffered actual damages in that the Class Vehicles and their continuously variable transmissions are defective and require repairs or replacement.

93.     As a direct and proximate result of Defendants' unfair or deceptive acts or practices, Plaintiff has suffered and will continue to suffer actual damages.

94.     Accordingly, Plaintiff seeks actual damages, restitution, statutory and punitive damages, attorneys' fees and costs, and any other relief that the Court deems proper under Tenn. Code. Ann. § 47-18-109(a), *et seq*, due to Defendants' failure to rectify or agree to adequately rectify its violations as detailed above.

## THIRD CAUSE OF ACTION
(Breach of Implied Warranty Tenn. Code. Ann. § 47-2-314 *et. seq*., on behalf of the Nationwide Class and, in the alternative, the Tennessee Sub-Class)

95.     Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

96.     Plaintiff Karen Brooks brings this cause of action on behalf of herself and the Nationwide Class and, in the alternative, the Tennessee Sub-Class.

97.     Defendants are merchants with respect to motor vehicles.

98.     Defendants provided Plaintiff and Class Members with an implied warranty that the Class Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things: (i) a warranty that the Class Vehicles' transmission designed, manufactured, supplied, distributed, and/or sold by Defendants were safe and reliable for providing transportation; and (ii) a warranty that the Class Vehicles' transmission would be fit for their intended use while the Class Vehicles were being operated.

99.     Contrary to the applicable implied warranties, the Class Vehicles, at the time of sale and thereafter, were not fit for their ordinary and intended purpose of providing Plaintiff and the other Class Members with reliable, durable, and safe transportation. Instead, the Class Vehicles are defective, as described more fully above,

100.    Defendants were on notice of the CVT Defect as discussed more fully above.

101.    As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Plaintiff has been damaged in an amount to be proven at trial.

## FOURTH CAUSE OF ACTION

(Violations of Texas Deceptive Trade Practices Act Tex. Bus. Comm. Code §§ 17.41 *et. seq.*, ("DTPA") on behalf of the Nationwide Class and, in the alternative, the Texas Sub-Class)

102.    Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

103.    Plaintiff William Papania brings this cause of action on behalf of himself and on behalf of the Nationwide Class and, in the alternative, the Texas Sub-Class.

104.    Plaintiff and Class Members are "consumers" within the meaning of DTPA § 17.45(4).

105.    The Class Vehicles are "goods" under DTPA § 17.45(1).

106.    By failing to disclose and concealing the defective nature of the Class Vehicles' continuously variable transmission from Plaintiff and prospective Class Members Defendant violated the DTPA which makes unlawful "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce." Tex. Bus. & Com. Code Ann. § 17.46. Defendant's conduct, as described above and below, constitutes "deceptive acts or practices" within the meaning of the DTPA §§ 17.50 and 17.46. In that Defendant: (1) "represent[ed] that goods or services have …. characteristics…uses, benefits, or quantities which they do not have…"; (2) "represent[ed] that goods … are of a particular standard, quality, or grade…if they are of another" (DTPA §17.46(7)); (3) "advertis[ed] goods or service with intent not to sell them as advertised" (DTPA §17.46(9)); (4) "represent[ed] that a guaranty or warranty confers or involves rights or remedies which it does not have or involve" (DTPA §17.46(20)); (5) engaged in an 'unconscionable action or course of action' (DTPA §17.50(3)). Furthermore, Defendant's deceptive acts and practices, which were intended to mislead consumers who were in the process of purchasing and/or leasing the Defective Vehicles, was conduct directed at consumers.

107.    Defendants knew that the Class Vehicles' continuously variable transmissions suffered from an inherent defect, were defectively designed and/or manufactured, would fail prematurely, and were not suitable for their intended use.

108.     In failing to disclose the CVT Defect, Defendants knowingly and intentionally concealed material facts and breached its duty not to do so, thereby engaging in deceptive acts or practices within the meaning of the DTPA § 17.46.

