IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| TERESA STRINGER, KAREN BROOKS, WILLIAM PAPANIA, JAYNE NEWTON, MENACHEM LANDA, ANDREA ELIASON, BRANDON LANE, DEBBIE O'CONNOR, MICHELLE WILLIAMS and WAYNE BALNICKI, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiffs,<br><br>v.<br><br>NISSAN NORTH AMERICA, INC., and NISSAN MOTOR CO., LTD.<br><br>    Defendants. | Case No. 3:21-cv-00099<br><br>DECLARATION OF CARLA PEAK IN SUPPORT OF SETTLEMENT NOTICE PLAN |

I, Carla Peak, declare as follows:

1. My name is Carla Peak. I have personal knowledge of the matters set forth herein, and if called as a witness I could and would testify competently to them.

2. I am a nationally recognized expert in the field of legal notice and I have served as an expert in dozens of federal and state cases involving class action notice plans.

3. I am the Vice President of Legal Notification Services for KCC Class Action Services, LLC ("KCC"), a firm that specializes in comprehensive class action services, including legal notification, email and postal mailing campaign implementation, website design, call center support, class member data management, claims processing, check and voucher disbursements, tax reporting, settlement fund escrow and reporting, and other related services critical to the effective administration of class action settlements. With more than 30 years of industry experience,[1] KCC has developed efficient, secure and cost-effective methods to properly handle

---

[1] KCC acquired Gilardi & Co. LLC in 2015. This Declaration combines the class action notice and administration experience of both firms.

the voluminous data and mailings associated with the noticing, claims processing and disbursement requirements of these matters to ensure the orderly and fair treatment of class members and all parties in interest. Since 1984, KCC has been retained to administer more than 6,000 class actions and distributed settlement payments totaling well over $20 billion in assets.

    4.    KCC has administered class action administrations for such defendants as HP-Compaq, LensCrafters, United Parcel Service, Ford, Mitsubishi, Nissan, Whirlpool, ATI Video Cards, and Twentieth Century Fox. Further, KCC has been retained as the administrator in a variety of consumer matters. Some consumer case examples with which KCC has been involved include: *Cappalli v. BJ's Wholesale Club, Inc*., No. 1:10-CV-00407 (D. R.I.); *Cicciarella v. Califia Farms, LLC*, No. 7:19-cv-08785 (S.D.N.Y): *Cobb v. BSH Home Appliances Corp*., No. 8:10-CV-0711 (C.D. Cal.); *Elkies v. Johnson & Johnson Services, Inc.*, No. 2:17-cv-07320 (C.D. Cal.); *Eubank v. Pella Corporation*, No. 1:06-12-04481 (N.D. Ill.); *Friend v FGF Brands (USA) Inc*., No. 1:18-cv-07644 (N.D. Ill.); *Hickcox-Huffman v. US Airways, Inc.*, (October 22, 2018) No. 5:10-cv-05193 (N.D. Cal.): *In re Morning Song Bird Food Litigation*, No. 3:12-cv-01592 (S.D. Cal.); *In re Nexus 6P Products Liability Litigation*, No. 5:17-cv-02185 (N.D. Cal.); *In re: The Home Depot, Inc., Customer Data Security Breach Litig.*, No. 1:14-md-02583 (N.D. Ga.); *In re Trader Joe's Tuna Litigation,* No. 2:16-cv-01371 (C.D. Cal.): *In Re: Rust-Oleum Restore Marketing, Sales Practices and Products Liability Litigation*, No. 1:15-cv-01364 (N.D. Ill.); *In re Sears, Roebuck and Co. Front-Loading Washer Products Liability Litigation*, No. 1:06-cv-07023 (N.D. Ill.); *Lerma v. Schiff Nutrition International, Inc*., No. 1:13-CV-07747 (N.D. Ill.); *Norman v. Nissan North America, Inc.*, No. 3:18-cv-00534 (M.D. Tenn.); *Rikos v. The Procter & Gamble Co*. No. 11-cv-00226 (S.D. Ohio); *Roberts v. Electrolux Home Products, Inc*., No. 8:12-CV-01644 (C.D. Cal.); *Shames v. The Hertz Corporation*, No. 07cv2174-MMA (S.D. Cal.);

*Stroud v. eMachines, Inc.*, No. CJ-2003-968 L (D. Ct. Cleveland Cnty, Okla.); and *Suchanek v. Sturm Foods, Inc.*, No. 3:11-cv-00565 (S.D. Ill.).

