**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | |
|---|---|
| TERESA STRINGER, KAREN BROOKS, WILLIAM PAPANIA, JAYNE NEWTON, MENACHEM LANDA, ANDREA ELIASON, BRANDON LANE, DEBBIE O'CONNOR, MICHELLE WILLIAMS and WAYNE BALNICKI, individually and on behalf of all others similarly situated, | Case No. 3:21-cv-00099 <br><br> **CLASS ACTION** <br><br> Judge William L. Campbell <br> Courtroom A826 <br> Magistrate Judge Barbara D. Holmes <br> Courtroom 764 |
| Plaintiffs, | |
| v. | **JURY TRIAL DEMANDED** |
| NISSAN NORTH AMERICA, INC., | |
| Defendant. | |

**NISSAN NORTH AMERICA, INC.'S MEMORANDUM OF LAW IN RESPONSE TO
OBJECTIONS TO FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT**

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................ 1

II. LEGAL STANDARD ........................................................................................ 3

III. ARGUMENT ..................................................................................................... 5

    A. The Small Percentage of Objectors Supports Final Approval. ..................... 5

    B. The Objectors Misunderstand the Court's Role. .......................................... 7

    C. A Number of Objections Are Deficient on Their Face. ................................ 8

    D. Objectors' Prolonged Use of Class Vehicles Enforces the Reasonableness of the Settlement. ............................................................................................... 9

    E. The Objections Lack Merit. ........................................................................ 10

        1. Objectors Who Want a Longer Warranty Extension. ........................ 11

        2. Objector Who Purchased an Extended Warranty. ............................. 15

        3. Objectors Who Allege Reduced Market Value. ................................ 17

        4. Objectors Who Object to the Voucher. ............................................. 18

        5. Other Individual Issues Raised by Objectors. ................................... 19

IV. CONCLUSION ................................................................................................ 22

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Abraham v. Volkswagen of Am., Inc.*,
795 F.2d 238 (2d Cir. 1986) ............................................................................14

*Alin v. Honda Motor Co.*,
No. 08-4825, 2012 WL 8751045 (D.N.J. Apr. 13, 2012) ......................................14

*In re Anthem, Inc. Data Breach Litig.*,
327 F.R.D. 299 (N.D. Cal. 2018) ........................................................................3

*Asghari v. Volkswagen Grp. of Am., Inc.*,
No. CV 13-02529, 2015 U.S. Dist. LEXIS 188824 (C.D. Cal. May 29, 2015) ...............13, 18

*In re Automotive Parts Antitrust Litig.*,
No. 12-cv-02311, 2018 WL 11373135 (E.D. Mich. Nov. 8, 2018) ............................4

*Bowling v. Pfizer, Inc.*,
143 F.R.D. 141 (S.D. Ohio 1992) ......................................................................13

*Brown v. Cnty. of Genesee*,
872 F.2d 169 (6th Cir. 1989) ............................................................................8

*In re Cardizem CD Antitrust Litig.*,
218 F.R.D. 508 (E.D. Mich. 2003) ......................................................................6

*Charron v. Pinnacle Grp. N.Y. LLC*,
874 F. Supp. 2d 179 (S.D.N.Y. 2012) ..................................................................6

*Collado v. Toyota Motor Sales, U.S.A., Inc.*,
No. CV-10-3124-R, 2011 WL 5506080 (C.D. Cal. Oct. 17, 2011) ..........................14

*Corzine v. Whirlpool Corp.*,
No. 15-cv-05764, 2019 WL 7372275 (N.D. Cal. Dec. 31, 2019) ............................16

*Does 1–2 v. Déjà Vu Servs., Inc.*,
925 F.3d 886 (6th Cir. 2019) ............................................................................3

*Fidel v. Farley*,
534 F.3d 508 (6th Cir. 2008) ............................................................................3

*In re Ford Motor Co. Spark Plug & Three Valve Engine Prod. Liability Litig.*,
No. 1:12-md-2316, 2016 WL 6909078 (N.D. Ohio Jan. 26, 2016) ..........................8

*Ford Motor Co. v. Mustangs Unlimited, Inc.*,
    487 F.3d 465 (6th Cir. 2007) ..................................................................................3

*Gann v. Nissan N. Am., Inc.*,
    Case No. 3:18-cv-00966, ECF No. 130 (Mar. 10, 2020) .........................................11

*Garner Props. & Mgmt., LLC v. City of Inkster*,
    No. 17-cv-13960, 2020 WL 4726938 (E.D. Mich. Aug. 14, 2020)...........................5

*Garst v. Franklin Life Ins. Co.*,
    No. 97-C-0074, 1999 U.S. Dist. LEXIS 22666 (N.D. Ala. June 25, 1999)............................19

*Gascho v. Global Fitness Holdings, LLC*,
    822 F.3d 269 (6th Cir. 2016) ..................................................................................4

*Gokare v. Fed. Express Corp.*,
    No. 2:11-cv-2131, 2013 WL 12094870 (W.D. Tenn. Nov. 22, 2013) ......................5

*Haag v. Hyundai Motor Am.*,
    330 F.R.D. 127 (W.D.N.Y. 2019)...........................................................................18

*Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen.
Motors Corp.*,
    497 F.3d 615 (6th Cir. 2007) ..................................................................................3

*Johnson v. W2007 Grace Acquisition I, Inc.*,
    No. 13-2777, 2015 WL 12001269 (W.D. Tenn. Dec. 4, 2015) ................................4

*Klee v. Nissan N. Am., Inc.*,
    No. CV 12–08238, 2015 WL 4538426 (C.D. Cal. July 7, 2015) ...........................14

*Laskey v. Int'l Union, Union Auto., Aerospace & Agr. Implement Workers of Am.
(UAW)*,
    638 F.2d 954 (6th Cir. 1981) ..................................................................................6

*Levell v. Monsanto Rsch. Corp.*,
    191 F.R.D. 543 (S.D. Ohio 2000)...........................................................................4

*Linney v. Cellular Alaska P'ship*,
    151 F.3d 1234 (9th Cir. 1998) ................................................................................3

*Mangone v. First USA Bank*,
    206 F.R.D. 222 (S.D. Ill. 2001) ..............................................................................7

*Manners v. Am. Gen. Life Ins. Co.*,
    No. Civ. A. 3–98–0266, 1999 WL 33581944 (M.D. Tenn. Aug. 11, 1999)................... *passim*

*Marshall v. Hyundai Motor Am.*,
334 F.R.D. 36 (S.D.N.Y. 2019) ...................................................................................18

*Mendoza v. Hyundai Motor Co.*,
No. 15-cv-01685, 2017 U.S. Dist. LEXIS 9129 (N.D. Cal. Jan. 23, 2017).....................14, 16

*Moulton v. U.S. Steel Corp.*,
581 F.3d 344 (6th Cir. 2009) ........................................................................................3

*Nguyen v. BMW of N. Am. LLC*,
No. C 10–02257, 2012 WL 1380276 (N.D. Cal. Apr. 20, 2012)...........................................14