109.     Defendants were under a duty to Plaintiff and the other Class Members to disclose the defective nature of the Class Vehicles' continuously variable transmissions because:

110.     Defendants were in a superior position to know the true state of facts about the safety defect in the Class Vehicles' CVTs;

111.     Defendants made partial disclosures about the quality of the Class Vehicles without revealing the defective nature of the Class Vehicles' CVT; and

112.     Defendants actively concealed the defective nature of the Class Vehicles' CVTs from Plaintiff and Class Members at the time of sale and thereafter.

113.     The facts concealed or not disclosed by Defendants to Plaintiff and the other Class Members are material because a reasonable person would have considered them to be important in deciding whether or not to purchase or lease Defendant's Class Vehicles, or to pay less for them. Had Plaintiff and other Class Members known that the Class Vehicles suffered from the CVT Defect described herein, they would not have purchased or leased the Class Vehicles or would have paid less for them.

114.     Defendants continued to conceal the defective nature of the Class Vehicles and their CVT even after Class Members began to report problems.  Indeed, Defendants continue to cover up and conceal the true nature of this systematic problem today.

115.     Plaintiff also asserts a violation of public policy arising from Defendants' withholding of material safety facts from consumers.  Defendants' violation of consumer protection and unfair competition laws resulted in harm to consumers.

116.     Defendants' omissions of material facts, as set forth herein, also constitute deceptive acts or practices because they violate consumer protection laws, warranty laws and the common law as set forth herein.

117. Thus, by its conduct, Defendants have engaged in deceptive acts or practices within the meaning of the DTPA §§ 17.50 and 17.46.

118. Defendants' deceptive acts or practices occurred repeatedly in Defendants' trade or business, and were capable of deceiving a substantial portion of the purchasing public.

119. As a direct and proximate result of Defendants' deceptive acts or practices, Plaintiff and Class Members have suffered and will continue to suffer actual damages.

120. Accordingly, Plaintiff seeks an order granting the following injunctive relief: that Nissan notify all Texas Sub- Class Members of the CVT Defect and offer to provide them with non-defective CVTs free of charge; that Nissan extend the warranty for the Texas Class Members' CVTs to ten years/unlimited mileage; and, that Defendants cease the sale and leasing of the Class Vehicles in the State of Texas and otherwise cease Defendants' deceptive conduct described herein. Plaintiff also seeks reasonable attorneys' fees and costs, as allowed.

121. By a letter dated December 8, 2020 and sent via certified mail, Plaintiff provided Defendants with notice of its alleged violations of the DTPA pursuant to Tex. Bus. & Com. Code Ann. § 17.505(a) and demanded that Defendants rectify the problems associated with the behavior detailed above. By letter dated December 30, 2021, "Nissan is not willing to comply with your client's demands nor are we willing to make any offer of settlement." If within sixty (60) days Nissan fails to adequately respond to Plaintiff's demands, Plaintiff will seek leave to amend this complaint to seek damages any other just and proper relief available under the DTPA.

### FIFTH CAUSE OF ACTION
(Breach of Implied Warranty of Merchantability, Tex. Bus. & Com. Code § 2.314 *et seq.* on behalf of the Nationwide Class and, in the alternative, the Texas Sub- Class)

122. Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

123. Plaintiff William Papania brings this cause of action on behalf of herself and the Nationwide Class and, in the alternative, the Texas Sub-Class.

124. Defendants are merchants with respect to motor vehicles.

125.    Defendants provided Plaintiff and Class Members with an implied warranty that the Class Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things: (i) a warranty that the Class Vehicles' transmission designed, manufactured, supplied, distributed, and/or sold by Defendants were safe and reliable for providing transportation; and (ii) a warranty that the Class Vehicles' transmission would be fit for their intended use while the Class Vehicles were being operated.