5.  More specifically, KCC has been appointed as the notice or claims administrator in several automotive cases. For example: *Adler v. Mercedes-Benz USA, LLC*, No. 14-cv-02349-TEH (N.D. Cal.); *Banks v. Nissan North America, Inc.*, No. 4:11-CV-02022-PJH (N.D. Cal.); *Bauer v. Toyota Motor Sales, U.S.A. II*, No. BC37501 (Los Angeles County Super. Ct.); *Bonomo v. BMW of North America, LLC*, No. 9:12-cv-80740-DMM (S.D. Fla.); *Corson v. Toyota Motor Sales, U.S.A., Inc.*, No. 12-8499-JGB (C.D. Cal.); *Gann v. Nissan North America, Inc.*, No. 3:18-cv-00966 (M.D. Tenn.); *Haddadin v. Mitsubishi Motor Manufacturing of America, Inc. and Mitsubishi Motor Sales of America, Inc.*, No. L-6513-00 (Camden County Super. Ct.); *Howard v. Ford Motor Company*, No. 763785-2 (Alameda County Super. Ct.); *In re MINI Windshield Actions*, No. 2:10-cv-01151-ABC (PJWx) (C.D. Cal.); *In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and Products Liability Litigation*, No. 8:10-ml-02151 (C.D. Cal.); *Marsikyan v. Mercedes-Benz USA, LLC*, No. CV08-04876 AHM (C.D. Cal.); *Meyer v. Nissan North America, Inc.*, No. BC263136 (Los Angeles County Super. Ct.); *Norman v. Nissan North America, Inc.*, No. 3:18-cv-00534 (M.D. Tenn.); *Rafofsky v. Nissan North America, Inc.*, No. 2:15-cv-01848 (C.D. Cal.); *Seifi v. Mercedes-Benz USA, LLC*, No. 3:12-cv-05493 (N.D. Cal.); *Szymczak v. Nissan North America, Inc. (In re: Nissan Radiator/Transmission Cooler Litigation)*, No. 7:10-cv-07493-VB (S.D. N.Y.); *Weckwerth v. Nissan North America, Inc.*, No. 3:18-cv-00588 (M.D. Tenn.); and *Williams A. Ambulance, Inc. v. Ford Motor Company*, No. 1:06-CV-776 (E.D. Tex.).

## EXPERIENCE

6. I have personally been involved in many of the largest and most significant cases, including *In re: Skelaxin (Metaxalone) Antitrust Litigation*, No. 1:12-md-02343 (E.D. Tenn.), a multi-state antitrust settlement involving both third party payors and consumers that allegedly purchased or paid for the brand and generic version of the prescription drug metaxalone; *Chambers v. Whirlpool Corporation*, No. 8:11-cv-01733 (C.D. Cal.), a national product defect case involving claims relating to the alleged overheating of an automatic dishwasher control board; *In re Trans Union Corp. Privacy Litigation*, MDL No. 1350 (N.D. Ill.), perhaps the largest discretionary class action notice campaign involving virtually every adult in the United States and informing them about their rights in the $75 million settlement relating to an alleged data breach; and *In re Residential Schools Litigation*, No. 00-CV-192059 (Ont. S.C.J.), the largest and most complex class action in Canadian history incorporating a groundbreaking notice program to disparate, remote aboriginal persons qualified to receive benefits in the multi-billion dollar settlement.

7. In forming my opinions, I draw from my in-depth class action case experience. I have worked in the class action notification field for nearly 20 years. During that time, I have been involved in all aspects in the design and implementation of class action notice planning, as well as the drafting of plain language notice documents that satisfy the requirements of Rule 23 and adhere to the guidelines set forth in the *Manual for Complex Litigation, Fourth* and by the Federal Judicial Center ("FJC").

8. I have been involved with hundreds of cases, including the dissemination of notice around the globe in more than 35 languages. My c.v., attached as **Exhibit 1**, contains numerous

judicial comments citing cases I have worked on, as well as articles I have written and speaking engagements where I have discussed the adequacy and design of legal notice efforts.

9. This declaration details the Settlement Notice Plan ("Notice Plan" or "Plan") proposed here for the Settlement in *Stringer v. Nissan North America, Inc.*, Case No. 3:21-cv-00099, in the United States District Court for the Middle District of Tennessee.