*Norman v. Nissan N. Am., Inc.*,
Case No. 3:18-cv-00534, ECF No. 123 (Mar. 10, 2020)........................................................11

*Oestreicher v. Alienware Corp.*,
544 F. Supp. 2d 964 (N.D. Cal. 2008) ..............................................................................15

*Olden v. Gardner*,
294 F. App'x 210 (6th Cir. Sept. 18, 2008) ........................................................................6

*Oliver v. BMW of N. Am., LLC*,
No. 17-12979, 2021 U.S. Dist. LEXIS 43290 (D.N.J. Mar. 8, 2021).....................................14

*In re Regions Morgan Keegan Sec., Deriv. & ERISA Litig.*,
No. 2:09-md-2009, 2014 WL 12808031 (W.D. Tenn. Dec. 24, 2014)....................................6

*Robinson v. Shelby Cty. Bd. of Edu.*,
566 F.3d 642 (6th Cir. 2009) ........................................................................................4

*In re S. Ohio Corr. Facility*,
24 F. App'x 520 (6th Cir. Dec. 26, 2001) ...........................................................................8

*Saini v. BMW of N. Am., LLC*,
No. 12-6105, 2015 U.S. Dist. LEXIS 66242 (D.N.J. May 21, 2015)....................................14

*Sheick v. Auto. Component Carrier LLC*,
No. 09-CV-14429, 2010 WL 4136958 (E.D. Mich. Oct. 18, 2010) ........................................6

*In re TD Ameritrade Acct. Holder Litig.*,
Nos. C 07–2852 SBA & C 07–4903 ................................................................................13

*In re Telectronics Pacing Sys., Inc.*,
137 F. Supp. 2d 985 (S.D. Ohio 2001) ............................................................................8

*Vaughn v. Am. Honda Motor Co.*,
627 F. Supp. 2d 738 (E.D. Tex. 2007) ...........................................................................18

iv

*Warner v. Toyota Motor Sales, U.S.A., Inc.*,
 No. CV 15-2171, 2017 U.S. Dist. LEXIS 77576 (C.D. Cal. May 21, 2017)............................7

*Weckwerth v. Nissan N. Am., Inc.*,
 Case No. 3:18-cv-00588, ECF No. 181 (Mar. 10, 2020)..........................................................11

*In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*,
 1:08-WP-65000, 2016 WL 5338012...........................................................................................6

*Whitford v. First Nationwide Bank*,
 147 F.R.D. 135 (W.D. Ky. 1992).................................................................................................6

*Williams v. Vukovich*,
 720 F.2d 909 (6th Cir. 1983) .......................................................................................................4

*Yaeger v. Subaru of Am., Inc.*,
 No. 15-CV-01685-BLF, 2017 WL 342059 (N.D. Cal. Jan. 23, 2017) ......................................17

*Yaeger v. Subaru of Am.*,
 No. 14-cv-4490, 2016 WL 4541861 (D.N.J. Aug. 31, 2016) ...............................................8, 17

**STATUTES, RULES & REGULATIONS**

FED. R. CIV. P. 23(e)(1).......................................................................................................................3

**OTHER AUTHORITIES**

No. 75, Preliminary Approval Order .................................................................................................5

Defendant Nissan North America, Inc. ("NNA") respectfully submits this Memorandum of Law in response to Class Members' objections to the proposed class action Settlement and in support of final approval of the Settlement.[1]

## I.

## <u>INTRODUCTION</u>

The proposed Settlement is the product of arm's length negotiations between experienced counsel over an extended period of time. This Court preliminarily approved the Settlement on October 13, 2021, and set a February 21, 2022 deadline for objections and opt-outs. ECF No. 75. The fairness hearing is scheduled for March 21, 2022, at 11:30 a.m. ECF No. 77.

The Settlement will provide Class Members with immediate and valuable benefits in the form of: (1) an extension of the time and mileage limits for powertrain coverage under Nissan's New Vehicle Limited Warranty for the continuously variable transmission ("CVT") assembly (including the valve body and torque converter) and Automatic Transmission Control Unit on Class Vehicles (the "Warranty Extension" or "Extended Warranty"); (2) full or partial reimbursement for Class Members who paid for qualifying repairs that would have been covered by the Warranty Extension; (3) a Voucher towards the purchase or lease of a new Nissan or Infiniti vehicle for all current and former owners of Class Vehicles who meet the requirements of the Settlement Agreement; and (4) an expedited resolution program through the Better Business Bureau national arbitration program for any future warranty claims related to transmission design, manufacturing, performance or repair based on events that occur after the Notice Date.

---

[1] This Memorandum of Law incorporates by reference the definitions in the Settlement Agreement, and all terms herein shall have the same meaning as set forth in the Settlement Agreement.

The proposed Settlement is particularly beneficial to Class Members in light of NNA's strong legal defenses and the considerable risks faced by Plaintiffs if this litigation were to continue. While individual transmission issues will undoubtedly be experienced by some consumers—this is inevitable given that the approximately 3.6 million members of the Settlement Class have driven the more than one million Class Vehicles billions of miles—Plaintiffs would not have prevailed in showing a uniform problem with the CVT that would have allowed them to maintain a nationwide or multi-state class in litigation, much less prevailed on the merits in a class action lawsuit. Indeed, absent the Settlement, the Class faced the very real prospect of recovering nothing at all and continued litigation would have consumed substantial resources of the Parties and the Court and taken years to resolve. The Settlement provides immediate, tangible benefits to the Class and eliminates the significant litigation risk of no recovery at all.

Nothing in the objections filed by a few individual Class Members suggests that the proposed Settlement should not receive final approval. The objectors do not raise any substantial doubts as to the fairness, reasonableness, and adequacy of the proposed Settlement to the Settlement Class as a whole, and this Court should overrule the objections and grant final approval to the Settlement. Indeed, only 19 Class Members filed objections (with 7 other Class Members improperly sending letters to counsel that were not filed), for an objection rate of only 0.00053% of the Settlement Class (or 0.00076% even counting the improper non-filed objections).[2]

---

[2] Notice of the proposed Settlement was mailed to 3,565,409 Class Members and, according to the records of the Settlement Administrator, reached 3,487,782 Class Members, or 98% of the Class. *See* Lucchesi Decl., ECF No. 91, at p. 4 ¶¶ 9-12. Only 19 Class Members have filed objections (and one company that is not a Class Member has submitted a purported objection without standing to do so). In addition, there were seven letters expressing purported objections sent by Class Members to counsel, but not filed with the Court. As required by the Court's Preliminary Approval Order and advised by the Long Form Notice and Settlement Website, objections were required to be filed with the Court to be considered. *See* ECF No. 75 ¶¶ 17, 19. For this reason, the Court need not consider the non-filed letters. However, NNA has reviewed the non-filed letters, addressed them in this brief, and included them in Exhibit A to the Declaration of John

Moreover, only 0.0418% of the Settlement Class have opted out.[3]  Stated differently, over 99.95% of the Settlement Class have elected to remain Class Members without objecting to the Settlement—an overwhelming percentage that weighs strongly in favor of final approval.