126.    Contrary to the applicable implied warranties, the Class Vehicles, at the time of sale and thereafter, were not fit for their ordinary and intended purpose of providing Plaintiff and the other Class Members with reliable, durable, and safe transportation. Instead, the Class Vehicles are defective, as described more fully above,

127.    Defendants were on notice of the CVT Defect as discussed more fully above.

128.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiff has been damaged in an amount to be proven at trial.

## SIXTH CAUSE OF ACTION
(Breach of Implied Warranties Under Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.* on behalf of the Nationwide Class and, in the alternative, the Tennessee and Texas Sub-Classes)

129.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

130.    Plaintiffs Karen Brooks and William Papania bring this cause of action on behalf of themselves and on behalf of the Nationwide Class and, in the alternative, the Tennessee and Texas Sub-Classes.

131.    Plaintiffs and Class Members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

132.    Defendants are "supplier(s)" and "warrantor(s)" within the meaning of 15 U.S.C. §§ 2301(4)-(5).

133. The Class Vehicles are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

134. Defendants' implied warranty is an "implied warranty" within the meaning of 15 U.S.C. § 2301(7).

135. Defendants breached the implied warranty by virtue of the above-described acts.

136. Plaintiffs and the other Class Members notified Defendants of the breach within a reasonable time and/or were not required to do so. Defendants were also on notice of the CVT Defect from, among other sources, the complaints and service requests it received from Class Members and its dealers.

137. Defendants' breach of the implied warranty deprived Plaintiffs and Class Members of the benefits of their bargains.

138. As a direct and proximate result of Defendants' breach of the implied and express warranties, Plaintiffs and the other Class Members sustained damages and other losses in an amount to be determined at trial. Defendants'; conduct damaged Plaintiffs and the other Class Members, who are entitled to recover actual damages, consequential damages, specific performance, diminution in value, and costs, including statutory attorney fees and/or other relief as appropriate.

## SEVENTH CAUSE OF ACTION
(Fraudulent Omission behalf of the Nationwide Class and, in the alternative, the Alabama, Tennessee, and Texas Sub-Classes)

139. Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

140. Plaintiffs bring this cause of action on behalf of themselves and the Nationwide Class and, in the alternative, the Alabama, Tennessee, and Texas Sub-Classes.

141. Defendants knew that the Class Vehicles' suffered from an inherent defect, were defectively designed and/or manufactured and were not suitable for their intended use.

142. Defendants concealed from and failed to disclose to Plaintiffs and Class Members the defective nature of the Class Vehicles and their CVTs.

143. Defendants were under a duty to Plaintiffs and Class Members to disclose the defective nature of the Class Vehicles' CVTs because:

a. Defendants were in a superior position to know the true state of facts about the safety defect in the Class Vehicles' CVTs;

b. Plaintiffs and the Class Members could not reasonably have been expected to learn or discover that their CVTs have a dangerous safety defect until after they purchased or leased the Class Vehicles;

c. Defendants knew that Plaintiffs and the Class Members could not reasonably have been expected to learn about or discover the CVT prior to purchase or lease; and

d. Defendants actively concealed the defective nature of the Class Vehicles' CVTs from Plaintiffs and Class Members at the time of sale and thereafter.

144. The facts concealed or not disclosed by Defendants to Plaintiffs and the other Class Members are material in that a reasonable person would have considered them to be important in deciding whether to purchase or lease Defendants' Class Vehicles or pay a lesser price for them. Had Plaintiffs and Class Members known about the defective nature of the Class Vehicles' CVTs, they would not have purchased or leased them, or would have paid less for them.

145. Defendants concealed or failed to disclose the true nature of the design and/or manufacturing defects contained in the Class Vehicles' CVTs in order to induce Plaintiffs and Class Members to act thereon. Plaintiffs and the other Class Members justifiably relied on Defendants' omissions to their detriment. This detriment is evident from Plaintiffs' and Class Members' purchase or lease of Defendants' defective Class Vehicles.