10. The facts in this declaration are based on my personal knowledge, my conversations with Class Counsel, as well as information provided to me by my colleagues in the ordinary course of my business at KCC.

## NOTICE PLAN

11. The Notice Plan is designed to provide notice to the following two Settlement Subclasses: (1) Subclass A is comprised of all current and former owners and lessees of 2014-2018 model year Nissan Rogue vehicles equipped with a CVT who purchased or leased the vehicle in the United States or its Territories; and (2) Subclass B is comprised of all current and former owners and lessees of 2015-2018 model year Nissan Pathfinder and 2015-2018 model year Infiniti QX60 vehicles equipped with a CVT who purchased or leased the vehicle in the United States or its Territories.

12. Excluded from the Settlement Class are: (1) Nissan North America, Inc. ("NNA"), any entity or division in which NNA has a controlling interest, its/their legal representatives, officers, directors, assigns and successors; (2) any judge to whom this case is assigned and the judge's clerks and any member of the judge's immediate family, and the Sixth Circuit Court of Appeals; and (3) government purchasers and lessees.

13. Rule 23 of the Federal Rules of Civil Procedure directs that the best notice practicable under the circumstances must include "individual notice to all members who can be

5

identified through reasonable effort."[2] The proposed Notice Plan satisfies this requirement. The Notice Plan provides for mailing individual notice to all Settlement Class Members who are reasonably identifiable. In my opinion, providing individual notice to the Settlement Subclasses satisfies the requirements of due process, including its "desire to actually inform" requirement.[3]

*Data Compilation*

14. The class is estimated to consist of approximately 1.9 million vehicles. Upon preliminary approval of the Settlement, Nissan will provide KCC with the Vehicle Identification Number ("VIN") associated with each vehicle included in this matter. Using the VIN, KCC will utilize the services of a third-party vendor, IHS Markit ("IHS"), to obtain mailing address data for the Settlement Class in preparation for mailing.

15. IHS owns, maintains, and compiles proprietary databases of information comprised of titles, registration transfers and renewals throughout the United States to the extent such information is made available by the 50 states, the District of Columbia, and the Commonwealth of Puerto Rico.[4] All original, intervening non-current and current owners are included in the databases of information.

16. As a result of restrictions contained in IHS' data sourcing contracts with the states of California, New Hampshire, Pennsylvania, and Virginia ("Restricted States"), notification to, or in some cases prior approval from, those states are required when a vehicle owner name and

---

[2] FED. R. CIV. P. 23(c)(2)(B).
[3] "But when notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it. The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected…" *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950).
[4] IHS is a premier provider of automotive information solution services to corporations worldwide. It acquired R.L. Polk & Company in July 2013.

6

address file is to be released from IHS for class action notices. IHS' Government Relations team is responsible for notifying the applicable state government agencies and once permission is obtained or notice sent, the lists will be provided to KCC for mailing. Restricted States release data at their sole discretion and it can take up to several weeks.

17. KCC will facilitate communication with IHS and arrange for the transfer of data. KCC will then evaluate the mailing data, eliminate any exact duplicate name and address records, and perform a high-level review for mailing preparation (i.e. remove known bad data, correct mailing information where possible, identify any data-related issues and communicate them to the parties for resolution).

18. Next, KCC will process the data and pre-assign a unique sequential control number to each individual Settlement Class Member for use throughout the administration process. Prior to mailing, the addresses will be run through the National Change of Address database ("NCOA")[5] in an effort to obtain the most recent mailing address on file with the United States Postal Service ("USPS") and to standardize the mailing address in accordance with USPS standards.

### *Individual Notice*

19. A Postcard Summary Notice will be mailed to Settlement Class Members via First Class U.S. Mail. Any Postcard Notices that are returned by the USPS with a forwarding address will be re-mailed to the new address provided and the Settlement Class Member database will be updated.

---

5 The NCOA database contains records of all permanent change of address submissions received by the USPS for the last four years. The USPS makes this data available to mailing firms and lists submitted to it are automatically updated with any reported move based on a comparison with the person's name and known address.

20. Postcard Notices returned by the USPS without a forwarding address will be subject to an address search using a third-party lookup service or "skip-tracing." Upon successfully locating a better address, a Postcard Notice will be promptly re-mailed and the Settlement Class Member database will be updated.