## II.

## LEGAL STANDARD

Approval of a class action settlement is within the discretion of the district court.  *Does 1– 2 v. Déjà Vu Servs., Inc.*, 925 F.3d 886, 894 (6th Cir. 2019); *Fidel v. Farley*, 534 F.3d 508, 513 (6th Cir. 2008) ("We review a district court's approval of a settlement as fair, adequate, and reasonable for abuse of discretion.").  In exercising that discretion, the court should consider "the federal policy favoring settlement of class actions."  *Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 632 (6th Cir. 2007); *see also Ford Motor Co. v. Mustangs Unlimited, Inc.*, 487 F.3d 465, 468 (6th Cir. 2007).  To approve a class settlement, the district court must conclude that it is "fair, reasonable, and adequate."  FED. R. CIV. P. 23(e)(1); *Gen. Motors Corp.*, 497 F.3d at 631.[4]

"The settlement process depends on compromise."  *Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 350 (6th Cir. 2009).  Indeed, "[t]he very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes."  *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D.

S. Hicks, which is filed contemporaneously ("Hicks Doc.").  The non-filed letters raise no issues beyond the points raised in the filed objections.

[3] The Settlement Administrator received 1,713 requests for exclusion from Class Members, of which 1,492 were timely and valid.  *See* Lucchesi Suppl. Decl. at ¶ 6 (Mar. 7, 2022), filed herewith.

[4] In making this determination, courts in the Sixth Circuit have examined several factors: (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.  *Déjà Vu Servs.*, 925 F.3d at 894-95; *Gen. Motors Corp.*, 497 F.3d at 631.  All of the relevant factors are satisfied here, as addressed in Plaintiffs' Motion for Final Approval, filed on February 7, 2022, ECF No. 84, and supporting brief, ECF No. 85, and as will be further addressed in Nissan's Response to Motion for Final Approval, to be filed on March 11, 2022.

3

299, 322 (N.D. Cal. 2018) (quoting *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998)).  A settlement should not be rejected merely because it fails to satisfy every member of the class or provide everything that every class member might have wanted.  *See Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269, 293 (6th Cir. 2016) ("A court may not withhold approval simply because the benefits accrued from the [class action consent] decree are not what a successful plaintiff would have received in a fully litigated case.") (quoting *Williams v. Vukovich*, 720 F.2d 909, 922 (6th Cir. 1983)); *Manners v. Am. Gen. Life Ins. Co.*, No. Civ. A. 3–98–0266, 1999 WL 33581944, at *19 (M.D. Tenn. Aug. 11, 1999) (noting that courts should "bear[] in mind that compromise is the essence of settlement").  When evaluating the fairness, reasonableness, and adequacy of a settlement, the court should not substitute its own judgment as to the optimal settlement terms for that of the parties and their counsel.  *See, e.g.*, *Robinson v. Shelby Cty. Bd. of Edu.*, 566 F.3d 642, 649 (6th Cir. 2009) (court's role is "properly limited to the minimum necessary to protect the interests of the class and the public," and the court may not "substitute [its] own judgment as to optimal settlement terms for the judgment of the litigants and their counsel."); *In re Automotive Parts Antitrust Litig.*, No. 12-cv-02311, 2018 WL 11373135, at *4 (E.D. Mich. Nov. 8, 2018) ("Because a settlement represents an exercise of judgment by the negotiating parties, a judge reviewing a settlement will not substitute his or her judgment for that of the litigants and their counsel.") (internal quotation omitted).

Objectors face a "heavy burden" of showing that the preliminarily approved Settlement is not fair, reasonable, and adequate.  *Johnson v. W2007 Grace Acquisition I, Inc.*, No. 13-2777, 2015 WL 12001269, at *8 (W.D. Tenn. Dec. 4, 2015); *Levell v. Monsanto Rsch. Corp.*, 191 F.R.D. 543, 550 (S.D. Ohio 2000) (citing *Williams*, 720 F.2d at 921).  As discussed below, the objections, filed

4

by only 19[5] of the 3,565,409 Class Members, fail to meet that burden, but rather ask the Court to substitute its judgment for that of the Parties and counsel who negotiated the terms of the Settlement, to make findings without any evidentiary basis, and to order NNA to provide benefits that it neither agreed to provide nor would be liable to provide even if Plaintiffs were to prevail in the case. While a few Class Members may wish that the Parties had negotiated a deal that addressed their personal preferences or provided them with greater perks or benefits, the objections raise no concerns that should stand in the way of final approval of the deal that the Parties negotiated, which provides real, tangible and important benefits to the Settlement Class.

## III.

## ARGUMENT

### A.     The Small Percentage of Objectors Supports Final Approval.

Federal courts recognize that a certain number of objections are to be expected in a class action and that it would in fact be extremely unusual for a court not to encounter objections in a

---

[5] In addition, one purported "objection" was filed not by a Class Member but by a company, American Auto Shield ("AAS") that claims to administer Vehicle Service Contracts purchased by some Class Members to cover their Class Vehicles. *See* ECF No. 105 (purported objection of American Auto Shield). AAS is not a Class Member with a right to object. *See* ECF No. 75, Preliminary Approval Order, at ¶ 2 (preliminarily certifying a settlement class of "current and former owners and lessees" of the Class Vehicles); *id.* at ¶ 17 (granting right to object to "Class Members"); ECF No. 67-1, Settlement Agreement, at ¶¶ 38, 91-92 (defining the Settlement Class as current and former owners and lessees of the Class Vehicles and limiting right to object to Class Members). The "objection" does not have the signature of any Class Member. Settlement Agreement, at ¶ 92(x). In fact, AAS does not claim to be a current or former owner or lessee of a Class Vehicle. Instead it asserts that it "qualifies as a Class Member for purposes of submitting these objections" via a "standard subrogation clause," but AAS has not submitted any evidence showing a subrogation right, much less a right or authorization from a Class Member to object to the Settlement in the name of such Class Member. AAS does not state that it has even informed its customers who are Class Members that it has purported to object on their behalf. Even if the Court considers the AAS "objection," it is just as meritless as the other objections (discussed below) simply wishing for a longer Extended Warranty than the Parties negotiated. NNA also notes that AAS provides no evidence for its claim that "any future CVT damage will most likely occur . . . beyond the extended coverage of 24 months/24,000 miles." Moreover, this argument actually supports NNA's position that the Class Vehicles' CVTs provide a long period of trouble-free performance and that the Settlement is a reasonable compromise taking into account the strengths and weaknesses of Plaintiffs' claims and NNA's defenses.

5

class action of this size. *Garner Props. & Mgmt., LLC v. City of Inkster*, No. 17-cv-13960, 2020 WL 4726938, at \*10 (E.D. Mich. Aug. 14, 2020); *Gokare v. Fed. Express Corp.*, No. 2:11-cv-2131, 2013 WL 12094870, at \*6 (W.D. Tenn. Nov. 22, 2013); *Charron v. Pinnacle Grp. N.Y. LLC*, 874 F. Supp. 2d 179, 197 (S.D.N.Y. 2012) (citing *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 527 (E.D. Mich. 2003)). Here, the small percentage of objections reflects the fairness, reasonableness, and adequacy of the Settlement.