146. Defendants continued to conceal the defective nature of the Class Vehicles' transmissions even after Class Members began to report the problems. Indeed, Defendants continue to cover up and conceal the true nature of the problem today.

147. As a direct and proximate result of Defendants' misconduct, Plaintiffs and Class Members have suffered and will continue to suffer actual damages.

## **RELIEF REQUESTED**

148.     Plaintiffs on behalf of themselves and all others similarly situated, request that the Court enter judgment against Defendant, and issue an order providing the following relief:

a.     Certifying the proposed Class and Sub-Classes, designating Plaintiffs as a named representatives of the Class, and designating the undersigned as Class Counsel;

b.     A declaration that Nissan is financially responsible for notifying all Class Members about the defective nature of the CVT in the Class Vehicles;

c.     An order directing Defendants to provide notice, in a form pre-approved by the counsel identified below, to all current owners or lessees of the Class Vehicles, and in the said notice offer to replace the defective CVT contained in every Class Vehicle with a non-defective CVT;

d.     An order directing Defendants to provide notice, in a form pre-approved by the counsel identified below, to all current owners and lessees of the Class Vehicles, of an appropriate warranty extension of the Class Vehicles' CVT and related components.

e.     An order directing Defendants to offer reimbursement to all current and former owners and lessees of the Class Vehicles, for all expenses already incurred as a result of the CVT Defect, including but not limited to repairs, diagnostics, and any other consequential and incidental damages (*e.g.* towing charges, vehicle rentals, etc.).

f.     An order directing Defendants to immediately cease the sale and leasing of the Class Vehicles at authorized Nissan dealerships nationwide without first notifying the purchasers of the CVT Defect, and otherwise immediately cease to engage in the violations of law as set forth above.

g.     Damages and restitution in an amount to be proven at trial.

h.     Any and all remedies provided pursuant to the state consumer protection laws, implied warranty laws, the Magnuson-Moss Warranty Act and under common law fraud;

i.     An award to Plaintiffs and the Class of compensatory, exemplary, and statutory damages, including interest, in an amount to be proven at trial;

j. That Defendants disgorge, for the benefit of the Class, all or part of the ill-gotten profits they received from the sale or lease of the Class Vehicles, and/or make full restitution to Plaintiffs and Class Members;

k. An award of attorneys' fees and costs, as allowed by law;

l. An award of pre-judgment and post-judgment interest, as allowed by law;

m. Leave to amend the Complaint to add further subclasses and to conform to the evidence produced at trial; and,

n. Such other relief as may be appropriate under the circumstances.

## DEMAND FOR A JURY TRIAL

149. Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any and all issues in this action so triable as of right.

DATED:  February 5th, 2021                    Respectfully submitted,


                                              By:*/s/ J. Gerard Stranch, IV*
                                              J. Gerard Stranch, IV (BPR 23045)
                                              Benjamin A. Gastel (BPR 28699)
                                              **BRANSTETTER, STRANCH & JENNINGS PLLC**
                                              223 Rosa L. Parks Avenue, Suite 200
                                              Nashville, Tennessee 37203
                                              Phone: 615-254-8801
                                              Fax: 615-255-5419
                                              gerards@bsjfirm.com
                                              beng@bsjfirm.com

                                              **GREENSTONE LAW APC**
                                              Mark Greenstone (*pro hac vice to be filed*)
                                              1925 Century Park East, Suite 2100
                                              Los Angeles, California 90067
                                              Telephone: (310) 201-9156
                                              Facsimile: (310) 201-9160
                                              mgreenstone@greenstonelaw.com

                                              **GLANCY PRONGAY & MURRAY LLP**
                                              Marc L. Godino (*pro hac vice to be filed*)
                                              Danielle L. Manning (*pro hac vice to be filed*)
                                              1925 Century Park East, Suite 2100
                                              Los Angeles, California 90067
                                              Telephone: (310) 201-9150
                                              Facsimile: (310) 201-9160

                                              *Attorneys for Plaintiff*