*Website*

21. A dedicated website will be established for the settlement where Settlement Class Members will be able to obtain detailed information about the case. The settlement website will allow visitors to obtain general information about the litigation. For instance, Settlement Class Members will be able to view and download the Long Form Notice and other documents and pleadings filed by the parties in conjunction with the Settlement; obtain relevant dates and deadlines; review answers to Frequently Asked Questions; and obtain other pertinent case information. Visitors will also be able to complete and submit a Claim Form online.

22. KCC will also maintain a dedicated case email address for Settlement Class Members to use to obtain answers to questions about the Settlement.

*Phone Support*

23. A settlement dedicated toll-free Interactive Voice Response system ("IVR") will be established to allow Settlement Class Members to access case information via menu-driven prompts. Among other things, the IVR will allow Settlement Class Members to listen to answers to frequently asked questions and request to have a copy of the Long Form Notice and Claim Form mailed to them.

**CONCLUSION**

24. In class action notice planning, execution, and analysis, we are guided by due process considerations under the United States Constitution, and by case law pertaining to the

recognized notice standards under Rule 23. This framework directs that the notice program be reasonably calculated to reach the class and, in a settlement class action notice situation such as this, that the notice or notice program itself not limit knowledge of the availability of benefits—nor the ability to exercise other options—to class members in any way. All these requirements will be met in this case.

25. The Notice Plan described above provides for the best notice practicable under the circumstances of this case, conforms to all aspects of the Rule 23, and comports with the guidance for effective notice set out in the *Manual for Complex Litigation, Fourth*.

I declare under penalty of perjury that the foregoing is true and correct. Executed on September 2, 2021, at Sellersville, Pennsylvania.

*Carla Peak*

Carla Peak

Dated: September 7, 2021                    Respectfully submitted,

By: *s/ J. Gerard Stranch, IV*
J. Gerard Stranch, IV (BPR #23045)
BRANSTETTER STRANCH & JENNINGS PLLC
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
Tel: 615-254-8801
gerards@bsjfirm.com

Mark S. Greenstone (*pro hac vice*)
GREENSTONE LAW APC
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9156
Facsimile: (310) 201-9160
mgreenstone@greenstonelaw.com

Marc L. Godino (*pro hac vice*)
GLANCY PRONGAY & MURRAY LLP
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
mgodino@glancylaw.com

*Co-Lead Class Counsel*

Stephen R. Basser (*pro hac vice*)
BARRACK, RODOS & BACINE
600 West Broadway, Suite 900
San Diego, CA 92101
sbasser@barrack.com

Lawrence Deutsch (*pro hac vice*)
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
ldeutsch@bm.net

Ryan McDevitt (*pro hac vice*)
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101
mcdevitt@kellerrohrback.com

*Executive Committee Counsel*

John G. Emerson
EMERSON FIRM, PLLC
2500 Wilcrest Drive, Suite 300
Houston, TX 77042
jemerson@emersonfirm.com

Caroline Ramsey Taylor
WHITFIELD BRYSON LLP
518 Monroe Street
Nashville, TN 37208
caroline@whitfieldbryson.com

*Other Plaintiffs' Counsel*

**CERTIFICATE OF SERVICE**

The undersigned certifies the foregoing document was filed with the Court's Case Management/Electronic Case Filing System, this 7th day of September, 2021, and served upon the following counsel:

Benjamin A. Gastel
Branstetter, Stranch & Jennings, PLLC
223 Rosa L. Parks Avenue
Suite 200
Nashville, TN 37203
Email: beng@bsjfirm.com

Danielle Manning
Glancy Prongay & Murray LLP
1925 Century Park East
Suite 2100
Los Angeles, CA 90067
Email: dmanning@glancylaw.com

Bradley J. Andreozzi
Faegre Drinker Biddle & Reath, LLP (Chicago Office)
191 N. Wacker Dr.
Chicago, IL 60606
Email: bradley.andreozzi@faegredrinker.com

E. Paul Cauley , Jr.
W. Vance Wittie
Faegre Drinker, Biddle & Reath, LLP (Dallas Office)
1717 Main Street
Suite 5400
Dallas, TX 75201
Email: paul.cauley@faegredrinker.com
Email: vance.wittie@faegredrinker.com

John S. Hicks
Baker, Donelson, Bearman, Caldwell & Berkowitz, PC (Nash)
211 Commerce Street
Suite 800
Nashville, TN 37201
Email: jhicks@bakerdonelson.com

By: */s/ J. Gerard Stranch, IV*
J. Gerard. Stranch, IV