The Middle District of Tennessee and other courts in the Sixth Circuit hold that a "small amount of opposition strongly supports approving the [class action] Settlement." *Manners*, 1999 WL 33581944, at \*22; *see also In re Regions Morgan Keegan Sec., Deriv. & ERISA Litig.*, No. 2:09-md-2009, 2014 WL 12808031, at \*4 (W.D. Tenn. Dec. 24, 2014) ("If only a small number of objections are received from a large class, that fact can be viewed as indicative of the adequacy of the settlement."); *Whitford v. First Nationwide Bank*, 147 F.R.D. 135, 141 (W.D. Ky. 1992) ("The small number of objectors is a good indication of the fairness of the settlement.") (citing *Laskey v. Int'l Union, Union Auto., Aerospace & Agr. Implement Workers of Am. (UAW)*, 638 F.2d 954, 957 (6th Cir. 1981)).

An objection rate of only 0.00053% of the Settlement Class is a vanishingly small number. Courts in the Sixth Circuit have readily granted final approval to settlements with objection percentages much higher than that in the instant case. *See, e.g., Olden v. Gardner*, 294 F. App'x 210, 2017 (6th Cir. Sept. 18, 2008) (79 objections out of approximately 11,000 class members—or 0.71%); *Sheick v. Auto. Component Carrier LLC*, No. 09-CV-14429, 2010 WL 4136958, at \*22 (E.D. Mich. Oct. 18, 2010) (objection from only 0.61% of the class "indicates broad support for the settlement among Class Members"); *Manners*, 1999 WL 33581944, at \*11, 22 (24 objections out of 849,851 class members—or 0.0028%); *see also In re Whirlpool Corp. Front-Loading*

*Washer Prod. Liab. Litig.*, 1:08-WP-65000, 2016 WL 5338012, at *11 (N.D. Ohio Sept. 23, 2016 (final approval supported by the fact that "just under 0.002 percent of class members" who received direct notice filed objections).

Courts outside of the Sixth Circuit have also approved settlements with higher objection rates. *See, e.g.*, *Warner v. Toyota Motor Sales, U.S.A., Inc.*, No. CV 15-2171, 2017 U.S. Dist. LEXIS 77576, at *25 (C.D. Cal. May 21, 2017) ("extremely low" objection rate of 0.0008% (22 objections out of 2.6 million class members) shows that settlement has the support of the class and merits approval); *Mangone v. First USA Bank*, 206 F.R.D. 222, 227 (S.D. Ill. 2001) (finding that an objection rate of 0.0052% (97 objections out of a class of 18.5 million) coupled with an opt-out rate of 0.10614% (19,637 opt-outs) represented "overwhelming support" for the settlement and "strong circumstantial evidence supporting the fairness of the Settlement").

Here, as mentioned, only 0.00053% of the Settlement Class have filed an objection with the Court and only 0.0418% have submitted timely and valid exclusion requests. The reaction of the Settlement Class provides compelling evidence of the Settlement's fairness, reasonableness, and adequacy. Accordingly, the fact that a few Class Members have objected should not dissuade the Court from finding that the proposed Settlement is fair, reasonable, and adequate and granting final approval.

### B. The Objectors Misunderstand the Court's Role.

Several objectors request that the Court order NNA to take certain steps, such as replace the Class Vehicles (whether or not those vehicles have ever experienced a transmission issue) with new cars with non-CVT transmissions, or issue an extended warranty with no time limit or mileage cap that would apparently last forever. *See, e.g.*, Hicks Dec. Ex. B (non-filed letter from Melissa D. Minter demanding that all class members be given a new vehicle with a non-CVT transmission); ECF No. 80 (objection of Cindy Wilson, who wants an extended warranty with no mileage cap).

7

Other objectors describe their personal, individual experiences—rather than addressing the fairness of the Settlement for the Class as a whole—and ask the Court to order NNA to provide repairs or reimburse repairs. *See, e.g.*, ECF No. 104 (objector Kim S. Griffiths Katz states that due to the strain of her family situation, she did not observe a transmission issue until the vehicle had been driven more than 84,000 miles and would like "a small adjustment" to the terms of the Settlement "to deem her vehicle as qualified"). These objections reflect a fundamental misunderstanding of the Court's role at the fairness hearing, as there is no evidentiary foundation or legal basis for the Court to order NNA to comply with such requests.

The issue before the Court is whether this Settlement is fair, reasonable and adequate for the Settlement Class. The Court's role is not to rewrite the Settlement Agreement to suit the objectors. *In re S. Ohio Corr. Facility*, 24 F. App'x 520, 528 (6th Cir. Dec. 26, 2001) (noting that it is "well established" that a court "is not permitted to alter the terms" of the settlement agreement) (quoting *Brown v. Cnty. of Genesee*, 872 F.2d 169, 173 (6th Cir. 1989)); *Yaeger v. Subaru of Am.*, No. 14-cv-4490, 2016 WL 4541861, at *17 (D.N.J. Aug. 31, 2016) (court "does not have the power to alter the terms of the proposed settlement," but rather must "approve the settlement, taking all relevant facts and circumstances into account" or "reject the proposed settlement and put the case back on the litigation track."); *In re Ford Motor Co. Spark Plug & Three Valve Engine Prod. Liability Litig.*, No. 1:12-md-2316, 2016 WL 6909078, at *3 (N.D. Ohio Jan. 26, 2016) ("The court cannot modify the proposed settlement, but must approve or disapprove the proposed settlement as a whole in relation to all of those concerned.") (quoting *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1026 (S.D. Ohio 2001)).

### C. A Number of Objections Are Deficient on Their Face.

A number of objections are deficient on their face, for example, because of failure to file the purported objections with the Court or to provide information required by the Preliminary

Approval Order.[6]  *See* Hicks Dec., Ex. A (Appendix identifying facial deficiencies in objections). These deficiencies alone justify overruling these objections.  However, these objections also fail on the merits.  NNA has considered the points raised in all of the purported objections and responds to the arguments raised, in the following sections.

### D. Objectors' Prolonged Use of Class Vehicles Enforces the Reasonableness of the Settlement.

Many objectors describe long and trouble-free service from their Class Vehicles prior to any transmission problems, undermining the claims of the Class and reinforcing the fairness of the Settlement.  Many objectors indicate they did not experience transmission issues at all or only after their vehicles' mileage was well beyond the mileage limits of the proposed Warranty Extension, demonstrating that the Class Vehicles are operating well beyond the point in time when the risk of paying for repairs shifts to the consumer, even with the Warranty Extension benefit provided by the Settlement.[7]  *See* ECF No. 78 (objection of Barbara Lahr, stating that she sold her 2014 Nissan Rogue when the car had 106,181 miles and did not experience transmission issues until the car had been driven 100,000 miles); ECF No. 111 (objection of Susan Moini, stating that her 2015 Nissan Rogue has 152,106 miles; she does not describe any problems she experienced with her transmission); ECF No. 81 (objection of Greg Grenz, stating that his 2015 Nissan Pathfinder has 114,524 miles); ECF No. 104 (objection of Kim S. Griffiths Katz, who "continues to own and rely on" her 2015 Nissan Pathfinder that she states has 87,956 miles); ECF No. 92 (objection of Sarah

---

[6]  *See* Preliminary Approval Order, ECF No. 75, at ¶ 17 (listing information to be provided by Class Members to state an objection); *see also* ECF No. 67-1 Ex. C to Settlement Agreement (Long Form Notice) at pp. 6-7 (same).

[7]  The Settlement will extend the powertrain coverage for the transmission under the New Vehicle Limited Warranty by 24 months and 24,000 miles for all Class Vehicles.  The effect of that extension is that the Extended Warranty will run to 84 months and 84,000 miles for 2014-2018 model year Nissan Rogue vehicles and 2015-2018 model year Nissan Pathfinder vehicles and to 96 months and 94,000 miles for 2015-2018 model year Infiniti QX60 vehicles.

9

Hopfensperger, who states that her 2015 Nissan Rogue has 89,828 miles and that she first experienced CVT issues when the car had been driven 88,000 miles); ECF No. 103 (objection of James Vierra, who states that his 2016 Infiniti QX60 has 108,000 miles); ECF No. 80 (objection of Cindy Wilson, who states that her 2015 Nissan Rogue has 96,222 miles and that she only recently had a transmission issue); Hicks Dec., Ex. C (unfiled letter from Antoinette Zinsmeyer, who states that she "loved" her 2015 Infiniti QX60 but replaced the transmission after the car had been driven more than 120,000 miles). These objections actually support approval of the Settlement as fair, reasonable, and adequate.

### E. The Objections Lack Merit.

Even beyond their small number, the objections reflect the idiosyncratic opinions of individual objectors or their subjective belief that the Settlement should provide them with more benefits, and fail to undermine the fairness, reasonableness, and adequacy of the Settlement. To be sure, settlements necessarily entail a considerable amount of compromise, and no settlement will meet with unanimous approval among class members or provide every benefit that every class member might want.

While a number of objections focus on the Warranty Extension, these objections demonstrate that individual objectors are simply seeking a better deal for themselves, based on the fact that their own vehicles have already exceeded the time or mileage limits set forth in the Warranty Extension or based on their own specific driving patterns. Others complain about individual experiences with their repair shops or other personal circumstances. For the reasons discussed below, these objections lack merit; fail to undermine the fairness, reasonableness, and adequacy of the proposed Settlement; and should not dissuade the Court from granting final approval.

### 1. Objectors Who Want a Longer Warranty Extension.

Most objectors seem to appreciate the Warranty Extension benefit, but wish it had been expanded to greater time and/or mileage limitations. These objections fail to show that the Settlement is not fair, reasonable, and adequate, as the Warranty Extension provides a significant benefit to the Settlement Class. Indeed, this Court has previously granted final approval to three settlements in which NNA also agreed to a 24-month or 24,000-mile extension of the time and mileage limits for powertrain coverage under Nissan's New Vehicle Limited Warranty for the CVT. *See Gann v. Nissan N. Am., Inc.*, Case No. 3:18-cv-00966, ECF No. 130 (final approval order) (Mar. 10, 2020); *Weckwerth v. Nissan N. Am., Inc.*, Case No. 3:18-cv-00588, ECF No. 181 (final approval order) (Mar. 10, 2020); *Norman v. Nissan N. Am., Inc.*, Case No. 3:18-cv-00534, ECF No. 123 (final approval order) (Mar. 10, 2020).

In all three cases, this Court found that "[t]he benefits to the Settlement Class constitute fair value given in exchange for the release of the claims of the Settlement Class" and that the consideration to be provided under the Settlement was reasonable, "particularly in light of the complexity, expense and duration of the litigation and the risks involved in establishing liability and damages." *Id.*, Final Approval Orders at ¶¶ 5, 6, 11. Similarly, in *Batista v. Nissan North America, Inc.*, the Southern District of Florida granted final approval to a settlement with a 24-month or 24,000 mile Warranty Extension for the CVT transmission. *See* Case No. 1:14-cv-24728, ECF Nos. 191, 156 ¶ 48 (S.D. Fla. June 29, 2017) (finding that the benefits to the settlement class were fair, reasonable and adequate and that the proposed settlement merited final approval).

Objectors in this category simply seek better deals for themselves, based on their own specific circumstances. Some objectors complain that the mileage limitations are unfair to individuals who drive *more* miles because these vehicles will exceed the mileage limitation before expiration of the time limitation. For example, one objector feels that the mileage limitation of

94.000 miles for Infiniti QX60 Class Vehicles "is not fair to owners like myself who love driving in retirement." *See* ECF No. 103 (objection of James Vierra, who states that his 2016 Infiniti QX60 has 108,000 miles); *see also* ECF No. 80 (objection of Cindy Wilson, who states that her 2015 Nissan Rogue has 96,222 miles and "I should not be penalized due to the number of miles on my vehicle."). Other objectors complain that the Warranty Extension time limitations are unfair to individuals who drive *fewer* miles because their vehicles will exceed the time limitation before reaching the mileage limitation. *See* Hicks Dec., Ex. D (unfiled letter of Michael Paul Huntoon, who complains that the time limitation is unfair to owners of older vehicles who drive less, stating that his 2016 Nissan Rogue has only 60,473 miles but will age out of the Extended Warranty in twelve months); Hicks Dec., Ex. E (unfiled letter of Robert W. Worley, who complains that his 2016 Nissan Rogue has only 48,965 miles and will age out of the Warranty Extension before reaching the mileage limit; he wants "no time limit" on the Extended Warranty). These objections are without merit, and could be observations about any warranty with time and mileage limits— just like the original warranty that came with the Class Vehicles. High mileage drivers knew their original warranty would be capped when they reached the mileage limit of the warranty, and low mileage drivers knew their original warranty would be capped when they reached the time-in-service limit of the warranty. The Warranty Extension provides an extension of both limits, but the type of warranty remains the same as that which came with the vehicles. Individual driving patterns may differ, but the Warranty Extension provides an identical benefit for all Class Members and therefore, treats all Class Members equitably.

The possibility that different settlement terms might have been better for some Class Members based on their personal preferences or driving patterns does not mean the Settlement is not fair, reasonable, or adequate for the Settlement Class as a whole. *See Manners*, 1999 WL

33581944, at *25 ("the "issue is not whether the proposed settlement could have offered *different* or even more generous relief; the only question is whether the benefits *actually being offered* are fair, reasonable and adequate. If they are, the settlement should be approved.") (emphasis in original); *see also Asghari v. Volkswagen Grp. of Am., Inc.*, No. CV 13-02529, 2015 U.S. Dist. LEXIS 188824, at *80 (C.D. Cal. May 29, 2015) ("[T]he fact that some class members will not obtain relief does not compel the conclusion that the settlement is unreasonable or unfair."); *In re TD Ameritrade Acct. Holder Litig.*, Nos. C 07–2852 SBA & C 07–4903 SBA, 2011 WL 4079226, at *9 (N.D. Cal. Sept. 13, 2011) ("The possibility that the Settlement does not provide for a payout to every conceivable [class member] who in some way may have been affected by the data breach does not establish that the Settlement is unfair or unreasonable."). A settlement is "not a wish-list of class members that the Defendants must fulfill." *Bowling v. Pfizer, Inc.*, 143 F.R.D. 141, 169 (S.D. Ohio 1992).

A few Class Members complain that the Warranty Extension should be unlimited. One objector states that "I feel that the extended coverage should not be bound by the mileage." *See* ECF No. 93 (objection of Danijela Jovicic, who states that her 2015 Nissan Rogue has 115,113 miles); *see also* Hicks Dec., Ex. C (unfiled letter of Antoinette Zinsmeyer complaining that the 94,000 mile cap for the Extended Warranty for Infiniti QX60 vehicles "is just absurd" because "putting a cap on the extended warranty isn't helping anyone"). Another objector complains about any mileage cap because her high mileage vehicle *might* in the future experience a CVT issue. *See* ECF No. 111 (objection of Susan Moini, whose 2015 Rogue has 152,106 miles, asserting that, having become aware of the allegations in the lawsuit, she is concerned that she might have a problem in the future). Such a position is patently unreasonable.

"All parts will wear out sooner or later and thus have a limited effective life." *Abraham v. Volkswagen of Am., Inc.*, 795 F.2d 238, 250 (2d Cir. 1986). Time and mileage limitations are necessary and appropriate in connection with a settlement involving repairs to a depreciating asset with a limited useful life. Accordingly, courts have repeatedly held that time and mileage limitations are fair in settlements of automotive class actions. *See, e.g.*, *Oliver v. BMW of N. Am., LLC*, No. 17-12979, 2021 U.S. Dist. LEXIS 43290, at *22 (D.N.J. Mar. 8, 2021) (approving settlement providing extended warranty of 3 years or 34,000 miles on coolant pumps in class vehicles, and noting that extended warranties are "somewhat common in the automotive practice, and ha[ve] been held reasonable by several courts"); *Mendoza v. Hyundai Motor Co.*, No. 15-cv-01685, 2017 U.S. Dist. LEXIS 9129 (N.D. Cal. Jan. 23, 2017) (approving settlement providing extended warranty of 20,000 miles on engines in class vehicles); *Klee v. Nissan N. Am., Inc*., No. CV 12–08238, 2015 WL 4538426, at *8 (C.D. Cal. July 7, 2015) (approving settlement providing extended warranty of 60 months or 60,000 miles on lithium-ion battery in class vehicles); *Collado v. Toyota Motor Sales, U.S.A., Inc.*, No. CV-10-3124-R, 2011 WL 5506080, at *2 (C.D. Cal. Oct. 17, 2011) (approving settlement providing two-year, 20,000-mile warranty extension); *see also Saini v. BMW of N. Am., LLC*, No. 12-6105, 2015 U.S. Dist. LEXIS 66242, at *17 (D.N.J. May 21, 2015) (approving settlement that extended warranty by 3 months); *Nguyen v. BMW of N. Am. LLC*, No. C 10–02257, 2012 WL 1380276, at *2 (N.D. Cal. Apr. 20, 2012) (finding that "real value is provided by the Settlement because BMW agreed to extend its warranty . . . [to] 8 years or 82,000 miles."); *Alin v. Honda Motor Co.*, No. 08-4825, 2012 WL 8751045 at *15 (D.N.J. Apr. 13, 2012) ("The parties weighed the obligation to cover those damages against the reality that Honda cannot act as a perpetual insurer for all compressor breakdowns, and they ultimately settled

on a sliding scale that ends at eight years and 96,000 miles. It was reasonable to exclude older, more traveled vehicles from coverage[.]").

Given the strength of NNA's defenses, it was reasonable for Class Counsel to compromise as to the limit of the Warranty Extension. After all, the more trouble-free miles a vehicle has provided, the weaker the claims as to that vehicle. The more miles the vehicle was driven without incident, the less likely the trier of fact would find that the vehicle was not merchantable, or that NNA breached any express warranty, acted contrary to any representation regarding the vehicle, or failed to disclose a material fact. Thus, it was reasonable for the parties to negotiate a Settlement that places a reasonable limit on the Warranty Extension.

The Warranty Extension substantially benefits owners of Class Vehicles by paying in full for qualifying repairs of Class Vehicles that experience issues beyond the time and mileage limitations of the current New Vehicle Limited Warranty. Through the Warranty Extension, NNA has shifted to itself the risk of paying for repairs for an additional two years or 24,000 miles. *See Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 972 (N.D. Cal. 2008) ("[T]he purpose of a warranty is to contractually mark the point in time during the useful life of a product when the risk of paying for repairs shifts from the manufacturer to the consumer."). That is tangible value and directly benefits Class Members by allowing them to have free qualifying repairs performed on their vehicles without having to submit an individual claim. The Warranty Extension provides important value to the Settlement Class, and the Court should overrule the objections of objectors who simply wish that the warranty had been extended even more.

### 2. Objector Who Purchased an Extended Warranty.

One objector complains that the Settlement does not reimburse Class Members for having purchased on their own third-party extended warranties for their Class Vehicles. *See* ECF No. 79 (objection of Uday Kanetkar, who wants NNA to refund the price he paid to purchase a third-party

extended warranty as well as cover the transmission under the Nissan New Vehicle Limited Warranty for 200,000 miles). Apparently, this objector is concerned that the Settlement's Warranty Extension provides little value to him because he is already covered by a purchased extended warranty or that his purchased extended warranty is no longer useful because the Settlement will provide an Extended Warranty. Neither is correct. Even for individuals who have purchased extended warranties, the Settlement has value because purchased extended warranties typically have significant out-of-pocket deductibles that Class Members will *not* have to pay for a qualifying repair or replacement under the Extended Warranty provided by the Settlement. Moreover, the Settlement also offers reimbursement for deductibles paid by Class Members for past qualifying repairs that were covered by a purchased extended warranty. If Class Members who elected to purchase their own extended warranty had a qualifying repair that would have been covered under the Warranty Extension but was covered under the purchased extended warranty, the Settlement allows them to submit a claim for reimbursement of the amounts they actually paid out-of-pocket for the qualifying repair.

Moreover, the purchased extended warranties are not limited to CVT transmissions, whereas the negotiated Warranty Extension focuses on "a very specific thing." Under such circumstances, where "previously purchased extended warranties are far broader than the extended warranty negotiated under the settlement[,]" courts have overruled such objections, noting that "there is still significant value in the purchased extended warranties." *See Mendoza v. Hyundai Motor Co.*, No. 15-cv-01685, 2017 U.S. Dist. LEXIS 9129 at *26 (N.D. Cal. Jan. 23, 2017); *see also Corzine v. Whirlpool Corp.*, No. 15-cv-05764, 2019 WL 7372275, at *8 (N.D. Cal. Dec. 31, 2019) ("The Court agrees that because these extended warranties are broader than the terms negotiated under the Settlement and provide additional benefits to their purchasers, lack of

reimbursement for their purchase does not render the Settlement unfair."); *Yaeger v. Subaru of Am., Inc.*, No. 15-CV-01685-BLF, 2017 WL 342059, at \*10 (N.D. Cal. Jan. 23, 2017) (overruling objection that class members should be reimbursed for purchased extended warranties, noting that such purchased warranties cover "a myriad of repairs" beyond what the negotiated extended warranty covers, and that the settlement's extended warranty did not include a deductible.).

At any rate, this objector fails to demonstrate what he would recover if this litigation continued outside of the Settlement. Any Class Member who felt that the Settlement did not provide adequate benefits because he or she had already purchased an extended warranty (or for any other reason) was free to opt out of the Settlement and not be bound by the negotiated resolution.

### 3. Objectors Who Allege Reduced Market Value.

A joint objection from a married couple complains that the Settlement does not reimburse them for the alleged lost value when they sold their Class Vehicle rather than repair the transmission. *See* ECF No. 78 (objection of Barbara and Paul Lahr, who sold their 2014 Nissan Rogue with 106,181 miles instead of repairing the transmission, and who did not experience a transmission problem until the vehicle had been driven 106,000 miles, well beyond the mileage limit of the proposed Extended Warranty); *see also* Hicks Dec., Ex. F (unfiled letter of Carolyn J. Ates, who traded-in her 2016 Rogue after she had driven the vehicle "a little over 100,000 miles" when the transmission failed). That these Class Members experienced no transmission issues until their Class Vehicles had been driven 100,000 miles or more actually supports NNA's defenses and the generosity of the Settlement. Moreover, claims for diminution of value often rely on speculation and are difficult to prove, and courts do not allow such claims to derail the settlement process. *See, e.g.*, *Yaeger*, 2016 WL 4541861, at \*15 (overruling objection that settlement failed to compensate for alleged diminution of value because "evidence of diminished value of a

particular vehicle, given the multiple variables determining market value, may be difficult to obtain and to prove").

In addition, diminished value claims could not properly be tried on a class-wide basis, because the alleged failure of a class member to sell his or her vehicle for "fair value" would turn on individualized issues such as the actual condition of the vehicle at the time of sale. *See Haag v. Hyundai Motor Am.*, 330 F.R.D. 127, 132 (W.D.N.Y. 2019) (diminished-value claims defeated commonality of class claims regarding brake defect where no basis existed to infer that the entire class would have obtained a common lower purchase price had the alleged defect been disclosed); *Marshall v. Hyundai Motor Am.*, 334 F.R.D. 36, 56-57 (S.D.N.Y. 2019) (applying *Haag* and reaching same result). Class Counsel were justified in focusing on the tangible benefits provided by the Settlement, rather than dubious loss-in-value claims. *See Asghari v. Volkswagen Group of Am., Inc.*, No. CV 13-02529, 2015 U.S. Dist. LEXIS 188824, at *75 (C.D. Cal. May 29, 2015) ("Considering the attendant difficulty of proving and recovering such damages on a classwide basis, the court believes plaintiffs' decision not to pursue such damages as part of the settlement was neither unfair nor unreasonable."); *Vaughn v. Am. Honda Motor Co.*, 627 F. Supp. 2d 738, 749 (E.D. Tex. 2007) ("It does not make the settlement unfair or unreasonable that the class has to release speculative claims for diminution in value.").

### 4. Objectors Who Object to the Voucher.

Two objectors complain that they would not use the $1,000 Voucher that the Settlement offers to qualifying current and former owners of Class Vehicles toward the purchase or lease of a new Nissan or Infiniti vehicle. *See* ECF No. 96 (objector James Michael Mapes states that he would prefer "a $1,000 (or higher) check instead of a voucher to help offset the costs of buying another vehicle that is not a Nissan or Infinity (*sic*)."); Hicks Dec., Ex. G (unfiled letter of

Jyotikaqbeb Patel stating that he will "not in the future be purchasing or leasing another Infiniti QX60" and "would prefer another form of settlement than that proposed."). The primary benefit of the Settlement is the Extended Warranty, made available automatically to all Class Members for their Class Vehicles. The Voucher is an additional benefit available to qualifying Class Members. The preference of some qualifying Class Members not to use the Voucher does not mean that the benefit lacks value. *See Garst v. Franklin Life Ins. Co.*, No. 97-C-0074, 1999 U.S. Dist. LEXIS 22666, at *74 (N.D. Ala. June 25, 1999) ("Similarly flawed is the objectors' assertion that [the settlement's discount component] is worthless because they may not wish to use it... This opportunity has value."); *Manners*, 1999 WL 33581944, at *24 ("[The] fact that some class members might not use settlement relief to obtain discounted products does not warrant disapproval of settlement."). In any event, any Class Members who believed the Voucher benefit, along with the other benefits of the Settlement, was insufficient had the option to opt out of the Settlement and not be bound by the negotiated resolution.

### 5. Other Individual Issues Raised by Objectors.

Aside from objections expressing the wish that the Warranty Extension were even longer, the objections largely focus on Class Members' personal circumstances not relevant to whether the settlement is fair, reasonable, and adequate for the Settlement Class as a whole. *See, e.g.*, ECF No. 101 (objection of Donald Curtin stating that "my objection applies only to me" and that his "only objection" is that his repair was four days after the time-in-service limit of the proposed Extended Warranty, but he would still like reimbursement for the repair cost); ECF No. 103 (objection of James Vierra requesting an "exception" because his car was within the Warranty Extension Period at the time of preliminary approval but outside of it by the Notice Date); Hicks Dec., Ex. H (unfiled letter of Bertha Palmore claiming that the dealer charged her a deductible of

$769.28, when she should have been charged $100, for repairs to her 2015 Nissan Pathfinder with 129,690 miles). Indeed, a number of objectors complain about their treatment by individual dealers or repair shops. *See, e.g.*, ECF No. 81 (objection of Greg Grenz complaining that his dealer's repair technicians "never wanted to take [the car] out for a test drive to see what I was talking about"); ECF No. 108 (objection of Stephanie Jordan Patton requesting coverage for transmission repairs when the car had been driven more than 102,00 miles because she claims that her dealer failed to diagnose earlier transmission problems in her vehicle); ECF No. 98 (objection of Marlene Thomas claiming that her dealer failed to diagnose a transmission problem and lied about test driving the car). These objectors' "narrow focus" on their own "personal situations" ignores the fact that "the proposed settlement must be analyzed in terms of the relief provided to the entire Class." *Manners*, 1999 WL 33581944, at *24.

Some objectors have simply misunderstood the terms of the Settlement. For example, one objector complains that she would not be able to submit a claim for reimbursement of out-of-pocket costs for a transmission repair because she cannot afford to pay the costs up-front. *See* ECF No. 107 (objection of Sara O'Rourke). This objector fails to realize that because her vehicle is within the time and mileage limits of the Extended Warranty, a qualifying repair will be performed free of charge. In any event, the provision of the Settlement Agreement that she criticizes (¶ 57) is actually beneficial to the Settlement Class because it allows Class Members who failed to obtain a recommended transmission repair during the Warranty Extension Period to still receive reimbursement for the repair, so long as the vehicle is diagnosed as needing the repair during the Warranty Extension Period and the repair is made before either March 22, 2022 or the vehicle exceeding 95,000 miles. The provision grants additional flexibility to Class Members who,

because of economic circumstances or for other reasons, may have been unable to immediately obtain a repair when recommended by the dealer.

Another objector believes that the Settlement will reduce the 100,000 mile warranty that came with his Certified Pre-Owned ("CPO") vehicle. *See* ECF No. 83 (objection of Francis L. Browne). CPO vehicles are certified after a detailed inspection process and come with longer warranties. The Settlement extends the Nissan New Vehicle Limited Warranty, but it does not reduce CPO warranties or other separate warranties.

One objector comments about safety concerns but states that she has not had an accident. *See* ECF No. 100 (objection of Lori Tankersley). Indeed, *none* of the objectors claims to have been in an accident or suffered any injury due to a problem with their transmissions.[8] One objector's concerns about the safety of her particular car (and belief that "there are several other things wrong with it as well as the transmission problems") does not undermine the significant benefits to the Class of the Warranty Extension and other benefits of the Settlement that merit the Court's approval.

Of course, any Class Member who felt that the Settlement does not provide adequate benefits in light of his or her individual situation was free to opt out of the Settlement and pursue individual litigation. The class notice approved by this Court, and sent directly to Class Members individually, clearly advised Settlement Class Members how to opt out and the deadline for doing so. These objectors have elected to stay in the Settlement Class but complain about the Settlement. Certainly, they have every right to do so. Yet none of the objectors has provided any basis for concluding that a substantially better result would be obtained through continued litigation if the

---

[8] Although none of the objectors claims to have been in an accident or suffered an injury, it is worth noting that the Settlement does not release any personal injury or wrongful death claims, nor claims for property damage other than damage to the Class Vehicle. Settlement Agreement ¶ 16.

Settlement is rejected. Indeed, the greater likelihood is that the class (if one could even be certified for trial) would recover nothing at all.

## IV.

## CONCLUSION

For the foregoing reasons, the Court should overrule the objections, determine that the Settlement is fair, reasonable an adequate, and grant final approval of the Settlement.

Dated: March 7, 2022

Respectfully submitted,

BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, P.C.

By: */s/ John S. Hicks*
John S. Hicks (BPR No. 010478)
jhicks@bakerdonelson.com
1600 West End, Suite 2000
Nashville, Tennessee 37203
(615) 726-5600
(615) 744-7337 (fax)

FAEGRE, DRINKER, BIDDLE & REATH LLP

E. Paul Cauley, Jr. (admitted *pro hac vice*)
paul.cauley@faegredrinker.com
S. Vance Wittie (admitted *pro hac vice*)
1717 Main Street, Suite 5400
Dallas, Texas 75201
(469) 357-2500
(469) 327-0860 (fax)

Bradley J. Andreozzi (admitted *pro hac vice*)
bradley.andreozzi@faegredrinker.com
320 S. Canal Street, Suite 3300
Chicago, Illinois 60606
(312) 569-1000
(312) 569-3000 (fax)

*Attorneys for Defendant Nissan North America, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on March 7, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notice of Electronic Filing generated by CM/ECF, as listed below.

**BRANSTETTER, STRANCH & JENNINGS PLLC**
J. Gerard Stranch, IV
Benjamin A. Gastel
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
615-257-8801
615-255-5419 (fax)
gerards@bsjfirm.com
beng@bsjfirm.com

**GREENSTONE LAW APC**
Mark Greenstone
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9156
Facsimile: (310) 201-9160
mgreenstone@greenstonelaw.com

**GLANCY PRONGAY & MURRAY LLP**
Marc L. Godino
Danielle L. Manning
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

**KELLER ROHRBACK, LLP**
Ryan McDevitt
1201 Third Avenue, Suite 3200
Seattle, Washington 98101
Telephone: (206) 623-1900
Facsimile: (206) 623-3384
gcappio@kellerrohrback.com
lsarko@kellerrohrback.com
rmcdevitt@kellerrohrback.com
*Attorneys for Adnrea Eliason and Wayne Balnicki*

**BARRACK, RODOS & BACINE**
Stephen R. Basser
One America Plaza
600 W Broadway, Suite 900
San Diego, CA 92101
Telephone: (619) 230-0800
Facsimile: (619) 230-1874
sbasser@barrack.com

**BERGER &MONTAGUE, P.C.**
Lawrence Deutsch
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4604
ldeutsch@bm.net

In addition, class members who submitted objections but would not receive notice via the CM/ECF system were served by mail (or by email in the case of one objector who listed an email address rather than a mailing address on the objection), as listed below:

Carolyn Ates
3609 Churchill Lane
Plano, TX 75075

Francis Browne
404 Pine Brook Drive
Peabody, MA 01960

Donald Curtin
6617 Kingsview Dr.
Mount Pleasant, WI 53406

Luis Alberto Espada-Cartagena
954 Ave Ponce De Leon Cond Apto9F
San Juan, PR 00907

Greg Grenz
575 5th Street S.
Carrington, ND 58421

Joan Haynes
2002 Ivy Lane
Mountain Home, AR 72653

Ssrah Hopfensperger
1215 SE Yamhill St. Apt. B
Portland, OR 97215

Michael P. Huntoon
2812 N. Augusta Street
Staunton, VA 24401

Danijela Jovicic
410 Brentwood Blvd.
Copley, OH 44321

Uday Kanetkar
2133 Lakes Edge Dr.
Newburgh, IN 47630

Kim S. Griffiths Katz
189 Cottrell Rd.
Tiverton, RI 02878

Paul and Barbara Lahr
321 Silver Maple Road
Groveland, FL 34736

James Mapes
12567 South Crest Drive
Olathe, KS 66061

Melissa D. Minter
4820 Old Main Street, Unit 101
Richmond, VA, 23231

Susan Moini
110 Lawrence Street
Fords, NJ 08863

Sara O'Rourke
PO Box 1296
Kilauea, HI 96754

Bertha L. Palmore
409 Tar Heel Lane
Kernersville, NC 27284

Jyotehibea S. Patel
129 Falmouth Rd.
Mooresville, NC 28117

Stephanie Jordan Patton
655 Beech Loop
Somerville, TN 38068

Frank Schoell
1401 Deep Creek Blvd, Lot 61
Chesapeake, VA 23323

Lori Tankersley
4609 Aspen Drive
Midland, TX 79707

Marlene Tracey Thomas
118 Franklin Ave.
Vinton, VA 24179

2

James Vierra
60 Coggeshall Ave.
Bristol, RI 02809

Cindy Wilson
2627 Woodsorrel Drive
Houston, TX 77084

Robert W. Worley
    Bworley30@yahoo.com

Antoinette Zinsmeyer
15355 Rosa Trail
San Antonio, TX 78253


       *s/ John S. Hicks*

       _____

       John S. Hicks

3